RECEIVED
IN LAKE CHARLES, LA
JUL - 6 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC., ET AL** | : | **DOCKET NO. 04-1150** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **TOTAL CONTAINMENT, INC., ET AL** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the Court are three (3) motions for summary judgment filed by defendant, Underwriters Laboratories, Inc. ("UL") which are as follows: (1) "Underwriters Laboratories, Inc.'s Motion for Summary Judgment Dismissing Plaintiffs' Claims as Barred by the Economic Loss Rule" (doc. #325), (2) "Underwriters Laboratories, Inc.'s Motion for Summary Judgment Dismissing Plaintiffs' Detrimental Reliance Claims" (doc. #326), and (3)"Underwriters Laboratories, Inc.'s Motion for Summary Judgment Dismissing Plaintiffs' Claims as Time-Barred" (doc. #334). Plaintiffs, Brookshire Brothers Holding, Inc., Brookshire Brothers Management, Inc., and Brookshire Brothers, Ltd ("Brookshire Brothers"), oppose all three motions.

## FACTUAL STATEMENT

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI")

Brookshire Brothers purchased the flexpipe manufactured by TCI from Pump Masters Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a network of "primary pipes" contained within larger "secondary pipes," which connect the underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

On October 3, 2003, in their First Supplemental and Amending Complaint, Brookshire Brothers named UL as a defendant challenging the adequacy of the test protocols that UL adopted for the primary piping. Brookshire Brothers' claims against UL relate to the standards that UL adopted for non-metallic underground piping - the "primary pipe" component of the underground enviroflex systems. Brookshire Brothers alleges that state regulatory agencies rely on UL as a third party tester to certify that a manufacturer's pipe product is capable of performing as it is supposed to do – in this case to transport fuel.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."[1] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[2] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[3] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[4] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[5] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

## LAW AND ANALYSIS

*Are Brookshire Brothers' claims against UL time-barred?*

UL maintains that the undisputed material facts show that Brookshire Brothers knew or should have known of its alleged injury more than two years before first filing suit against other parties and later naming UL as a defendant. UL asserts that under Louisiana Civil Code articles 3549(A), (B), 3542 and 3515, the liberative prescription law of Louisiana applies and because the

---

[1] Fed. R.Civ. P. 56(c).

[2] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

[4] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[6] *Anderson,* 477 U.S. at 249-50.

action in negligence sounds in tort, Brookshire Brothers had one year from the time it had notice or constructive notice of a claim to file suit. Alternatively, UL argues applying Texas law, a two-year statute of limitations applies to actions in negligence pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 16.003(A) (Vernon 1991).

ULsubmits a series of events dating back to the early 1990's alleging that Brookshire Brothers knew that its first-generation pipe[7] was defective and leaking since 1994, and that Brookshire Brothers knew that its second-generation pipe leaked as early as 1998. UL then argues that as of July 2000, Brookshire Brothers' "top management got a very loud and distinct 'wake-up call'" when its Dayton, Texas station suffered a severe leak which required the local fire department and police to be called to the site to prevent a fire. Because the instant suit was filed August 15, 2003, UL maintains that the suit is time-barred under both Louisiana and Texas law. Brookshire Brothers concedes that their claim against UL is in tort law.[8] Brookshire Brothers asserts that even under Louisiana's one year prescriptive period, their claims have not prescribed.

Brookshire Brothers argues that the lion's share of the material facts relied upon by UL are in dispute and presents the following issues of material fact which arguably preclude summary judgment: (1) the number of actual pipe failures between 1997 and 2000 is disputed, (3) TCI paid for the cost of replacing the pipe leakages between 1997 and 2000, (3) expenses from the Dayton, Texas spill on July 19, 2000 were covered by both TCI and Veeder-Root,[9] (4) at the December 2000

---

[7] TCI had discovered that its first generation pipe was subject to microbial attack when it was exposed to moisture. In 1994, TCI announced that it would replace the first generation primary pipe with a new, "second generation" primary pipe made of different materials.

[8] Opposition to motion for summary judgment, p. 12.

[9] Veeder-Root provided and/or installed a state-of-the-art leakage system.

meeting between Brookshire Brothers' officials and TCI, (after the Dayton spill) TCI made assurances that it would stand behind its product, (5) a second leak was detected on September 19, 2000; Pump Masters, Inc.("PMI")[10] changed out the pipe at no cost to Brookshire Brothers, (6) there were no other leaks in 2000, (7) there was no discussions at the December 2000 meeting concerning changing the second generation pipe to fiberglass, (8) there were no further leaks until the summer of 2001, (9) on May 6, 2001 a leak was found at Lorena, Texas; TCI supplied the pipe to replace the leaking section at Lorena at no charge and paid $500.00 towards PMI's costs, (10) between July 13 and August 14, 2001, there were four leaks, (11) TCI paid warranty claims on seven (7) leaking pipes in July and August, 2002, (12) in November 2002, TCI informed Larry NeGron, (Brookshire Brothers' Director of Petroleum) that it would not honor its warranty further regarding the replacement of the leaking pipe that took place in September and October of 2002, and (13) Brookshire Brothers became aware through the October 28, 2002 issue of Oil Express that the State of Florida had de-certified TCI's flexpipe; the article further questioned UL's testing protocol regarding its approval of TCI's flexpipe.

As noted by Brookshire Brothers, TCI continued to honor its warranty albeit on an inconsistent basis through August 2002. It was not until November 2002, that TCI informed Brookshire Brothers that it would no longer honor its warranty, and Brookshire Brothers did not become aware of UL's questionable testing protocol until October 28, 2002. Brookshire Brothers filed suit on August 15, 2003.

Under Louisiana's Conflict of Laws, Louisiana Civil Code article 3549 provides the law

---

[10] PMI installed the flexpipe which it purchased from TCI. PMI also repaired and/or replaced the leaking flexpipe.

governing liberative prescription as follows:

> A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.
> B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
> (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
> C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

Whether the substantive law of this state or of another state would be applicable to the merits of this action, Louisiana's prescriptive and peremption law applies. Brookshire Brothers chose to file suit in Louisiana and has presented no compelling consideration of remedial justice.[11] Accordingly, Brookshire Brother's cause of action which sounds in tort, is subject to a liberative prescription period of one year.

Louisiana's prescriptive period starts when "the plaintiff has actual or constructive notice of

---

[11] La. Civ. Code art. 3549 B(1).

the tortious act, the resulting damage, and the causal connection between the two."[12] A Plaintiff has constructive notice of a claim when it has notice to call for inquiry about it.[13] "[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury."[14] "[N]otice enough to excite plaintiff's attention and put her on guard to prompt inquiry ... is tantamount to knowledge or notice of everything to which inquiry might lead."[15]

Brookshire Brothers experienced numerous failures of second-generation pipe in the late 1990's coupled with the near-catastrophe at Dayton in July 2000. However, Brookshire Brothers relies on statements made by TCI and PMI that TCI would stand behind its product and/or assurances that the pipe was capable of performing as it should. Brookshire Brothers was not legally entitled to rely upon any representations by those parties that would in any way affect the liability of UL, specifically as it might affect tolling the statute of limitations. There is no dispute that Brookshire Brothers had sufficient knowledge of the recurring problems with the flexpipe system. Furthermore, having actual knowledge of the leaks within the flexpipe system, Brookshire Brothers had sufficient notice to prompt further inquiry to seek out those allegedly responsible. Accordingly, the Court finds that all claims made prior to one year from the filing of suit -- August 15, 2002, have prescribed under Louisiana's one-year prescriptive period.

*Are Brookshire Brothers' claims barred by the Economic Loss Rule?*

---

[12] *Doucet v. LaFourche Parish Fire Protection Dist. No. 3,* 589 So.2d 517, 519 (La.App. 1 Cir. 1991).

[13] *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 300 (5th Cir. 1999).

[14] *Jordan v. Employee Transfer Corp.,* 509 So.2d 420, 423 (La.1987).

[15] *Mistich v. Cordis Mfg. Co.,* 607 So.2d 955, 956 (La.App. 4 Cir. 1992).

UL seeks to have this Court grant summary judgment in its favor dismissing the claims of Brookshire Brothers which seek recovery for pure economic loss. In its latest complaint, Brookshire Brothers seeks damages including the alleged costs of replacing and changing out underground flexpipe, loss of gasoline and diesel products from leaking pipe, the loss of sales and profits, the loss of reputation, increased costs of mileage of Brookshire Brothers maintenance personnel, interruption of business, loss of sales and revenue, clean-up costs, lost productivity, increased costs for labor for repairs, and increased costs of gasoline as a result of retail locations being shut down and the need for repairs and replacement.

Brookshire Brothers contends that UL had an "obligation and duty" to it, and that Brookshire Brothers "relied upon the UL certification of the flexpipe to develop its standards, test for compliance with those standards, and authorize the application of its Listing Mark to both flexpipe and other products in a safe, careful, and prudent manner."[16] Brookshire Brothers alleges that UL was negligent in adopting Standard 971, exempting flexpipe from cyclic stress testing, and failing to expose the outside of flexpipe to gasoline as part of the certification process.[17]

UL asserts that Texas law governs the substance of Brookshire Brothers' claims, and further, Texas law does not recognize a tort claim for the economic loss that Brookshire Brothers seeks to recover.[18] Brookshire Brothers argues that Louisiana law applies, however, if Texas law applies,

---

[16] Fifth Supplemental and Amended Complaint, ¶¶ 95-98.

[17] *Id.* at ¶¶ 47-58.

[18] The rationale of Texas' economic loss rule is that the commercial purchaser of the defective product from a commercial seller is relegated to pursuing contractual and warranty claims against the seller rather than tort claims against them. Texas law recognizes as a matter of policy that the Uniform Commercial Code "supplies a complete framework of rights and remedies for transacting parties" and that such "losses resulting from product transactions are

the economic loss rule does not apply to a negligence based claim. Finally, Brookshire Brothers argues that the economic loss rule does not bar its recovery for damage to "other property."

A Federal court applies the conflict of law rules of the state in which it sits.[19]

Louisiana Civil Code article 3515 provides the following concerning the applicable law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana Civil Code article 3542 provides the general rule regarding delictual and quasi-delictual obligations:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any between the parties was centered; and (2) the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Brookshire Brothers argues that Louisiana's policies would be most seriously impaired if its law were not applied to the issue because of Louisiana's policy of full reparation and recovery.

UL argues that Texas' laws would be most seriously impaired because of Texas' overwhelming

---

best covered by contract liability under the Code." *Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312 (Tex. 1978).

[19] *Klaxon v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941).

interest in defining the limits of tort recovery and remedies of its own domiciliaries who sustain economic loss from allegedly defective products delivered or installed in Texas.

Louisiana Civil Code article 3515 instructs the court to evaluate the states' policies "in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties. . . ."

The TCI pipe was sold to Pump Masters, Inc. ("PMI") and shipped to its offices in Shreveport, Louisiana. Brookshire Brothers purchased the pipe from PMI in Shreveport for installation at its stations in Louisiana and Texas. UL is a Delaware corporation with its principal place of business in Illinois – thus, any alleged wrongful conduct by UL took place in Illinois. The Brookshire Brothers entities are Texas partnerships or corporations with a Texas domicile. Brookshire Brothers Holding, Inc. is a Nevada corporation with a principal place of business in Louisiana; its wholly owned subsidiary, Brookshire Brothers Management, Inc. is a Texas Corporation which manages Brookshire Brother's Ltd., a Texas limited partnership that owns the retail gasoline business. More than 90% of the relevant flexpipe system installations are in Texas; more than 90% of the leaks occurred in Texas. Even though the sale of the flexpipe took place in Louisiana, UL was not a party to that contract. TCI, PMI and Brookshire Brothers representatives met at Brookshire Brothers' headquarters in Lufkin, Texas to discuss warranty and insurance coverage issues concerning the leaking flexpipe.

After considering the impact of applying either state's laws in light of each state's relationship to the parties and the dispute, the place of injury, the expectation of the parties, the domicile and place of business of the parties, the Court finds that Texas law should be applied to

those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana.

For those injuries that occurred in Texas, and applying Texas' law, we must now decide if the economic loss rule is applicable and bars Brookshire Brother's claims. UL has cited numerous cases wherein under Texas law, economic damages are not recoverable unless they are accompanied by actual physical harm to persons or their property.[20] The Court is cognizant that in each of these cases the party being sued was either a manufacturer, seller or component supplier. In the instant case, UL is none of these. Hence, Brookshire Brothers argues that UL sold nothing nor contracted with Brookshire Brothers or any party to this lawsuit, and thus its damages cannot be relegated to contractual remedies of compensation under the UCC.

In *Hou-Tex v. Landmark Graphics,*[21] the appeal court barred plaintiff's economic recovery as to the negligence claims. In *Hou-Tex,* a gas and oil company filed an action against Landmark, a computer software developer, alleging among other things, negligence and negligent misrepresentation of the software's abilities. Hou-Tex hired a geological contractor named Saguaro Seismic Surveys, L.C. ("Saguaro"). Saguaro conducted a geophysical survey and interpreted its seismic data with a computer software program called SeisVision to help choose the best location for the oil well. SeisVision helped to select a site called Angerstein No. 1, and drilling started on

---

[20] See *Mid-Continent Aircraft Corp., supra,*; *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872-73 (1986); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Electric Corp.,* 844 F.2d 1174, 1177-78 and n.8 (5th Cir. 1988)(citing *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex. 1986); *Hininger v. Case Corp.,* 23 F.3d 124, 125-27 (5th Cir. 1994); *American Eagle Ins. Co. v. United Technologies Corp.,* 48 F.3d 142, 144-45 (5th Cir. 1995).

[21] 26 S.W.3d (Tex.App-Houston[14 Dis]2000).

11

January 16, 1996. The oil well was a dry hole.

The SeisVision had a "bug" which miscalculated data. Saguaro reported this bug to SeisVision's developer at Landmark. Landmark already knew about the bug and had corrected the problem in an updated version of SeisVision. Even though Landmark sent the updated version to some its clients, it failed to send it to Anasazi, the consultant company hired by Saguaro to provide software support.

The trial court granted summary judgment in favor of Landmark. On appeal, Hou-Tex maintained that summary judgment on its negligence claims was error because Landmark owed it a duty (1) to inform Saguaro about the bug in SeisVision, and (2) to ensure that SeisVision worked correctly. Landmark responded that it owed no duty in tort to Hou-Tex and that Hou-Tex's claims sounded in contract. Hou-Tex denied that its claims sounded in contract, and argued instead that every manufacturer owed a duty to third party beneficiaries/users of its products.

The appeal court noted that Hou-Tex suffered only economic damages for its costs of drilling a dry well. Given that fact, the court held that the economic loss rule precluded any duty in tort by Landmark to Hou-Tex. The court further recognized that the Texas Supreme Court had not addressed whether the economic loss rule precluded a third party's negligence claim for economic loss. However, the Fifth Circuit Court of Appeals, in analyzing Texas law, had addressed the issue in *Hininger, supra*. The *Hou-Tex* court held that "[p]ermitting Hou-Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou-Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with the SeisVision's licensees. As is the case here, UL also had written agreements with TCI that set forth

the stipulations and conditions governing UL's listing service concerning TCI's products.[22] Accordingly, the economic loss rule is applicable to the negligence claims asserted by Brookshire Brothers.

However, that does not end the analysis. Brookshire Brothers has alleged that it has sustained damage to "other property." The economic loss rule does not bar recovery to "other property."[23] Brookshire Brothers contends that it has sustained environmental pollution to land from the defective flexpipe and further asserts that it had discovered contamination at its stores in Lufkin and Sour Lake, Texas and DeRidder, Louisiana. UL argues that it has not been determined the specific source of the gasoline at sites where they have identified potential environmental contamination. Be that as it may, this is a motion for summary judgment and the Court will not weigh evidence at this point of the proceeding. Because environmental pollution to land is damage to other property, the economic loss rule does not bar its recovery.

For those injuries that occurred in Louisiana, there is no economic loss rule. Louisiana law provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code article 2315. Thus, the economic loss rule does not apply to those injuries that occurred in Louisiana. *Does Brookshire Brothers have a valid claim for damages based on the theories of promissory estoppel or detrimental reliance?*

UL maintains that because Brookshire Brothers neither received nor "relied" on any

---

[22] See Exhibit D (UL's Answer to Interrogatory No. 6 and Response to Request for Production of Documents No. 3) and Exhibit E ("Follow-Up Service Agreement").

[23] See *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 503 (E.D. Tex. 2001) ("Where...collateral property damage exists in addition to damage to the product itself, the plaintiff can recover in tort as well as in contract.")

"promise" from UL under Texas law defining the elements of "promissory estoppel" or under Louisiana law defining "detrimental reliance," it is entitled to summary judgment in its favor dismissing Count V of plaintiffs' Fifth Supplemental and Amended Complaint. Brookshire Brothers concedes that UL never made a promise to it, but argues that under Louisiana law, such is not necessary to maintain a claim for detrimental reliance. Brookshire Brothers also disputes UL's assertion that UL never made representations that Brookshire Brothers relied upon. Brookshire Brothers argues that state agencies relied upon UL's mark of quality prior to allowing the flexpipe to be installed, and Brookshire Brothers relied upon the state regulatory agencies' clearance of pipe to be placed in the ground.

In their amended complaint, Brookshire Brothers alleges that UL (1) failed to incorporate in their standards, a test that exposed the exterior of the flexpipe to gasoline during immersion testing,[24] (2) negligently and improperly exempted flexpipe from Cyclic Stress Testing,[25] (3) improperly staffed its Standards Technical Committee ("STC")[26] with representatives of the flexpipe industry,[27] and then relied on the recommendations of the STC,[28] and (4) staffed its STC for flexpipe with individuals who were both overworked and lacked experience. Brookshire Brothers asserts that the exposure of the exterior of flexpipe to gasoline causes it to swell, elongate, crack and eventually

---

[24] Fifth Supplemental and Amended Complaint, ¶¶ 48-49.

[25] Fifth Supplemental and Amended Complaint, ¶ 54.

[26] This committee developed standards for testing flexpipe.

[27] Fifth Supplemental and Amended Complaint, ¶ 45.

[28] *Id.*

fail.[29] Brookshire Brothers further asserts that cyclic stress is a major cause of failure in flexpipe.

Brookshire Brothers' expert report asserts that UL ignored or disregarded standards established by the American Society for Testing and Materials and the American Petroleum Institute. In their claim of detrimental reliance or promissory estoppel, Brookshire Brothers argues that UL has a duty to anticipated users of flexpipe in promulgating the standard for flexpipe because governmental regulators depend on UL for its initial certification. Brookshire Brothers points out that Texas and Louisiana state regulatory agencies rely on UL as a third party tester to certify that a manufacturer's pipe product is capable of performing as it is supposed to do.

For the same reasons set forth above, the Court finds that Texas law applies to the injuries that occurred in Texas, and Louisiana law applies to the injuries that occurred in Louisiana.

In Texas, "detrimental reliance" is not actionable as a separate tort cause of action.[30] An analogous claim would be "promissory estoppel," which "allows a cause of action to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise."[31] The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promissor, and (3) substantial reliance by the promisee to its detriment."[32]

UL maintains that because it made no promise to Brookshire Brothers, never engaged in any direct communication or contractual negotiations with Brookshire Brothers, and Brookshire Brothers did not rely on any promise by UL, there is no action for promissory estoppel under Texas law.

---

[29] Fifth Supplemental and Amended Complaint, ¶ 49.

[30] *University of Texas System v. Courtney,* 946 S.W.2d 464, 468 (Tex.App.- Fort Worth 1997).

[31] *Cherokee Communications, Inc. v. Skinny's, Inc.,* 893 S.W.2d 313, 317 (Tex.App. - Eastland 1994).

[32] *Id.; English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983).

Brookshire Brothers concedes that it had no contact with UL or knowledge of UL's actions with regard to flexpipe until October of 2002 when it became aware of an article that appeared in the petroleum retail business publication, The Oil Express. That article publicized the fact that TCI's flexpipe was de-certified by the State of Florida due to an excessive failure rate. Even though no explanation was given for the failures, the article pointedly called into question the UL certification process upon which the Florida regulatory agency relied. Brookshire Brothers argues that it relied upon the state regulatory agencies to police the environment and in turn, those agencies rely on UL's certification mark.

UL does not place the UL Listing Mark on any product. A Certification mark is "applied by other persons, to their good or services, with authorization from the owner of the mark."[33] The application of a certification mark to a particular product constitutes a declaration of the manufacturer – not a representation of the registrant of the certification mark.[34] The Federal circuit in *Midwest Plastic, supra,* expressly held with respect to UL's registered certification mark that the application of that mark by a manufacturer to its products is proper and constitutes the manufacturer's declaration that the marked product complies with UL's standards. In other words, the application of UL's certification mark by TCI, the manufacturer of the flexpipe, constituted TCI's declaration that the flexpipe complied with UL's standards. Hence, Brookshire Brothers cannot claim that they detrimentally relied on any promise made by UL when UL made no promise or representation to Brookshire Brothers. Accordingly, Brookshire Brothers cannot prove the essential

---

[33] See *U.S. Patent & Trademark Office, Trademark Manual of Examining Procedures,* § 1306.01 at 1300-14 (1986).

[34] *Midwest Plastic Fabricators, Inc. v. Underwriters Laboratories, Inc.,* 906 F.2d 1568, 1571 (Fed. Cir. 1990).

elements of a claim based on a theory of promissory estoppel.

Under Louisiana law, the principle of "detrimental reliance" is codified in Louisiana Civil Code article1967 as follows:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

It is undisputed that UL never made a representation or promise to Brookshire Brothers. No agreement or contract existed between these two parties. "[A] promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment."[35] The two Brookshire Brothers employees who had responsibility for the underground piping system testified that they never spoke with anyone from UL, they never received any documents from UL, and they never read the UL Standards relating to underground piping.[36] Mr. NeGron, Brookshire Brothers' Director of Petroleum and Marketing, testified that he had no idea whether or not the TCI flexpipe was listed by UL or what it meant to be listed.[37] UL made no promise or representation that Brookshire Brothers relied on to their detriment. Accordingly, Brookshire Brothers has no claim for detrimental reliance under Louisiana law.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment dismissing Brookshire

---

[35] *Morris v. People's Bank & Trust Co. of Natchitoches,* 580 So.2d 1029 (La.App. 3 Cir.), *writ denied,* 558 So.2d 101, 102 (La.1991).

[36] Exhibit 6 to UL's motion for summary judgment, p. 211; Exhibit 7 to UL's motion for summary judgment at pp. 175-176.

[37] Exhibit 6 to UL's motion for summary judgment at pp. 210-212.

Brothers' claims as time barred will be granted to the extent that all claims for injuries that occurred prior to August 15, 2002 have prescribed and will be dismissed; the motion for summary judgment barring Brookshire Brothers' pure economic losses will be granted in part to the extent the Texas law bars recovery for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and denied in part to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss rule does not apply; the motion for summary judgment dismissing Brookshire Brothers' claims of detrimental reliance under Louisiana law or promissory estoppel under Texas will be granted.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of July, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

claims against defendant, Underwriter Laboratories, Inc.

The Court expressly determines that there is no just reason for delay and directs entry of judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of July, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE