RECEIVED
IN LAKE CHARLES, LA

JUL 13 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC.** | : | **DOCKET NO. 04-1150** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **TOTAL CONTAINMENT INC., ET AL** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the Court are two motions: (1) "Dayco Products, L.L.C. and Mark IV Industries, LTD's Motion for Summary Judgment Dismissing Plaintiffs' Claims as Time Barred" (doc. # 353) and (2) "Dayco Products, L.L.C. and Mark IV Industries, LTD's Motion for Summary Judgment Dismissing Plaintiffs' Redhibition/Breach of Implied Warranty of Fitness and Merchantability Claims" (doc. #355). Dayco Products, L.L.C. and Mark IV Industries, LTD's (collectively referred to as "Dayco") maintains that under both Louisiana and Texas' law, Brookshire Brothers' claims are time barred. Dayco also maintains that Brookshire Brothers has no legal basis for recovery against it because the necessary vendor-vendee relationship did not exist, and further Brookshire Brothers cannot prove the essential elements of their claims of redhibition/breach of implied warranty of fitness and merchantability against Dayco.

## FACTUAL STATEMENT

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East

Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI").

Brookshire Brothers purchased the flexpipe from Pump Masters, Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a network of "primary pipes" contained within larger "secondary pipes," which connect the underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

Brookshire Brothers alleges that Dayco participated in the design, manufacture and sales of the flexpipe. As a result of these alleged leaks, Brookshire Brothers seeks to recover damages including economic loss and the cost to repair and replace the flexpipe.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] As to issues

---

[1] Fed. R.Civ. P. 56(c).

which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[2] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[3] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[4] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[5] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

## LAW AND ANALYSIS

*Are Brookshire Brothers' claims time barred?*

Dayco maintains that under either the Texas statute of limitations or Louisiana's prescriptive period, all of Brookshire Brothers' claims are time barred. Dayco submits a series of events dating back to 1994, when Brookshire Brothers first discovered that the first generation pipe leaked. From 1995 until 1997, the first generation pipe was replaced with second generation pipe. Leaks were found in the second generation pipe as early as 1998. Dayco asserts that Brookshire Brothers was aware of numerous occurrences in the year 2000, such as: (1) on May 3, 2000, there was a leak at

---

[2] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

[4] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[6] *Anderson,* 477 U.S. at 249-50.

the Brookshire Belleville station; Brookshire Brothers paid $6,306.83 to repair the leak, (2) on July 19, 2000, there was a leak at the Dayton, Texas station; Brookshire Brothers paid Pump Masters Inc. ("PMI") to repair the leak, (3) in September of 2000, another leak occurred at the Dayton location; PMI charged Brookshire Brothers $4,675.67 for the repair, and (4) in December 2000, Brookshire Brothers met with TCI and PMI to discuss the numerous failures of the second generation pipe. Dayco maintains that the events of 2000 started the tolling of prescription and/or the statute of limitations and that in 2000, Brookshire Brothers had sufficient notice of the same complaints that are the subject of this litigation. Dayco also submits that there were numerous occurrences in 2001 that Brookshire Brothers was aware of in 2001 that are the same complaints that it has asserted in the instant lawsuit.

Under Louisiana's Conflict of Laws, Louisiana Civil Code article 3549 provides the law governing liberative prescription as follows:

> A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.
> B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
> (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
> C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be

barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

Whether the substantive law of this state or of another state would be applicable to the merits of this action, Louisiana's prescriptive and peremption law applies. Brookshire Brothers chose to file suit in Louisiana and has presented no compelling consideration of remedial justice.[7] Accordingly, Brookshire Brother's cause of action which sounds in tort, is subject to a liberative prescription period of one year.[8]

Louisiana's prescriptive period starts when "the plaintiff has actual or constructive notice of the tortious act, the resulting damage, and the causal connection between the two."[9] A Plaintiff has constructive notice of a claim when it has notice to call for inquiry about it.[10] "[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury."[11] "[N]otice enough to excite plaintiff's attention and put her on guard to prompt inquiry ... is tantamount to

---

[7] La. Civ. Code art. 3549 B(1).

[8] La. Civ. Code art. 3492 – delictual actions; La. Civ. Code art. 2534(A)(1) – redhibitory defects; *Division Place Partnership v. Carl E. Woodward, Inc.*, 806 So.2d 912 (La. App. 4 Cir. 2002)(Liberative prescription of one year is applicable to delictual actions so that a products liability claim is also subject to a one-year limitation from injury or damage from the date the victim became aware of defect).

[9] *Doucet v. LaFourche Parish Fire Protection Dist. No. 3*, 589 So.2d 517, 519 (La.App. 1 Cir. 1991).

[10] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999).

[11] *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987).

knowledge or notice of everything to which inquiry might lead."[12]

Brookshire Brothers experienced numerous failures of second-generation pipe in the late 1990's coupled with the near-catastrophe at Dayton in July 2000. However, Brookshire Brothers relies on statements made by TCI and PMI that TCI would stand behind its product and/or assurances that the pipe was capable of performing as it should. Brookshire Brothers was not legally entitled to rely upon any representations by those parties that would in any way affect the liability of Dayco, specifically as it might affect tolling the statute of limitations. There is no dispute that Brookshire Brothers had sufficient knowledge of the recurring problems with the flexpipe system. Furthermore, having actual knowledge of the leaks within the flexpipe system, Brookshire Brothers had sufficient notice to prompt further inquiry to seek out those allegedly responsible. Accordingly, the Court finds that all claims made prior to one year from the filing of suit -- August 15, 2002, have prescribed under Louisiana's one-year prescriptive period.

*Claims of redhibition/breach of implied warranty of fitness and merchantability*

In their complaint, Brookshire Brothers alleges that Dayco manufactured the pipes/hose sold to the plaintiffs and is "presumed to know of the redhibitory vices, and/or defects which are in the pipes/hose sold to the plaintiffs."[13] Brookshire Brothers further alleges that Dayco "impliedly warranted that the enviroflex pipe was fit for its intended particular purpose, for the transport of gasoline and gasoline products but due to the excessive failure of the hose and leaking, the hose is useless for its intended purpose and has become so inconvenient and costly to the plaintiffs, that plaintiffs would not have ever purchased the hose had plaintiffs known of the defects contained in

---

[12] *Mistich v. Cordis Mfg. Co.,* 607 So.2d 955, 956 (La.App. 4 Cir. 1992).

[13] Fifth Supplemental and Amended Complaint, ¶ 81.

the hose."[14] Thus, Dayco breached the implied warranty of fitness and merchantability.

Dayco maintains that it is a component part supplier, as opposed to a manufacturer, and because there is no vendor/vendee relationship[15] between it and Brookshire Brothers, there can be no claims in redhibition.

In the Memorandum Ruling dated, July 7, 2006, this Court held that Texas law would apply to those injuries that occurred in Texas, and Louisiana law would apply to those injuries that occurred in Louisiana. Neither of the parties have briefed and argued which state's laws applies. Hence, no determination will be made by this Court as to which states' laws would apply between these two parties for the claims of redhibition. For purposes of this motion for summary judgment, the Court's ruling applies only to those injuries to which Louisiana law would apply.

Louisiana's redhibition law provides an implied warranty from a seller to a buyer against redhibitory defects, or vices in the thing sold.[16] The warranty against redhibitory vices is owed by each of the multiple sellers in proportion to his interest.[17] Manufacturers of a product can be held liable in addition to sellers. Louisiana Civil Code article 2545 provides the following:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were

---

[14] Fifth Supplemental and Amended Complaint, ¶ 84.

[15] Dayco cites *Pittman v. Kaiser Aluminum and Chemcial Corp.*, 559 So.2d 879 (La. App. 4th Cir. 1990).

[16] La. Civ. Code art. 2520.

[17] La. Civ. Code art. 2538.

of some value to the buyer, such a seller may be allowed credit for such use or fruits.

A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

Comment (d) further provides that a "buyer may bring action against all sellers in the chain of sales back to the primary manufacturer to rescind a sale for breach of implied warranty." Hence, a vendor/vendee relationship is not necessary; Brookshire Brothers need only prove that Dayco was either the seller or a manufacturer.

Louisiana Revised Statute article 9:2800.53 provides in pertinent part the following:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

Dayco maintains that it is a component supplier, not a manufacturer. Brookshire Brothers raises the following issues of material fact concerning whether or not Dayco is a manufacturer: (1) Dayco designed and manufactured a flexible thermoplastic hose ("flexpipe") for use in connecting TCI's underground storage tanks to above-ground dispensers in gasoline stations; the flexpipe, often referred to as the primary hose, was "the most critical part of the Total Containment Product,[18] (2) TCI marketed the system as a "revolutionary new flexible double-walled piping system,"[19] (3) TCI

---

[18] Exhibit A, Jeffery Winter deposition.

[19] *Id.*

marketed and sold the enviroflex system, but had almost no involvement in the design and manufacture of the flexpipe; (4) TCI instructions to Dayco were to design a flexible, lightweight hose that comported with Underwriters Laboratories, Inc.'s standard at that time,[20] (5) Dayco's engineer responsible for designing the primary hose had very little contact with TCI during the design process, and TCI relied solely on Dayco's expertise in designing the primary hose,[21] (6) Dayco chose the design and the materials for use in the flexpipe,[22] (7) Dayco was responsible for testing the materials they chose to use in the flexpipe,[23] (8) Dayco tested the materials, various phototypes and the finished products, and(9) although TCI was responsible for obtaining UL certification, Dayco was listed as the manufacturer of the flexpipe.

The Court finds that Brookshire Brothers has presented evidence sufficient to create a genuine issues of material fact for trial as to whether or not Dayco was a manufacturer.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment dismissing Brookshire Brothers' claims as time barred will be granted to the extent that all claims for injuries that occurred prior to August 15, 2002 have prescribed and will be dismissed; the motion for summary judgment dismissing Brookshire Brothers' claims of redhibition/breach of implied warranty of fitness and

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

merchantability will be denied. The Court expressly determines that there is no just reason for delay and directs entry of judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _13th_ day of July, 2006.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE