RECEIVED
IN LAKE CHARLES, LA
AUG 3 1 2006
PAM
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC., ET AL** | : | **DOCKET NO. 04-1150** |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a "Motion by Defendant Ticona Polymers, Inc. for Partial Summary Judgment Against Plaintiff" (doc. #361) wherein the mover seeks partial summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs, Brookshire Brothers Holding, Inc., Brookshire Brothers Management, Inc., and Brookshire Brothers Ltd ("Brookshire Brothers"), oppose the motion.

## FACTUAL STATEMENT

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI").

Brookshire Brothers purchased the flexpipe from Pump Masters, Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a network of "primary pipes" contained within larger "secondary pipes," which connect the

underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

Brookshire Brothers alleges that Ticona Polymers, Inc. ("Ticona") participated in the manufacture, design and distribution of the flexpipe at issue in suit.[1] Specifically, Ticona manufactures Fortron, a material used for the inner layer of the flexpipe (sometimes referred to as the fourth generation pipe) that replaced Carilon. Brookshire Brothers alleges that Ticona knew or should have known that Fortron was unsuitable for use in the fabrication of the inner layer; its fitness for such applications had never been established; and Ticona itself questioned the quality of the hose manufactured with Fortron due to bumps in the hose, depressions on the inside of the hose, lack of uniformity of wall thickness, and the existence of microscopic black particles in the hose.[2] Brookshire Brothers asserts claims in products liability, redhibition and negligence and also seeks exemplary damages.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

---

[1] Fifth Supplemental and Amended Complaint, ¶ 76.

[2] *Id.* At ¶¶ 38-39.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

*Are Brookshire Brothers' claims against Ticona prescribed?*

Ticona maintains that it is entitled to summary judgment because Brookshire Brothers' claims have prescribed. Ticona argues that it is beyond dispute that Brookshire Brothers had actual knowledge of the very same problems which they complain about in their complaint more than two

---

[3] Fed. R.Civ. P. 56(c).

[4] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Anderson*, 477 U.S. at 249-50.

3

years before filing this action. Ticona adopts by reference the statement of material facts submitted by Underwriters Laboratories, Inc. (doc. #334). Brookshire Brothers adopts by reference the disputed statement of material facts filed in its opposition to UL's motion for summary judgment. (doc. #351)

Ticona submits a series of events dating back to the early 1990's alleging that Brookshire Brothers knew that its first-generation pipe[9] was defective and leaking since 1994, and that Brookshire Brothers knew that its second-generation pipe leaked as early as 1998. As of July 19, 2000, Brookshire Brothers' "top management got a very loud and distinct 'wake-up call'" when its Dayton, Texas station suffered a severe leak which required the local fire department and police to be called to the site to prevent a fire. Because the instant suit was filed August 15, 2003, Ticona maintains that the suit is time-barred under both Louisiana and Texas law. Brookshire Brothers asserts that even under Louisiana's one year prescriptive period, their claims have not prescribed.

Brookshire Brothers argues that the lion's share of the material facts relied upon by Ticona are in dispute and presents the following issues of material fact which arguably preclude summary judgment: (1) the number of actual pipe failures between 1997 and 2000 is disputed, (3) TCI paid for the cost of replacing the pipe leakages between 1997 and 2000, (3) expenses from the Dayton, Texas spill on July 19, 2000 were covered by both TCI and Veeder-Root,[10] (4) at the December 2000 meeting between Brookshire Brothers' officials and TCI, (after the Dayton spill) TCI made assurances that it would stand behind its product, (5) a second leak was detected on September 19,

---

[9] TCI had discovered that its first generation pipe was subject to microbial attack when it was exposed to moisture. In 1994, TCI announced that it would replace the first generation primary pipe with a new, "second generation" primary pipe made of different materials.

[10] Veeder-Root provided and/or installed a state-of-the-art leakage system.

2000; Pump Masters, Inc.("PMI")[11] changed out the pipe at no cost to Brookshire Brothers, (6) there were no other leaks in 2000, (7) there was no discussions at the December 2000 meeting concerning changing the second generation pipe to fiberglass, (8) there were no further leaks until the summer of 2001, (9) on May 6, 2001 a leak was found at Lorena, Texas; TCI supplied the pipe to replace the leaking section at Lorena at no charge and paid $500.00 towards PMI's costs, (10) between July 13 and August 14, 2001, there were four leaks, (11) TCI paid warranty claims on seven (7) leaking pipes in July and August, 2002, (12) in November 2002, TCI informed Larry NeGron, (Brookshire Brothers' Director of Petroleum) that it would not honor its warranty further regarding the replacement of the leaking pipe that took place in September and October of 2002, and (13) Brookshire Brothers became aware through the October 28, 2002 issue of Oil Express that the State of Florida had de-certified TCI's flexpipe; the article further questioned UL's testing protocol regarding its approval of TCI's flexpipe.

As noted by Brookshire Brothers, TCI continued to honor its warranty albeit on an inconsistent basis through August 2002. It was not until November 2002, that TCI informed Brookshire Brothers that it would no longer honor its warranty, and Brookshire Brothers did not become aware of UL's questionable testing protocol until October 28, 2002. Brookshire Brothers filed suit on August 15, 2003.

Under Louisiana's Conflict of Laws, Louisiana Civil Code article 3549 provides the law governing liberative prescription as follows:

> A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state

---

[11] PMI installed the flexpipe which it purchased from TCI. PMI also repaired and/or replaced the leaking flexpipe.

5

applies.

B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:

(1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

(2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

Whether the substantive law of this state or of another state would be applicable to the merits of this action, Louisiana's prescriptive and peremption law applies. Brookshire Brothers chose to file suit in Louisiana and has presented no compelling consideration of remedial justice.[12] Accordingly, Brookshire Brothers' causes of action are subject to a liberative prescription period of one year.[13]

Louisiana's prescriptive period starts when "the plaintiff has actual or constructive notice of

---

[12] La. Civ. Code art. 3549 B(1).

[13] La. Civ. Code art. 3492 – delictual actions; La. Civ. Code art. 2534(A)(1) – redhibitory defects; *Division Place Partnership v. Carl E. Woodward, Inc.*, 806 So.2d 912 (La. App. 4 Cir. 2002)(Liberative prescription of one year is applicable to delictual actions so that a products liability claim is also subject to a one-year limitation from injury or damage from the date the victim became aware of defect).

the tortious act, the resulting damage, and the causal connection between the two."[14] A Plaintiff has constructive notice of a claim when it has notice to call for inquiry about it.[15] "[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury."[16] "[N]otice enough to excite plaintiff's attention and put her on guard to prompt inquiry ... is tantamount to knowledge or notice of everything to which inquiry might lead."[17]

Brookshire Brothers experienced numerous failures of second-generation pipe in the late 1990's coupled with the near-catastrophe at Dayton in July 2000. However, Brookshire Brothers relies on statements made by TCI and PMI that TCI would stand behind its product and/or assurances that the pipe was capable of performing as it should. Brookshire Brothers was not legally entitled to rely upon any representations by those parties that would in any way affect the liability of Ticona, specifically as it might affect tolling the statute of limitations. There is no dispute that Brookshire Brothers had sufficient knowledge of the recurring problems with the flexpipe system. Furthermore, having actual knowledge of the leaks within the flexpipe system, Brookshire Brothers had sufficient notice to prompt further inquiry to seek out those allegedly responsible. Accordingly, the Court finds that all claims made prior to one year from the filing of suit -- August 15, 2002, have prescribed under Louisiana's one-year prescriptive period.

---

[14] *Doucet v. LaFourche Parish Fire Protection Dist. No. 3*, 589 So.2d 517, 519 (La.App. 1 Cir. 1991).

[15] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999).

[16] *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987).

[17] *Mistich v. Cordis Mfg. Co.*, 607 So.2d 955, 956 (La.App. 4 Cir. 1992).

*Are Brookshire Brothers' claims barred by the economic loss rule?*

Ticona supplied a material known as Fortron to Total Containment, Inc. for use in manufacturing the inner liner of the fourth generation flexpipe. Fortron replaced the allegedly defective Carilon – the inner liner of the flexpipe that was previously designed and manufactured by Dayco Products, Inc. and supplied by Shell Chemical, LLP. There was no contract between Ticona and Brookshire Brothers. Brookshire Brothers states that within days after its initial installation, the Fortron lined pipe swelled to such an extent that it kinked in the sumps where attached to the pump by its coupling.[18] Brookshire Brothers submits evidence that PMI personnel have had to uncouple the pipe, cut off the end that grew and then recouple the pipe to the pump.[19] Brookshire Brothers further alleges that the Fortron has defects in the polymer and Ticona was aware of these defects, However, Ticona chose to sell the product notwithstanding such knowledge.[20]

Ticona, in adopting the Underwriters Laboratories, Inc.'s memorandum in support of its motion for summary judgment, asserts that Texas law governs the substance of Brookshire Brothers' claims, and further, Texas law does not recognize a tort claim for the economic loss that Brookshire Brothers seeks to recover.[21] Brookshire Brothers argues that Louisiana law applies, however, if

---

[18] Memorandum in Opposition to Motion for Summary Judgment against Plaintiffs filed by Ticona Polymers, Inc., p. 2.

[19] *Id.,* Exhibit 1, Boley Depo., pp. 210, 223-224, 260-263. 270-280, 288-295, 308-309, 312-313).

[20] *Id.,* Exhibit 2, Expert Report of Dr. Jack Fellers, and Exhibit 3.

[21] The rationale of Texas' economic loss rule is that the commercial purchaser of the defective product from a commercial seller is relegated to pursuing contractual and warranty claims against the seller rather than tort claims against them. Texas law recognizes as a matter of policy that the Uniform Commercial Code "supplies a complete framework of rights and remedies for transacting parties" and that such "losses resulting from product transactions are

Texas law applies, the economic loss rule does not apply to a negligence based claim. Finally, Brookshire Brothers argues that the economic loss rule does not bar its recovery for damage to "other property."

A Federal court applies the conflict of law rules of the state in which it sits.[22]

Louisiana Civil Code article 3515 provides the following concerning the applicable law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana Civil Code article 3542 provides the general rule regarding delictual and quasi-delictual obligations:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any between the parties was centered; and (2) the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Brookshire Brothers argues that Louisiana's policies would be most seriously impaired if its law were not applied to the issue because of Louisiana's policy of full reparation and recovery.

---

best covered by contract liability under the Code." *Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312 (Tex. 1978).

[22] *Klaxon v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941).

Ticona argues that Texas' laws would be most seriously impaired because of Texas' overwhelming interest in defining the limits of tort recovery and remedies of its own domiciliaries who sustain economic loss from allegedly defective products delivered or installed in Texas.

Louisiana Civil Code article 3515 instructs the court to evaluate the states' policies "in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties. . . ."

The TCI pipe was sold to PMI and shipped to its offices in Shreveport, Louisiana. Brookshire Brothers purchased the pipe from PMI in Shreveport for installation at its stations in Louisiana and Texas. Ticona is incorporated in Delaware and located in New Jersey. Neither party has argued that either of these states' law apply. The Brookshire Brothers entities are Texas partnerships or corporations with a Texas domicile. Brookshire Brothers Holding, Inc. is a Nevada corporation with a principal place of business in Louisiana; its wholly owned subsidiary, Brookshire Brothers Management, Inc. is a Texas Corporation which manages Brookshire Brother's Ltd., a Texas limited partnership that owns the retail gasoline business. More than 90% of the relevant flexpipe system installations are in Texas; more than 90% of the leaks occurred in Texas. Even though the sale of the flexpipe took place in Louisiana, Ticona was not a party to that contract. TCI, PMI and Brookshire Brothers representatives met at Brookshire Brothers' headquarters in Lufkin, Texas to discuss warranty and insurance coverage issues concerning the leaking flexpipe.

After considering the impact of applying either state's laws in light of each state's relationship to the parties and the dispute, the place of injury, the expectation of the parties, the domicile and place of business of the parties, the Court finds that Texas law should be applied to

those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana.

For those injuries that occurred in Texas, and applying Texas' law, we must now decide if the economic loss rule is applicable and bars Brookshire Brother's claims. Ticona, through UL's memorandum, has cited numerous cases wherein under Texas law, economic damages are not recoverable unless they are accompanied by actual physical harm to persons or other property.[23]

In *Hou-Tex v. Landmark Graphics*,[24] the appeal court barred plaintiff's economic recovery as to the negligence claims. In *Hou-Tex*, a gas and oil company filed an action against Landmark, a computer software developer, alleging among other things, negligence and negligent misrepresentation of the software's abilities. Hou-Tex hired a geological contractor named Saguaro Seismic Surveys, L.C. ("Saguaro"). Saguaro conducted a geophysical survey and interpreted its seismic data with a computer software program called SeisVision to help choose the best location for the oil well. SeisVision helped to select a site called Angerstein No. 1, and drilling started on January 16, 1996. The oil well was a dry hole.

The SeisVision had a "bug" which miscalculated data. Saguaro reported this bug to SeisVision's developer at Landmark. Landmark already knew about the bug and had corrected the problem in an updated version of SeisVision. Even though Landmark sent the updated version to

---

[23] See *Mid-Continent Aircraft Corp., supra,*; *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1177-78 and n.8 (5th Cir. 1988)(citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986); *Hininger v. Case Corp.*, 23 F.3d 124, 125-27 (5th Cir. 1994); *American Eagle Ins. Co. v. United Technologies Corp.*, 48 F.3d 142, 144-45 (5th Cir. 1995).

[24] 26 S.W.3d (Tex.App-Houston[14 Dis]2000).

some its clients, it failed to send it to Anasazi, the consultant company hired by Saguaro to provide software support.

The trial court granted summary judgment in favor of Landmark. On appeal, Hou-Tex maintained that summary judgment on its negligence claims was error because Landmark owed it a duty (1) to inform Saguaro about the bug in SeisVision, and (2) to ensure that SeisVision worked correctly. Landmark responded that it owed no duty in tort to Hou-Tex and that Hou-Tex's claims sounded in contract. Hou-Tex denied that its claims sounded in contract, and argued instead that every manufacturer owed a duty to third party beneficiaries/users of its products.

The appeal court noted that Hou-Tex suffered only economic damages for its costs of drilling a dry well. Given that fact, the court held that the economic loss rule precluded any duty in tort by Landmark to Hou-Tex. The court further recognized that the Texas Supreme Court had not addressed whether the economic loss rule precluded a third party's negligence claim for economic loss. However, the Fifth Circuit Court of Appeals, in analyzing Texas law, had addressed the issue in *Hininger, supra*. The *Hou-Tex* court held that "[p]ermitting Hou-Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou-Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with the SeisVision's licensees. Ticona had a contract with Dayco to supply Fortron for the inner layer of the flexpipe. Dayco designed and manufactured the flexpipe for TCI.[25] Accordingly, the economic loss rule is applicable to the negligence claims asserted by Brookshire Brothers.

However, that does not end the analysis. Brookshire Brothers has alleged that it has

---

[25] See Exhibit D (UL's Answer to Interrogatory No. 6 and Response to Request for Production of Documents No. 3) and Exhibit E ("Follow-Up Service Agreement") attached to Brookshire Brothers opposition to UL's motion for summary judgment.

sustained damage to "other property." The economic loss rule does not bar recovery to "other property."[26] Brookshire Brothers contends that it has sustained environmental pollution to land from the defective flexpipe and further asserts that it has discovered contamination at its stores in Lufkin and Sour Lake, Texas and DeRidder, Louisiana. Ticona argues that it has not been determined the specific source of the gasoline at sites where they have identified potential environmental contamination. Be that as it may, this is a motion for summary judgment and the Court will not weigh evidence at this point of the proceeding. Because environmental pollution to land is damage to other property, the economic loss rule does not bar its recovery.

Brookshire Brothers has alleged claims in redhibition and products liability. The Louisiana Products Liability Act ("LPLA") provides the following concerning damages:

> (5) "Damage" means all damage caused by the product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled "Redhibition," does not allow recovery for such damage or economic loss. Attorneys' fees are not recoverable under this Chapter.[27]

For those injuries that occurred in Louisiana, there is no economic loss rule. Louisiana law provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code articles 2315, 2520 *et seq.*, and the LPLA. Thus, the economic loss rule does not apply to those injuries that occurred in Louisiana.

---

[26] See *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 503 (E.D. Tex. 2001) ("Where...collateral property damage exists in addition to damage to the product itself, the plaintiff can recover in tort as well as in contract.")

[27] La. R.S. 9:2800.53.

## CONCLUSION

Based on the foregoing, the motion for summary filed by Ticona Polymers, Inc. dismissing Brookshire Brothers' claims as time barred will be granted in part to the extent that all claims for injuries that occurred prior to August 15, 2002 have prescribed and will be dismissed; the motion for summary judgment barring Brookshire Brothers' pure economic losses will be granted in part to the extent that Texas law bars recovery for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and denied in part to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss rule does not apply.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 31st day of August ~~July~~, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE