RECEIVED
IN LAKE CHARLES, LA
AUG 3 1 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | : | DOCKET NO. 04-1150 |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a "Motion by Defendant Ticona Polymers, Inc. for Summary Judgment Against Plaintiffs" (doc. #422) wherein the movers seeks to have this Court dismiss Brookshire Brothers' claims of products liability, negligence, implied warranty, redhibition/breach of implied warranty, and punitive damages. Defendant, Ticona Polymers, Inc. ("Ticona") argues that these claims should be dismissed because (1) it is merely a raw material supplier of Fortron, the inner liner of the flexpipe, (2) there is no evidence of leakage in the flexpipe that Ticona provided the inner liner for, and (3) Ticona had no contract with Brookshire Brothers and made no representations or warranties to Plaintiffs.

## FACTUAL STATEMENT

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured,

designed and assembled by Total Containment, Inc. ("TCI").

Brookshire Brothers purchased the flexpipe from Pump Masters, Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a network of "primary pipes" contained within larger "secondary pipes," which connect the underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

Brookshire Brothers alleges that Ticona Polymers, Inc. ("Ticona") participated in the manufacture, design and distribution of the flexpipe at issue in suit.[1] Specifically, Ticona manufactures Fortron, a material used for the inner layer of the flexpipe (sometimes referred to as the fourth generation pipe) that replaced Carilon. Brookshire Brothers alleges that Ticona knew or should have known that Fortron was unsuitable for use in the fabrication of the inner layer; its fitness for such applications had never been established; and Ticona itself questioned the quality of the hose manufactured with Fortron due to bumps in the hose, depressions on the inside of the hose, lack of uniformity of wall thickness, and the existence of microscopic black particles in the hose.[2]

---

[1] Fifth Supplemental and Amended Complaint, ¶ 76.

[2] *Id.* at ¶¶ 38-39.

2

Brookshire Brothers asserts claims in products liability, redhibition and negligence and also seeks exemplary damages.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

---

[3] Fed. R.Civ. P. 56(c).

[4] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Anderson*, 477 U.S. at 249-50.

3

## LAW AND ANALYSIS

*Has Brookshire Brothers produced evidence to create a genuine issue of material fact that the Fortron inner liner was defective?*

Ticona seeks to have all of the claims asserted against it by Brookshire Brothers dismissed because there is no evidence to support those claims. Beginning in 1991 and continuing until approximately August 1994, PMI installed the first generation of TCI flexpipe at Brookshire Brothers' gasoline stations. From 1995 through 1997, PMI replaced all of the TCI Flexpipe at Plaintiffs' gasoline stations with the second generation flexpipe. One year before Brookshire Brothers filed the instant lawsuit, PMI began to use 1503F Flexpipe to repair alleged leaks at its stations and continued to use such pipe for that purpose until recently. The different generations of TCI flexpipe vary in the color of the outer layer (e.g., yellow, bone/tan and blue). TCI used blue for the outer layer of more than one generation. Ticona asserts that those generations in which the outer layer is blue in color can only be visually distinguished from each other by the model number which is marked on the outer layer of the pipe, either "1503" or "1503F".

Ticona maintains that neither Brookshire Brothers nor PMI can identify which, if any, of Plaintiffs' gas stations contain TCI flexpipe which has an inner liner made of Ticona's raw material Fortron, or which is marked 1503F. Ticona further maintains that the undisputed evidence demonstrates that none of the leaking pipe contained an inner liner manufactured from Ticona's raw material Fortron, and none was marked 1503F. Brookshire Brothers maintains that all Flexpipe installed in their places of business after May of 2002 contain components manufactured from Fortron, and that flexpipe recently removed from its Crockett, Texas gas station was manufactured by TCI from Fortron. Brookshire Brothers further alleges that the blue flexpipe containing Fortron

not only elongates unacceptably, constituting a defect in the pipe, but also leaks.

Brookshire Brothers must demonstrate by summary judgment evidence that there is a genuine issue of fact for trial as to whether or not the flexpipe installed at any of the Brookshire Brothers' gas stations contain Fortron, and that such flexpipe is defective.

Brookshire Brothers submits Exhibit 2, an Affidavit by Doug Jones, President of PMI, the TCI distributor which sold, installed and serviced all flexpipe purchased by Plaintiffs. Mr. Jones declared that beginning in May of 2002, Fortron replaced Carilon as the material from which the corrugated (or convoluted) inner tube of TCI 1503-F (colored blue on the outside) was fabricated. Mr. Jones testified that because PMI's inventory records were not adjusted to reflect the difference between 1503 (Carilon inner tube) flexpipe and 1503-F (Fortron inner tube) flexpipe, 1503-F flexpipe was referred to as 1503 flexpipe on PMI invoices.

On May 24, 2006, Mr. James Stulb, CPA, issued a report to account for all flexpipe installed as original or replacement pipe. The Stulb Report lists a substantial amount of 1503 pipe that was installed as replacement pipe. Brookshire Brothers argues that it is more likely than not that all pipe installed after mid-2002, was fabricated in part from Ticona's raw material Fortron.

In his affidavit, Mr. Jones further declares that (1) PMI discontinued the use of 1503F flexpipe on November 1, 2005 when the Texas regulatory agency prohibited further use of TCI's 1503F flexpipe due to its failure to comply with the revised UL Standard 971, (2) a significant amount of 1503F flexpipe is currently in the ground beneath Brookshire Brothers gasoline stations, (3) there have been episodes of the blue 1503F flexpipe elongating and growing after initial installation, such that the flexpipe had to be re-cut and re-coupled, and (4) a blue flexpipe recently (late June, 2006) removed from Crockett, Texas failed with a pinhole in it; this pipe had been

installed on September 30, 2002 such that PMI believes it to be blue 1503F flexpipe even though the markings on the pipe are no longer visible.

Brookshire Brothers submits the deposition of Fred C. Morgan a PMI technician who installed some of the 1503-F flexpipe.[9] On at least two occasions, Morgan had to return to stations where he previously installed blue flexpipe. He observed that the pipe had lengthened by about nine inches in forty or so feet. This expansion made it impossible to reconnect the pipe to the dispenser, thus, he had to shorten the pipe.

Brookshire Brothers submits the deposition testimony of Lloyd F. Boley, a PMI technician who installed most of the 1503-F flexpipe. He testified that the fourth generation flexpipe (with Fortron as the inner liner) which was installed on January 19, 2004 was more likely than not 1503-F flexpipe. The flexpipe had stretched to the point that the line had to be removed to cut off about 6 to 8 inches, and a new coupling had to be installed.[10] Mr. Boley also testified that two other lines which had been installed twelve days prior to the service call also stretched to the point where they had to be shortened; this flexpipe was installed well after mid-2003.[11]

Mr. Boley testified that on July 15, 2004, he found that two blue lines that had been replaced on September 26, 2003 (thus it is likely to be 1503-F flexpipe) had stretched. On November 10, 2004, Mr. Boley had to remove two existing lines that had previously been replaced and shortened because the lines had stretched and would not line up.[12] This flexpipe was blue and according to the

---

[9] Plaintiffs' Opposition to Motion for Summary Judgment, Exhibit 51.

[10] Plaintiffs' Opposition to Motion for Summary Judgment, Exhibit 52, p. 269.

[11] *Id.* at p. 289.

[12] *Id.* at p. 294.

6

Stulb Report was installed on either June 13 or September 17, 2003, or on October 13, 2004 – thus, more likely than not, it is 1503-F flexpipe. Mr. Boley also testified about four additional post-2002 replacements, all of which involved stretched blue flexpipe, all presumably 1503-F.[13] In each instance, the flex pipe had expanded and had to be repaired. Brookshire Brothers had presented summary judgment evidence that creates a genuine issue of material fact for trial as to whether the blue flexpipe has the Fortron inner liner, and whether such pipe is defective due to elongation and stretching.

*Claims of products liability and negligence*

Ticona maintains that Brookshire Brothers has no claims in products liability and negligence because it is only a raw material supplier of a thermoplastic polymer sold under the trade name Fortron, and it did not design, manufacture, sell, market or install any type of underground flexible pipe or components thereof.

Under Louisiana law, Louisiana Revised Statute 9:2800.53(3) defines product under the Products Liability Act as:

> ...a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable...

A claim under the LPLA requires proof that the defendant supplied the product which caused the plaintiff's alleged injury.[14] Ticona supplied Fortron to TCI for use in manufacturing the inner liner of the latest generation of the flexpipe. The court finds that Fortron is a product as defined by the statute.

---

[13] *Id.* at pp. 295 and 308.

[14] See *Gill v. Ethicon, Inc.*, 2003 U.S. Dist. LEXIS 10763, *7(W.D. La. Jan. 7, 2002)

Under Texas law, strict liability for component part manufacturers is limited when the component part is integrated into a larger unit before distribution. If the component part manufacturer does not take part in the design or assembly of the final system or product, he is not liable for defects in the final product *if* the component part itself is not defective.[15] "Product components include raw material, bulk products, and other constituent products sold for integration into other products."[16] Comment *c* to § 5 of the *Restatement Third, Torts: Products Liability* (1997) focuses specifically on raw materials and includes the following:

> *c. Raw Materials.* Product components include raw material. See Comment *a*. Thus, when raw materials are contaminated or otherwise defective within the meaning of § 2(a), the seller of the raw materials is subject to liability for harm caused by such defects.

Brookshire Brothers maintains that the Fortron itself is defective, and thus Ticona can be held liable under both Texas and Louisiana law. Brookshire Brothers submits evidence that hoses constructed from Fortron demonstrated that ridges, cracks and holes were observed after normal, correct application of couplings.[17] Bumps were observe on hose rings fabricated from Fortron.[18] The probable cause of the bumps was unmelted pellets of Fortron.[19] Bumps were linked to pipe bursts in March of 2003.[20] Ticona theorized that "bad lots" (eventually identified as Nos. FS30110086,

---

[15] *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470 at 472 (Tex.App.–Texarkana 1981, writ ref'd n.r.e.)(emphasis added).

[16] *Restatement Third, Torts: Products Liability* (1997), Comment *a*, § 5.

[17] Plaintiffs' Opposition to Motion for Summary Judgment, Exhibit 15.

[18] *Id.* Exhibit 16.

[19] *Id.* Exhibit 16.

[20] *Id.* Exhibit 17.

FS30523171, FS30215086 and FS30417171) might be responsible for the formation of bumps.[21] The defect of at least one of these lots was attributed to a bad shipment of Lotader, an additive.[22] Further communications between Ticona scientists reject the "bad lots" explanation, however, Ticona was aware that there were problems with Fortron. Finally, Brookshire Brothers presents evidence that that even good lots of Lotader cause crosslinking when exposed to higher temperature as a result of excessive residence time in the die. Such cross linking, in turn, prevents "steady flow" during extrusion causing variations in wall thickness and lack of concentricity in the finished pipe.[23] Thin walled pipe is prone to burst. Brookshire Brothers has submitted a genuine issue of material fact as to whether or not the Fortron itself was defective.

*Claims in redhibition (Louisiana) or implied warranty (Texas)*

Ticona argues that a component part supplier cannot be sued for breach of an implied warranty under Texas law citing *Hininger v. Case Corp.*[24]

In *Hininger*, the court held that the plaintiff could not assert an implied warranty claim for economic loss against a component part supplier. In so finding, the court made the following analysis:

> Under Texas law, a warranty of merchantability is implied in every contract for the sale of goods by a merchant, unless the warranty is properly excluded or modified. . . .
> A number of states make privity a requirement for asserting an implied warranty claim for economic loss. However, in *Nobility Homes of Texas, Inc. v.*

---

[21] *Id.*, Exhibits 17, 18, 19, 20, 21, and 22.

[22] *Id.*, Exhibit 19.

[23] *Id.*, Exhibit 22, pp. 106-107.

[24] 23 F.3d 124 (5th Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).

*Shivers,* 557 S.W.2d 77 (Tex.1977), the Texas Supreme Court held that: "a manufacturer can be responsible, without regard to privity, for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability." Thus, the Texas Supreme Court dispensed with the privity requirement and permitted a purchaser to assert an implied warranty claim for economic loss against a remote manufacturer of a finished product.

Today's case, however, presents a related, but different question: Can a purchaser go upstream from the manufacturer of the finished product and assert an implied warranty claim for economic loss against a manufacturer of a component part? Although we find no Texas authorities directly addressing this question, we believe that the experienced Texas district judge in this case properly distinguished between the manufacturer of the finished product and the component part manufacturer. She reasoned that the Hiningers bargained for a "complete and functional Case combine," not wheels and axles and all the myriad components that make up the combine. Thus, the district court concluded that the Hiningers had no expectation that Can-Am or any of the other manufacturers of unbranded components would resolve any problem they might experience with the combines.(citations omitted)[25]

Citing *Metro National Corp. v. Dunham-Bush, Inc.,*[26] Brookshire Brothers attempts to distinguish *Hininger* from the instant case based on its argument that Fortron, the inner layer of the flexpipe is a "central element" of the product and not merely an anonymous, unbranded component. In *Metro,* the Court held that the warranty of the manufacturer of a component part, Dunham-Bush, was intended not only for the benefit of the manufacturer of the Morris ice harvester system, but also to the plaintiff, Metro. The court gave the following reasons for extending the warranty to Metro: (1) Dunham-Bush was the manufacturer of a central element (compressors) of the ice harvester system, (2) the success of the ice harvesters depended largely upon the reliability and suitability of the compressors installed within, (3) Dunham-Bush's name was prominently connected with its compressors, (4) Dunham-Bush was intimately involved in the design and marketing of the Morris

---

[25] *Hininger,* 23 F.3d at 128.

[26] 984 F.Supp. 538 (S.D. Texas 1997).

ice harvester-based thermal storage system to end-users, (5) after the first compressor failed, Dunham-Price made affirmative representations *directly* to Metro which were material considerations in Metro's decision to purchase two additional compressors, and (6) Dunham-Bush communicated to Metro that it intended to offer a special extended warranty of five (5) years to help Morris and Dunham-Bush together enter the thermal storage market.

Brookshire Brothers asserts that Fortron was supposed to meet certain specifications, yet it allegedly failed to meet those specifications. Brookshire Brothers maintains that there is an implied warranty of merchantability to the extent that Ticona failed to meet required specifications. Brookshire Brothers asserts that the Fortron liner was the "central element" of 1503-F because it provided the barrier to the gasoline the flexpipe transported. Brookshire Brothers further asserts that Fortron was a specialty polymer that Ticona specified by Trade name, and TCI's flexpipe depended upon Fortron for its success. The undisputed facts suggest that, as in *Hininger, supra,* the Plaintiffs' herein bargained for a complete and functional flexpipe, not just the inner liner and was interested in the quality of the finished product. Furthermore, this case is distinguishable from *Metro, supra,* in that Ticona made no representations to Brookshire Brothers, did not personally give any assurances to Brookshire Brothers, and did not agree to extend its warranty to further market it product. Accordingly, the Court holds that under Texas law and the undisputed facts of this case with this particular defendant, there is no action for breach of implied warranty.

Brookshire Brothers maintains that under Louisiana law, a consumer has a cause of action in redhibition against a manufacturer based on the manufacturer's implied warranty without any need for privity of contract citing *Firmin, Inc. v. Denham Springs Floor Covering, Inc.,*[27] *Grimaldi Const.*

---

[27] 595 So.2d 1164 (La.App. 1Cir. 1991).

*Inc. v. J.P. and Sons Contractors, Inc.*,[28] *Tonti Properties v. Sherwin-Williams Co.*[29], and *Moreno's Inc. v. Lake Charles Catholic High Schools, Inc.*[30] Ticona argues that "[a]bsent a vendor-vendee relationship there can be no claim based on redhibition," citing *K.E. Pittman v. Kaiser Aluminum & Chem Corp.* and *Cipriano v. Superior Realty & Constr. Corp.*[31]

In each of the cases cited by Brookshire Brothers, the court held that even with no privity the defendant could be held liable in redhibition for a breach of implied warranty. However, none of the cases cited held a component part or raw material supplier liable in redhibition. All of the defendants were either manufacturers, sellers, or distributors whom the court found assumed the position of a manufacturer. In both of the cases cited by Ticona (*K.E. Pittman* and *Cipriano v. Superior Realty & Constr. Corp.*), the court held that because no vendor-vendee relationship existed, there could be no claim in redhibition. In *Pittman*, the defendant was the manufacturer of allegedly defective electrical wires and receptacles used in a home that was the cause of a fire. In *Cipriano*, the defendant was the insurer of the manufacturer of an allegedly defective heater which was the cause of a fire. In *Pitfield v. Dupont Family Playhouses, et al*,[32] the court, citing *Cipriano*, reversed the trial court's refusal to grant summary judgment to dismiss Ford. The suit in redhibition was for the sale of a 1987 Honey motor home (RV) in which the plaintiffs sought the return of the purchase

---

[28] 686 So.2d 935 (La.App. 5 Cir. 1996).

[29] 1999 WL 997502 (E.D. La. 1999).

[30] 315 So.2d 660 (La.1975); See also *Media Production Consultants, Inc. v. Mercedes-Benz of North America*, 262 La. 80, 262 So.2d 377 (1972).

[31] 559 So.2d 879, 882, (La.App. 4th Cir. 1990), *writ denied,* 563 So.2d 885 (La.1990) and 84 So.2d 822 (La.1955).

[32] 571 So.2d 892 (La.App. 5th Cir. 1990), *reh'g denied* (1991).

12

price plus additional damages. The defendants included Dupont Family Playhouses, the dealer who sold the RV, Honey R.V.'s, Inc., the manufacturer of the body of the RV, and Ford Motor Company, the manufacturer of the chassis (including engine and drive train) of the vehicle. The plaintiffs alleged joint and several liability between Ford and Honey. Ford filed a motion for summary judgment, asserting it could not be liable in redhibition because it did not manufacture the vehicle, and neither Ford nor any Ford dealer or entity sold the vehicle. The uncontested facts were that Ford sold the Chassis to an Indiana dealer; the dealer subsequently sold it to Honey; Honey constructed the body of the motor home onto the chassis and marketed the RV under the name "Honey" and; Dupont, a consignment dealer, sold the RV to plaintiffs.

The appellate court noted that the suit was in redhibition, not products liability and pointed out that Louisiana Civil Code article 2520 defines redhibition as the avoidance of a sale, citing *Cipriano*. The court further stated that although this rule was modified by *Media, supra*, "that case [*Media*] is not applicable here, where the relator manufactured only part of the vehicle."[33] Brookshire Brothers cites no cases or law that would allow an action in redhibition against a component part or raw material supplier such as Ticona. Accordingly, under Louisiana law, Brookshire Brothers' claim of redhibition/breach of implied warranty against defendant, Ticona will be dismissed.

*Punitive damages*

The Court has previously ruled that as to the substantive law, Texas law will apply to those injuries that occurred in Texas, and Louisiana law will apply to those injuries that occurred in

---

[33] *Pitfield*, 571 So.2d at 822.

Louisiana.[34] Ticona maintains that Brookshire Brothers' claim for exemplary damages under Texas law should be dismissed because they are a remedy, not an independent cause of action, citing *Robbins v. Payne*.[35] As noted by Ticona, under Louisiana law, "punitive or other 'penalty' damages are not allowable unless expressly authorized by statute."[36] The Louisiana Products Liability Act provides the statutory framework for a products liability claim and does not authorize punitive damages.[37]

Brookshire Brothers first argues that under Louisiana's conflict of laws, this is an exceptional case for which Texas law should be applied to the issue of exemplary damages citing Louisiana Civil Code article 3547.[38] As noted by the comments to article 3547, "[t]his mechanism should be reserved for the truly exceptional cases." Both Texas and Louisiana have policies that would be seriously impaired if its laws were not applied. The Court does not find that this is a truly exceptional case.

Brookshire Brothers has pled that Texas punitive damages under Texas Civil Practice &

---

[34] See Memorandum Ruling dated July 7, 2006.

[35] 55 S.W.3d 740, 747 (Tex.App. – Amarillo [7th Dist.] 2001, writ denied); see also *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 199 (Tex App. – Houston [14th Dist.] 2002).

[36] *Int'l Harvester Credit Corp. v. I.T. Seale*, 518 So.2d 1039, 1041 (La. 1988).

[37] See La.R.S. §§ 9:2800.51 - 9:2800.59 (2004).

[38] Art. 3547. Exceptional cases
The law applicable under Articles 3543-3546 shall not apply if, from the totality of the circumstances of an exceptional case, it is clearly evident under the principles of Article 3542, that the policies of another state would be more seriously impaired if its law were not applied to the particular issue. In such event, the law of the other state shall apply."

Remedy Code section 41.001(7)(B)(1997) applies to this case. Exemplary damages are an element of damages recoverable under a cause of action.[39] Brookshire Brothers has alleged that defendants' conduct regarding the "above acts and omissions . . ."[40], "amounts to constitute a pattern of wanton, reckless, willful and gross negligence and/or malice."[41] Specifically, Texas Civil Practice & Remedies Code § 41.003 provides the following regarding the standard for recovery of exemplary damages:

> (a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery for exemplary damages results from:
> (1) fraud;
> (2) malice; or
> (3) gross negligence.

Accordingly, the court finds that Brookshire Brothers has properly alleged a claim for punitive damages under Texas law.

## **CONCLUSION**

For the reasons set forth above, the motion for summary judgment by defendant Ticona Polymers, Inc. against Plaintiffs, Brookshire Brothers, will be denied in part and granted in part. The motion to dismiss Brookshire Brothers' products liability and negligence claims will be denied, the motion to dismiss Brookshire Brothers' claims of redhibition under Louisiana law and implied warranty under Texas law will be granted, the motion to dismiss Brookshire Brothers' punitive

---

[39] See Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a)(Vernon Supp.2001).

[40] Referring to Brookshire Brothers claims of negligence, redhibition/breach of implied warranty of fitness and merchantability, and products liability.

[41] Plaintiffs' Fifth Supplemental and Amended Complaint, ¶ 100.

15

damages claims for injuries in Louisiana will be granted, the motion to dismiss Brookshire Brothers' punitive damages claims for injuries in Texas will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 31st day of August, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE