RECEIVED
IN LAKE CHARLES, LA
SEP - 1 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDINGS, INC., ET AL** | : | **DOCKET NO. 04-1150** |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (doc. #377) filed by defendant, Shell Chemical LP ("Shell") wherein the mover seeks judgment in its favor pursuant to Federal Rule of Civil Procedure 56. Shell maintains that the claims of Plaintiffs, Brookshire Brothers Holding, Inc., Brookshire Brothers Investment, Inc. and Brookshire Brothers, Ltd. (hereinafter collectively "Brookshire Brothers") are barred by limitations (prescription), the economic loss rule, and Brookshire Brothers cannot prove one or more elements of the causes of action pled.

## STATEMENT OF FACTS

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI").

Brookshire Brothers purchased the flexpipe from Pump Masters, Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a network of "primary pipes" contained within larger "secondary pipes," which connect the

underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

Specifically, Brookshire Brothers asserts claims of negligence, negligent misrepresentation, products liability and breach of implied warranty against Shell. Brookshire Brothers alleges that Shell participated in the manufacture, design and distribution of the flexpipe at issue in this matter.[1] Brookshire Brothers asserts that Shell marketed their experimental Carilon polymer for use in gas distribution systems,[2] was instrumental in the design and testing of Carilon in TCI's Enviroflex system, and was actively involved in the manufacturing of the primary hose.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[1] Plaintiffs' Fifth Supplemental and Amended Complaint, ¶¶ 76, 81.

[2] In approximately late 1993, TCI began using a thermoplastic resin call Carilon manufactured by Shell for the inner layer of some of the primary hose. Andforth Aff. Defendant's Exhibit M at ¶ 4-5. For most of the relevant time period, Dayco Products, Inc. constructed this hose for TCI and Cleveland Tubing, Inc. co-extruded the Carilon, along with a layer of thermoplastic urethane, to form the inner layer of the second-generation tube. *Id.* at ¶¶ 5-6. In the late 1990s, TCI began performing all of these manufacturing tasks itself. *Id.* at ¶ 6.

2

material fact and that the moving party is entitled to judgment as a matter of law."[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

*Are Brookshire Brothers' claims against Shell prescribed?*

Shell maintains that all of Brookshire Brothers' claims are barred by the statute of limitations regardless of whether Texas or Louisiana law applies.

Under Louisiana's Conflict of Laws, Louisiana Civil Code article 3549 provides the law governing liberative prescription as follows:

---

[3] Fed. R.Civ. P. 56(c).

[4] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Anderson*, 477 U.S. at 249-50.

3

A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.

B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:

(1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

(2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

Whether the substantive law of this state or of another state would be applicable to the merits of this action, Louisiana's prescriptive and peremption law applies. Brookshire Brothers chose to file suit in Louisiana and has presented no compelling consideration of remedial justice.[9] Accordingly, Brookshire Brothers' causes of action are subject to a liberative prescription period of one year.[10]

---

[9] La. Civ. Code art. 3549 B(1).

[10] La. Civ. Code art. 3492 – delictual actions; La. Civ. Code art. 2534(A)(1) – redhibitory defects; *Division Place Partnership v. Carl E. Woodward, Inc.*, 806 So.2d 912 (La. App. 4 Cir. 2002)(Liberative prescription of one year is applicable to delictual actions so that a products liability claim is also subject to a one-year limitation from injury or damage from the date the victim became aware of defect).

Louisiana's prescriptive period starts when "the plaintiff has actual or constructive notice of the tortious act, the resulting damage, and the causal connection between the two."[11] A Plaintiff has constructive notice of a claim when it has notice to call for inquiry about it.[12] "[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury."[13] "[N]otice enough to excite plaintiff's attention and put her on guard to prompt inquiry ... is tantamount to knowledge or notice of everything to which inquiry might lead."[14]

Shell presents a series of events dating back to the early 1990s and argues the Brookshire Brothers knew of the integrity of the TCI system more than a decade before filing suit. Brookshire Brothers relies on statements made by TCI and PMI that TCI would stand behind its product and/or assurances that the flexpipe was capable of performing as it should. Brookshire Brothers is not legally entitled to rely upon any representations by those parties that would in any way affect the liability of Shell, specifically as it might affect tolling the statute of limitations. There is no dispute that Brookshire Brothers had sufficient knowledge of the recurring problems with the flexpipe system. Furthermore, having actual knowledge of the leaks within the flexpipe system, Brookshire Brothers had sufficient notice to prompt further inquiry to seek out those allegedly responsible. Accordingly, the Court finds that all claims made prior to one year from the filing of suit – August 15, 2002, have prescribed under Louisiana's one-year prescriptive period.

---

[11] *Doucet v. LaFourche Parish Fire Protection Dist. No. 3*, 589 So.2d 517, 519 (La.App. 1 Cir. 1991).

[12] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999).

[13] *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987).

[14] *Mistich v. Cordis Mfg. Co.*, 607 So.2d 955, 956 (La.App. 4 Cir. 1992).

*Are Brookshire Brothers' claims barred by the economic loss rule?*

Shell assumes that Texas law applies and maintains that the Texas economic loss rule bars each of Brookshire Brothers' tort-based claims. Brookshire Brothers argues that Louisiana law applies and that the economic loss rule is inapplicable; however, if Texas law applies, the economic loss rule does not apply to a negligence based claim. Finally, Brookshire Brothers argues that the economic loss rule does not bar its recovery for damage to "other property."

A Federal court applies the conflict of law rules of the state in which it sits.[15]

Louisiana Civil Code article 3515 provides the following concerning the applicable law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana Civil Code article 3542 provides the general rule regarding delictual and quasi-delictual obligations:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any between the parties was centered; and (2) the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

---

[15] *Klaxon v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941).

Brookshire Brothers argues that Louisiana's policies would be most seriously impaired if its law were not applied to the issue because of Louisiana's policy of full reparation and recovery. Louisiana Civil Code article 3515 instructs the court to evaluate the states' policies "in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties. . . ."

The TCI pipe was sold to Pump Masters, Inc. ("PMI") and shipped to its offices in Shreveport, Louisiana. Brookshire Brothers purchased the pipe from PMI in Shreveport for installation at its stations in Louisiana and Texas. Shell is a Delaware corporation with its domicile and principal place of business in Texas. The Brookshire Brothers entities are Texas partnerships or corporations with a Texas domicile. Brookshire Brothers Holding, Inc. is a Nevada corporation with a principal place of business in Louisiana; its wholly owned subsidiary, Brookshire Brothers Management, Inc. is a Texas Corporation which manages Brookshire Brother's Ltd., a Texas limited partnership that owns the retail gasoline business. More than 90% of the relevant flexpipe system installations are in Texas; more than 90% of the leaks occurred in Texas. Even though the sale of the flexpipe took place in Louisiana, Shell was not a party to that contract. TCI, PMI and Brookshire Brothers representatives met at Brookshire Brothers' headquarters in Lufkin, Texas to discuss warranty and insurance coverage issues concerning the leaking flexpipe.

After considering the impact of applying either state's laws in light of each state's relationship to the parties and the dispute, the place of injury, the expectation of the parties, the domicile and place of business of the parties, the Court finds that Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that

occurred in Louisiana.

For those injuries that occurred in Texas, and applying Texas' law, we must now decide if the economic loss rule is applicable and bars Brookshire Brother's claims. Generally, the economic loss rules bars recovery for purely economic loss in product defect related tort actions, regardless of whether the action is brought under negligence or strict product liability, when there is no accompanying personal injury or property damage to "other property."[16]

In *Hou-Tex v. Landmark Graphics*,[17] the appeal court barred plaintiff's economic recovery as to the negligence claims. In *Hou-Tex*, a gas and oil company filed an action against Landmark, a computer software developer, alleging among other things, negligence and negligent misrepresentation of the software's abilities. Hou-Tex hired a geological contractor named Saguaro Seismic Surveys, L.C. ("Saguaro"). Saguaro conducted a geophysical survey and interpreted its seismic data with a computer software program called SeisVision to help choose the best location for the oil well. SeisVision helped to select a site called Angerstein No. 1, and drilling started on January 16, 1996. The oil well was a dry hole.

The SeisVision had a "bug" which miscalculated data. Saguaro reported this bug to SeisVision's developer at Landmark. Landmark already knew about the bug and had corrected the problem in an updated version of SeisVision. Even though Landmark sent the updated version to some its clients, it failed to send it to Anasazi, the consultant company hired by Saguaro to provide

---

[16] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex. 1986); See also *Mid-Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 311 (Tex. 1978); *Harris Packaging Corp. v. Baker Concrete Const. Co.*, 982 S.W>2d 62, 65 (Tex.App.–Houston [1st Dist.] 1998, pet. denied); *Indelco, Inc. v. Hanson Ind. North America-Grove Worldwide*, 967 S.W.2d 931, 932 (Tex.App.–Houston [14th Dist.] 1998, pet. denied).

[17] 26 S.W.3d (Tex.App-Houston[14 Dis]2000).

software support.

The trial court granted summary judgment in favor of Landmark. On appeal, Hou-Tex maintained that summary judgment on its negligence claims was error because Landmark owed it a duty (1) to inform Saguaro about the bug in SeisVision, and (2) to ensure that SeisVision worked correctly. Landmark responded that it owed no duty in tort to Hou-Tex and that Hou-Tex's claims sounded in contract. Hou-Tex denied that its claims sounded in contract, and argued instead that every manufacturer owed a duty to third party beneficiaries/users of its products.

The appeal court noted that Hou-Tex suffered only economic damages for its costs of drilling a dry well. Given that fact, the court held that the economic loss rule precluded any duty in tort by Landmark to Hou-Tex. The court further recognized that the Texas Supreme Court had not addressed whether the economic loss rule precluded a third party's negligence claim for economic loss. However, the Fifth Circuit Court of Appeals, in analyzing Texas law, had addressed the issue in *Hininger, supra*. The *Hou-Tex* court held that "[p]ermitting Hou-Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou-Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with the SeisVision's licensees.

Shell's product, Carilon, was used by Dayco Products, LLC ("Dayco"), Cleveland Tubing, Inc. ("Cleveland Tubing") and TCI for the inner liner of the flexpipe, which was sold and shipped to PMI in Shreveport, Louisiana. Shell had contracts with Dayco and Cleveland Tubing that set forth the rights and obligations of the parties. Permitting Plaintiffs to recover pure economic damages for a claim in negligence would disrupt the risk allocations between these parties. Accordingly, the economic loss rule is applicable to the negligence claims for injuries that occurred in Texas.

Brookshire Brothers has also alleged that it has sustained damage to "other property." The economic loss rule does not bar recovery to "other property."[18] Brookshire Brothers contends that it has sustained environmental pollution to land from the defective flexpipe and further asserts that it had discovered contamination at its stores in Lufkin and Sour Lake, Texas and DeRidder, Louisiana. Because environmental pollution to land is damage to other property, the economic loss rule does not bar its recovery.

For those injuries that occurred in Louisiana, there is no economic loss rule. Louisiana law provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code article 2315. Thus, the economic loss rule does not apply to those injuries that occurred in Louisiana.

*Is Brookshire Brothers' product liability claims barred because Shell is a raw-material supplier?*

Shell maintains that because it is a mere raw-material supplier of the flexpipe, it cannot be liable for any alleged defect in the construction, composition, or design of the primary hose or the TCI flexpipe system. Shell cites *Bostrom Seating, Inc. v. Crane Carrier Co.*,[19] which held that a component-part supplier is only liable for a defect in the finished product if one of two limited circumstances exists: (1) if the component part is itself defective and the defect causes the harm, or (2) if the component-part manufacturer substantially participates in the integration of the component into the design of the product, the integration causes the product to be defective, and the defect causes the harm.[20]

---

[18] See *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 503 (E.D. Tex. 2001) ("Where...collateral property damage exists in addition to damage to the product itself, the plaintiff can recover in tort as well as in contract.")

[19] 140 S.W.3d 681, 683 (Tex.2004).

[20] See also RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5(1998).

Shell argues that the Carilon itself is not defective, either in its design or manufacture and/or it is incapable of having a design defect. Shell further argues that it had limited involvement in the overall TCI flexpipe system and it did not design or manufacture the TCI flexpipe system or the primary hose.

Brookshire Brothers maintains that there is a genuine issue of fact for trial as to whether the Carilon itself is defective and whether such defect caused or contributed to the problems with the primary hose. Brookshire Brothers further maintains that there is a genuine issue of material fact as to whether or not Shell played an integral part in the design and manufacture of the primary hose. Brookshire Brothers submits the following summary judgment evidence: (1) exhibits from the depositions of Carlton Ash and John Flood, (2) a Memorandum of Discussion, Product Development Team Meeting #6, dated May 31, 1996, (3) e-mail correspondence, and (4) a Memorandum of Discussion dated October 20-21, 1997.

The summary judgment evidence reveals the following: "Since 1992, Dayco and Total Containment Inc.(TCI) have used Shell's CARILON® Polymer as a barrier layer in the construction of duel-containment fuel-transfer hose."[21] "Shell representatives worked extensively with Dayco and Cleveland Tubing. . . . educating both companies about handling and processing engineering thermoplastics like PK."[22] "Shell suggested several modifications to the co-extrusion equipment which were implemented."[23] "Shell representatives continued to work with both Cleveland Tube

---

[21] Exhibit 30 to Plaintiff's opposition to motion for summary judgment, Exhibit A.

[22] *Id.*

[23] *Id.*

11

and Dayco to improve their equipment and processing procedures."[24]

"Shell representatives visited Cleveland Tube and saw not only large chunks of black degraded PK but also unmelted pellets, that were later determined to be E-Polymer contamination. ... The presence of the E polymer caused shear heating during processing, that in turn caused additional polymer degradation. The unmelted pellets ruptured the breaker plate and grooved the die. Shell covered the cost of repairing the equipment and replaced the contaminated polymer."[25]

". . . Shell was chronically short of PK polymer in late 1996. Working with Dayco's permission, Shell supplied older MDU product and product with different stabilizer packages; 27, 43, 51 and an experimental package containing UV stabilizers. Cleveland Tube began complaining of "burning" again. Shell verified that there was no E-Polymer contamination. Dayco felt that the burning was most likely a result of using old PK polymers."[26]

"In early 1997, Shell had no acceptable CPP product. Dayco continued to get by on old MDU product."[27] "Late in 1997, TCI started having problems with their installed flex hose."[28] "Relationships between Dayco and TCI deteriorated rapidly in 1998. TCI dropped Dayco as a hose supplier and began making the core tubing themselves at Cleveland Tube."[29] "In March of 1998, Homer Holden, Vice President, Technical for TCI, reported extremely severe melt processing

---

[24] Id.

[25] Id.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

problems with PK."[30] "With some difficulty we were able to determine what happened to cause this sudden onset of melt stability problems. Evidently, during the last several months, when the machine operators at Cleveland Tube had melt stability problems with a lot of PK, they would switch to a different lot of polymer (most likely a MDU Polymer) and put the problematic lot back in inventory. The operators did not notify Shell, Dayco or their own management. As a result, neither Shell nor Dayco knew that the CPP Polymers were unacceptable. Meanwhile, Cleveland Tube built up an inventory of nearly 80,000 lb. PK, with poor melt stability."[31]

"At this point, it was important to determine if any current CPP polymer was stable enough the [sic] process in Cleveland Tube's extrusion equipment. . . . Once, after a brief stop, we saw yellow globs in the extrudate indicating some dead areas in the flow path. . . . we saw thick black buildup at the end of the screw, . . . Seeing this, Shell offered to help redesign the head and adapter and screw to improve the flow path."[32]

"Homer Holden, following Shell's suggestions, modified Cleveland Tube's equipment."[33] "Since March 98, Cleveland has run mostly CPP product: . . . The reject rate is between 10 to 20 percent during this period; however, at least 50% of the rejects were caused by things not related to the PK polymer. The conclusion was the CPP polymers sent recently were better than those sent prior to March; however good CPP product still does not run as well as good MDU product."[34]

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

"Shell and TCI have agreed to continue looking into improvements in the equipment design at Cleveland Tube and we will continue to monitor ongoing production at CT to try and develop relationships between our melt stability testing and successful runs at Cleveland Tube.[35]

Brookshire Brothers provides other evidence that Shell was aware that Carilon Polymer degradation was a problem in general extrusion operations and of the tendency of Carilon pipes to rupture and crack during production.[36] Brookshire Brothers presents evidence that Shell had been involved with the extrusion processes of other companies and was aware of a problem with bubbles or voids in the pipe which led to holes in the Carilon layer of the pipe.[37] The Court finds that Brookshire Brothers has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether the Carilon was defective and caused the flexpipe to leak. Furthermore, Brookshire Brothers has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether Shell materially participated in the integration of the Carilon as the inner liner of the flexpipe.

*Does Brookshire Brothers have a claim of implied warranty?*

In their complaint, Brookshire Brothers alleges that Shell manufactured the pipes/hose sold to the plaintiffs and is "presumed to know of the redhibitory vices, and/or defects which are in the pipes/hose sold to the plaintiffs."[38] Brookshire Brothers further alleges that Shell "impliedly warranted that the enviroflex pipe was fit for its intended particular purpose, for the transport of

---

[35] *Id.*

[36] Plaintiffs' opposition to motion for summary judgment, exhibit B.

[37] Plaintiffs' opposition to motion for summary judgment, exhibit C.

[38] Fifth Supplemental and Amended Complaint, ¶ 81.

14

gasoline and gasoline products but due to the excessive failure of the hose and leaking, the hose is useless for its intended purpose and has become so inconvenient and costly to the plaintiffs, that plaintiffs would not have ever purchased the hose had plaintiffs known of the defects contained in the hose."[39] Hence, Shell breached the implied warranty of fitness and merchantability.

Shell maintains that it cannot be liable for any implied warranty associated with the enviroflex pipe because it did not design or sell the pipe.[40] Shell further argues that even if Brookshire Brothers' claim for breach of implied warranty was limited to Carilon, Shell fully disclaimed any applicable statutory implied warranties under the Texas Uniform Commercial Code.[41] Again, Shell assumes that Texas law applies and makes no argument regarding the application of Louisiana law. As stated in this Court's Memorandum Ruling dated July 7, 2006, document no. 481, "Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana." Hence, the Court will determine if Brookshire Brothers has a claim of implied warranty under both Texas and Louisiana law.

The Court finds that Shell who supplied Carilon is in the same position as Ticona, who supplied Fortron to be used for the inner liner of the flexpipe. In this Court's Memorandum Ruling dated August 31, 2006, we held that under Texas law Brookshire Brothers has no action for breach of implied warranty, and under Louisiana law Brookshire Brothers has no action in redhibition for a breach of implied warranty. For those same reasons, the Court finds that Brookshire Brothers

---

[39] Fifth Supplemental and Amended Complaint, ¶ 84.

[40] Shell cites TEX. BUS. & COM. CODE § 2.315 (when "the seller" has reason to know a good will be used for a particular purpose and that the buyer is relying on the seller's skill, an implied warranty may attach).

[41] *Id.* § 2.316.

15

Brothers has no action against Shell for a breach of implied warranty or in redhibition under the laws of either Texas or Louisiana. Because the Court does so find, it is not necessary for the Court to further determine if Shell's disclaimer of the implied warranties is valid.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted in part and denied in part. The motion to dismiss all of Brookshire Brothers' claims as time barred will be granted to the extent that all claims for injuries that occurred prior to August 15, 2002 have prescribed and will be dismissed; the motion to dismiss Brookshire Brothers' negligence claims because they are barred by the economic loss rule will be granted to the extent that Texas law bars recovery for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and denied to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss rule does not apply; the motion to dismiss Brookshire Brothers' claims of products liability will be denied; and the motion to dismiss Brookshire Brothers' claims of breach of implied warranty and redhibition will be granted.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this __1st__ day of September, ~~August~~, 2006.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

16