U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 2 6 2006

ROBERT H. SHEMWELL, CLERK
BY_____
      DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | : | DOCKET NO. 04-1150 |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is "Dayco Product's L.L.C.'s and Mark IV Industries LTD's Motion for Summary Judgment Dismissing Plaintiffs' Claims as Barred by the Economic Loss Rule." (Doc. #440). Defendants, Dayco Products, L.L.C. and Mark IV Industries, Ltd. (collectively referred to as "Dayco") move for summary judgment in their favor asserting that Plaintiffs' tort based claims – negligence and products liability – should be dismissed because they are barred by the economic loss rule.

## FACTUAL STATEMENT

This litigation involves a number of failures and/or leaks of underground Enviroflex pipe ("flexpipe"). The Plaintiffs, Brookshire Brothers, is a chain of retail grocery stores located in East Texas and West Louisiana. The retailer operates and sells gas to consumers at each of its grocery stores. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI").

Brookshire Brothers purchased the flexpipe from Pump Masters, Inc. ("PMI") and had it installed in virtually all of its seventy-eight (78) retail locations. The systems are comprised of a

network of "primary pipes" contained within larger "secondary pipes," which connect the underground fuel storage tanks to the above-ground fuel dispensers. The systems incorporate numerous other components, such as sumps, connectors, couplings, and fittings. The secondary pipe is intended to contain any fuel that escapes from the primary pipe, as well as to protect the primary pipe.

Brookshire Brothers alleges that the underground flexpipe leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced.

Brookshire Brothers alleges that Dayco participated in the design, manufacture and sales of the flexpipe. As a result of these alleged leaks, Brookshire Brothers seeks to recover damages including economic loss and the cost to repair and replace the flexpipe.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[2] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts

---

[1] Fed. R.Civ. P. 56(c).

[2] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

showing that there is a genuine issue for trial.[3] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[4] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[5] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

## **LAW AND ANALYSIS**

Brookshire Brothers has asserted a cause of action in products liability and negligence against Dayco. Dayco argues that Texas law governs the substance of Brookshire Brothers' claims, and further, Texas law does not recognize a tort claim for the economic loss that Brookshire Brothers seeks to recover.[7] Brookshire Brothers argues that Louisiana law applies, however, if Texas law applies, the economic loss rule does not apply to a negligence based claim. Finally, Brookshire Brothers argues that the economic loss rule does not bar its recovery for damage to "other property."

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Anderson*, 477 U.S. at 249-50.

[7] The rationale of Texas' economic loss rule is that the commercial purchaser of the defective product from a commercial seller is relegated to pursuing contractual and warranty claims against the seller rather than tort claims against them. Texas law recognizes as a matter of policy that the Uniform Commercial Code "supplies a complete framework of rights and remedies for transacting parties" and that such "losses resulting from product transactions are best covered by contract liability under the Code." *Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312 (Tex. 1978).

3

A Federal court applies the conflict of law rules of the state in which it sits.[8]

Louisiana Civil Code article 3515 provides the following concerning the applicable law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana Civil Code article 3542 provides the general rule regarding delictual and quasi-delictual obligations:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any between the parties was centered; and (2) the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Brookshire Brothers argues that Louisiana's policies would be most seriously impaired if its law were not applied to the issue because of Louisiana's policy of full reparation and recovery. Dayco asserts that Texas law should apply because Texas' policies would be most seriously impaired if its laws were not applied, the majority of the alleged leaking flexpipe was installed in Texas, the situs of the majority of the injuries occurred in Texas, and finally, the Brookshire entities are Texas partnerships or corporations with a Texas domicile.

---

[8] *Klaxon v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941).

Louisiana Civil Code article 3515 instructs the court to evaluate the states' policies "in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties. . . ."

The TCI pipe was sold to PMI and shipped to its offices in Shreveport, Louisiana. Brookshire Brothers purchased the pipe from PMI in Shreveport for installation at its stations in Louisiana and Texas, the majority of which were in Texas. Dayco is a Delaware limited liability company that is a wholly owned subsidiary of Mark IV Industries, Ltd., which is also a Delaware corporation. The Brookshire Brothers entities are Texas partnerships or corporations with a Texas domicile. Brookshire Brothers Holding, Inc. is a Nevada corporation with a principal place of business in Louisiana; its wholly owned subsidiary, Brookshire Brothers Management, Inc. is a Texas Corporation which manages Brookshire Brother's Ltd., a Texas limited partnership that owns the retail gasoline business. More than 90% of the relevant flexpipe system installations are in Texas; more than 90% of the leaks occurred in Texas. Even though the sale of the flexpipe took place in Louisiana, Dayco was not a party to that contract. TCI, PMI and Brookshire Brothers representatives met at Brookshire Brothers' headquarters in Lufkin, Texas to discuss warranty and insurance coverage issues concerning the leaking flexpipe.

After considering the impact of applying either state's laws in light of each state's relationship to the parties and the dispute, the place of injury, the expectation of the parties, the domicile and place of business of the parties, the Court finds that Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana.

For those injuries that occurred in Texas, and applying Texas' law, we must now decide if the economic loss rule is applicable and bars Brookshire Brother's claims. Dayco maintains that economic damages are not recoverable unless they are accompanied by actual physical harm to persons or other property.[9] Dayco further maintains that Texas courts have created a well-established distinction between tort recovery for physical injuries and warranty recovery for economic loss, barring pure economic damages in strict liability and negligence claims.[10] In *Hou-Tex v. Landmark Graphics*,[11] the appeal court barred plaintiff's economic recovery as to the negligence claims. In *Hou-Tex*, a gas and oil company filed an action against Landmark, a computer software developer, alleging among other things, negligence and negligent misrepresentation of the software's abilities. Hou-Tex hired a geological contractor named Saguaro Seismic Surveys, L.C. ("Saguaro"). Saguaro conducted a geophysical survey and interpreted its seismic data with a computer software program called SeisVision to help choose the best location for the oil well.

---

[9] See *Mid-Continent Aircraft Corp., supra,*; *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1177-78 and n.8 (5th Cir. 1988)(citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986); *Hininger v. Case Corp.*, 23 F.3d 124, 125-27 (5th Cir. 1994); *American Eagle Ins. Co. v. United Technologies Corp.*, 48 F.3d 142, 144-45 (5th Cir. 1995).

[10] *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W. 2d 77, 79 (Tex. 1977) (strict liability claim precluded under economic loss rule); *Mid Continent Aircraft Corp., supra* (strict liability and negligence claims precluded under economic loss rule); *Murray v. Ford Motor Co.*, 97 S.W. 3d 584, 586-87 (Tex.App. – Houston [14th Dist] 2003, pet. filed)(strict liability and negligence claims precluded under economic loss rule); see also *Indelco, Inc. v. Hanson Industries North America-Grove Worldwide*, 967 S.W.2d 931, 932-33 (Tex.App. – Houston [14th Dist.] 1998, pet. denied)(strict liability, negligence and DTPA claims precluded under economic loss rule); *Equistar Chem., L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584, 586-87 (Tex.App. – Houston [14th Dist.] 2003, pet. filed)(strict liability and negligence claims precluded under the economic loss rule).

[11] 26 S.W.3d (Tex.App-Houston[14th Dist]2000).

SeisVision helped to select a site called Angerstein No. 1, and drilling started on January 16, 1996. The oil well was a dry hole.

The SeisVision had a "bug" which miscalculated data. Saguaro reported this bug to SeisVision's developer at Landmark. Landmark already knew about the bug and had corrected the problem in an updated version of SeisVision. Even though Landmark sent the updated version to some its clients, it failed to send it to Anasazi, the consultant company hired by Saguaro to provide software support.

The trial court granted summary judgment in favor of Landmark. On appeal, Hou-Tex maintained that summary judgment on its negligence claims was error because Landmark owed it a duty (1) to inform Saguaro about the bug in SeisVision, and (2) to ensure that SeisVision worked correctly. Landmark responded that it owed no duty in tort to Hou-Tex and that Hou-Tex's claims sounded in contract. Hou-Tex denied that its claims sounded in contract, and argued instead that every manufacturer owed a duty to third party beneficiaries/users of its products.

The appeal court noted that Hou-Tex suffered only economic damages for its costs of drilling a dry well. Given that fact, the court held that the economic loss rule precluded any duty in tort by Landmark to Hou-Tex. The court further recognized that the Texas Supreme Court had not addressed whether the economic loss rule precluded a third party's negligence claim for economic loss. However, the Fifth Circuit Court of Appeals, in analyzing Texas law, had addressed the issue in *Hininger, supra*. The *Hou-Tex* court held that "[p]ermitting Hou-Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou-Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with the

SeisVision's licensees. Dayco designed and manufactured the flexpipe for TCI.[12] Accordingly, the economic loss rule is applicable to any strict liability and negligence claims asserted by Brookshire Brothers.

However, that does not end the analysis. Brookshire Brothers has alleged that it has sustained damage to "other property." The economic loss rule does not bar recovery to "other property."[13] Brookshire Brothers contends that it has sustained environmental pollution to land from the defective flexpipe and further asserts that it has discovered contamination at its stores in Lufkin and Sour Lake, Texas and DeRidder, Louisiana. Because environmental pollution to land is damage to other property, the economic loss rule does not bar its recovery.

Brookshire Brothers has alleged claims in redhibition and products liability against Dayco. The Louisiana Products Liability Act ("LPLA") provides the following concerning damages:

> (5) "Damage" means all damage caused by the product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled "Redhibition," does not allow recovery for such damage or economic loss. Attorneys' fees are not recoverable under this Chapter.[14]

For those injuries that occurred in Louisiana, there is no economic loss rule. Louisiana law provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code articles

---

[12] See Exhibit D (UL's Answer to Interrogatory No. 6 and Response to Request for Production of Documents No. 3) and Exhibit E ("Follow-Up Service Agreement") attached to Brookshire Brothers opposition to UL's motion for summary judgment.

[13] See *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 503 (E.D. Tex. 2001) ("Where...collateral property damage exists in addition to damage to the product itself, the plaintiff can recover in tort as well as in contract.")

[14] La. R.S. 9:2800.53.

2315, 2520 *et seq.*, and the LPLA. Thus, the economic loss rule does not apply to those injuries that occurred in Louisiana.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment barring Brookshire Brothers' pure economic losses is hereby **GRANTED IN PART** to the extent that Texas law bars recovery for claims of negligence and strict liability for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and **DENIED IN PART** to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss rule does not apply.

The Court determines that there is no just reason for delay and will direct entry of final judgment under 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of September, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE