RECEIVED
IN ALEXANDRIA, LA
DEC 11 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC., ET AL** | : | **DOCKET NO. 04-1150** |
| VS. | : | **JUDGE TRIMBLE** |
| TOTAL CONTAINMENT, INC., ET AL | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment Against Commerce & Industry Insurance Company" (doc. #507) filed by Brookshire Brothers Holding, Inc., Brookshire Brothers Management, Inc., and Brookshire Brothers Limited ("Brookshire Brothers") wherein the mover seeks a ruling as a matter of law regarding the following issues:

1. PMI is an additional insured under TCI's policies from 10/20/2000 to 6/30/01;
2. TCI received and recorded a notice of claim from Brookshire Brothers which meets the requirements of the policies;
3. All of Brookshire Brothers' purchases of flexpipe came after the Retroactive Date stated by the policies;
4. All claims for damages because of property damage made by Brookshire Brothers are deemed to have been made at the time at which the first of those claims was made against any C & I insured;
5. C & I's additional insured, PMI, also received and recorded a notice of claim from Brookshire Brothers which meets the notice requirements of the policies;
6. Notice is not an enforceable requirement in a suit – such as this one– in which C & I is impleaded pursuant to Louisiana's Direct Action Statute;
7. C & I's policies did not require that TCI or PMI give notice of Brookshire Brothers' claims to C & I, and alternatively, that the Direct Action Statute does not permit the enforcement of any such requirement;
8. Endorsement #11 to the C & I policies excludes, at most, coverage for only part of Brookshire Brothers' claims;
9. The Pollution Exclusion contained in Endorsement #7 of the C & I policies does not apply to Brookshire Brothers' claims;
10. Endorsement #11 to the C & I policies cover those TCI warranty obligations to

Brookshire Brothers which arise from property damage caused by an occurrence;

11. C & I insures TCI for any punitive or exemplary damages to which Brookshire Brothers recovers from TCI;

12. Only one $100,000 Self-Insured Retention applies during each C & I policy period; and

13. That the obligation of other good, valid and collectible insurance (including first-party UST coverage held by Brookshire Brothers) to respond to Brookshire Brothers claims is not affected by the rulings which Brookshire Brothers seeks.

## FACTUAL STATEMENT

Brookshire Brothers is a chain of retail grocery stores located in East Texas and West Louisiana. At each of its grocery stores, the retailer operates and sells gas to consumers which requires the use of underground storage tanks ("tanks"). Complaint, ¶ 1. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by TCI. Complaint, ¶ 3 Brookshire Brothers alleges that Dayco Products, Inc., Ticona Polymers, Inc., Shell Chemical, LP and Cleveland Tubing, Inc. participated in the design, manufacture and sales of the flexible pipe, and manufactured and supplied different component parts for use in TCI's flexible pipe. Complaint, ¶ 5. The remaining defendants, including C & I, have allegedly issued liability insurance policies to these defendants. Complaint, ¶ 20.

Brookshire Brothers purchased the pipes manufactured by these defendants and installed it in virtually all of its seventy-eight (78) retail locations. Complaint, ¶ 6. Brookshire Brothers alleges that the underground enviroflex pipes leak, whereas, TCI maintains that the pipes are not the cause of the leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced. Complaint, ¶ 10. Brookshire Brothers asserts that it has had to expend substantial monies in replacing the leaking pipes, and that TCI has refused to reimburse it or agree to replace the TCI pipes with non-leaking pipes. Brookshire

2

Brothers further asserts that TCI replaced the leaking pipes with more TCI pipes that leaked, resulting in further successive damage. Complaint, ¶ 11.

Brookshire Brothers asserts that C & I, as the insurer of TCI, is liable for the damages arising from the allegedly defective flexpipe.[1] Brookshire Brothers seeks to recover past and future costs to replace flexpipe that leaks with new flexpipe, and to permanently replace all flexpipe with fiberglass pipe.[2] Brookshire Brothers also seeks to recover the costs of remediation of all sites that are contaminated with gasoline,[3] and other losses that include loss of sales, profits and product, associated with closures to temporarily and permanently replace the flexpipe.[4]

C & I issued four claims-made insurance policies for the benefit of TCI covering the period June 30, 1999 to December 24, 2002; (1) No. 546-85-09, effective June 30, 1999, to June 30, 2000; (2) No. 546-87-45, effective June 30, 2000, to June 30, 2001; (3) No. 546-89-97, effective June 30, 2001, to June 30, 2002; and (4) No. 546-93-58, effective June 30, 2002, to June 30, 2003. Policy No. 546-89-97, the 2002 policy[5], was cancelled by endorsement as of December 24, 2002.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

---

[1] Complaint, ¶ 103.

[2] Complaint, ¶ 106(i).

[3] *Id.*

[4] Complaint, ¶ 106(ii), (iii), (vi), (viii).

[5] Referred to by its beginning year.

3

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[7] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[8] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[9] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[10] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[11] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[12] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13]

---

[6] Fed. R.Civ. P. 56(c).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[8] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[9] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[10] *Anderson*, 477 U.S. at 249.

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[13] *Anderson*, 477 U.S. at 249-50.

## LAW AND ANALYSIS

*Is PMI an additional insured under TCI's policies from 10/20/2000 to 6/30/01?*

Brookshire Brothers maintains that PMI was an additional insured under the policies for the period 10/20/2000 to 6/30/01. C & I does not deny this assertion, it only states that it is not relevant to deciding this motion. Brookshire Brothers submits a "Certificate of Liability Insurance" issued by Aon Risk Services, Inc. of Pennsylvania to PMI dated 10/20/2000[14] and 7/06/2001[15] which certifies that PMI is an additional insured under the Vendor's Liability Endorsement under the policy issued by C & I to TCI. Endorsement #1 to the C & I policy[16] provides, in pertinent part, that "Certificate holders for whom the Named Insured has agreed to supply insurance, are added as Additional Insured, but only in respect of liability arising from the Named Insured's operations." Accordingly, PMI was an additional insured under the policies issued by C & I to TCI between 10/20/2000 and 6/30/01.

*Did TCI receive and record a notice of claim from Brookshire Brothers which meets the requirements of the policies?*

Brookshire Brothers maintains that it gave notice of a claim pursuant to C & I's insurance policy. Specifically, Brookshire Brothers asserts that it gave notice of a claim for damages resulting from an overflow of gasoline at its Dayton, Texas station on June 21, 22, 2000. Brookshire Brothers submits as summary judgment evidence, a letter from Tony P. Adamson, Vice-President for Sales and Marketing of TCI, to J.Leo Jones of PMI, with a copy to Jay Wright, President of TCI.

---

[14] Plaintiffs exhibit E-1.

[15] Plaintiffs exhibit E-2.

[16] Plaintiffs exhibit C-2.

Brookshire Brothers maintains that the November 10, 2000 letter records the receipt of a notice of claim. Brookshire Brothers also assert that it made claims to TCI through its Dealer, PMI, for leaks that began on May 3, 2000 and extended to November, 2002. These particular claims were recorded through the issuance of checks or credits by TCI. Finally, Brookshire Brothers maintains that it made a claim during a meeting at Lufkin, Texas on December 14, 2000 by its demand that TCI honor its warranty obligations.

Brookshire Brothers maintains that the effect of making these claims triggers the "retroactive date" of January 24, 1989, which in turn affords coverage to any insured for damages incurred as a result of negligence between January 24, 1989 and the date the last policy terminated, December 24, 2002. Brookshire Brothers then maintains that another provision in the C & I policies is triggered which would make all claims for property damage by the same victim deemed to have been made at the time of the first claim. The overall effect of these provisions is to make C & I, as the insurer of TCI, liable for all claims for defective flexpipe and environmental damage asserted by Brookshire Brothers in this litigation.

As to the notice of a claim requirement, the policies provide the following:

c.     A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
    (1) When notice of such claims is received and recorded by any insured or by us, whichever comes first; or
    (2) When we made settlement in accordance with paragraph 1.a. above.
    \*    \*    \*
All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.[17]

---

[17] Plaintiffs' exhibit C-1, § I,A,1.

Alternatively, Brookshire Brothers maintains that under the policy's self-insured retention ("SIR") endorsement, because none of the claims met the threshold requirement of 25% of the $100,000 SIR, notice of each of these claims was not required.[18]

C & I argues that Brookshire Brothers made only one claim – the July 2000 leak at Dayton, Texas. C & I further argues that it has no record of either PMI or TCI notifying it of any claim by Brookshire Brothers involving flexpipe. C & I argues that Brookshire Brothers' complaints, repair requests and warranty claims do not constitute claims within the meaning of the policy. C & I cites no authority for this proposition.

Brookshire Brothers submits that it notified PMI, an additional insured, about leaks on a number of occasions between 1998 and 2002.[19] C & I's policies clearly state that a claim can be made to an insured. Furthermore, Louisiana's Direct Action Statute permits an insurer to raise only those defenses which it can raise in an action against it by its insured which do not defeat public

---

[18] Plaintiffs' exhibit C-2, Endorsement No. 2, in relevant part provides that:

(3) The Insured shall immediately notify the Insurer in writing of any claim to which this policy applies which:

           \*    \*    \*

c) may exceed 25% of the Self-Insured Retention.

(4) The Insured shall have the right to pay, at their sole discretion, any claim which falls entirely within the amount of the stated Self-Insured Retention.

Claims which are self-administered because they appear to be below the Self-Insured Retention should not be defeated if subsequent results exceed the Self-Insured Retention. Upon discovery of such a claim, notice shall [sic] given to Insurers as soon as possible.

[19] Plaintiffs' exhibit G.

policy.[20] Louisiana Courts have held that lack of notice to the underwriters of a claims made policy is one of those defenses.[21] The Direct Action Statute,[22] makes an insurer solidarily liable with the insured to the claimant.[23] Louisiana Courts have held that if language in a "claims made" policy between an insurer and its insured requires notice by the insured to the insurer within the policy period thereby defeating an injured party's right to proceed directly against the insurer, that language is against public policy.[24]

Finally, the C & I policies did not require TCI to give notice to C & I because Endorsement #2 states that no notice is required if the amount of the claim does not exceed 25% of the SIR – $100,000. Brookshire Brothers has submitted the affidavit of Larry NeGron, Brookshire Brothers' Director of Petroleum that memorializes a series of leaks between 1998 and 2002.[25] Attached as Exhibit A to the affidavit is a detailed summary of each leak event with corroborating invoices submitted by PMI to either TCI or Brookshire Brothers. C & I has presented no summary judgment evidence to dispute these claims. Accordingly, the Court finds that a notice of claim was made as to each of the leak events that occurred from June 25, 1998 through October 8th, 2002.[26]

---

[20] McKenzie & Johnson, *Insurance Law and Practice* (St. Paul, 1996) §. 27, FN 1.

[21] *Williams v. Lemaire,* 655 So.2d 765 (La.App. 4 Cir. 5/16/95).

[22] La. R.S. 22:655.

[23] *Rodriguez v. Louisiana Tank, Inc.,* 657 So.2d 1363, 1367 *writ denied,* 663 So.2d 739 (La.11/27/95).

[24] *Hedgepeth v. Guerin,* 691 So.2d 1355 (La.App. 1 Ci.r 3/27/97).

[25] Plaintiffs' exhibit G.

[26] The last claims of December 12, 2002 is outside the policy period. Exhibit A reveals the following claims were made:
    (1) 1998/06/25        Store 6044

*Are all claims for damages made by Brookshire Brothers deemed to have been made at the time at which the first of those claims was made against any C & I insured?*

Brookshire Brothers maintains that C & I is liable for all of the claims for property damage arising out of defective flexpipe which are asserted in this litigation, regardless of the date on which those claims arose or were asserted. Brookshire Brothers relies on the following provision in the C

---

    (2) 2000/05/03    Store 6039
    (3) 2000/06/24    Store 6026
    (4) 2000/07/19    Store 6043
    (5) 2000/09/25    Store 6043
    (6) 2001/05/06    Store 6063
    (7) 2001/07/13    Store 6023
    (8) 2001/07/17    Store 6009
    (9) 2001/07/27    Store 6008
    (10)2001/08/14    Store 6035
    (11)2002/01/08    Store 6003
    (12)2002/04/30    Store 6048
    (13)2002/05/15    Store 6035
    (14)2002/06/05    Store 6025
    (15)2002//06/07    Store 6306
    (16)2002/06/13    Store 6059
    (17)2002/06/14    Store 6306
    (18)2002/06/14    Store 6020
    (19)2002/07/01    Store 6015
    (20)2002/07/05    Store 6013
    (21)2002/07/15    Store 6023
    (22)2002/07/15    Store 6039
    (23)2002/07/29    Store 6013
    (24)2002/07/30    Store 6021
    (25)2002/08/19    Store 6003
    (26)2002/09/04    Store 6025
    (27)2002/09/12    Store 6016
    (28)2002/09/14    Store 6023
    (29)2002/09/19    Store 6039
    (30)2002/09/25    Store 6012
    (31)2002/09/26    Store 6009
    (32)2002/09/30    Store 6012
    (33)2002/10/08    Store 6053

& I policies: "All claims for damages because of 'property damage' causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured."[27]

Brookshire Brothers suggests that this Court should hold that all leakage from all pipes during a single coverage period constituted a single "occurrence," since such leakage represented exposure to substantially the same general harmful conditions.

The clause above concerns the timing of claims, not property damage. The insuring agreement provides that coverage applies only under the following conditions: (1) property damage arises from an occurrence; (2) it occurs during the policy period; and (3) it is the subject of a claim during the policy period.

The Court has already decided that an occurrence triggers coverage under the policies when there is property damage during the policy period. As noted by C & I, the deemer clause addresses only the timing of claims and does not address the timing of property damages. The provision provides that a later claim may be deemed to have been first made at an earlier time, but only with respect to property damage that occurred during the policy period. The purpose of the deemer clause is to provide coverage where a person/organization who has already made a claim for property damage during the policy period makes a later claim arising out of the same occurrence.[28] Accordingly, the Court concludes that each leak event is a separate occurrence.

*Did PMI receive and record a notice of claim from Brookshire Brothers which meets the notice requirements of the policies?*

---

[27] Plaintiffs exhibit C-1, § I.A.1.c, ¶ 2.

[28] See 20 *Holmes' Appelman on Insurance 2d* § 130.2 (2002).

For the reasons already discussed, the Court finds that a notice of claim was properly made as to each of the leak events detailed in Plaintiffs' exhibit A attached to the affidavit of Larry NeGron, and that such claims were made from June 25, 1998 through October 8th, 2002.

*What damages does Endorsement #11 exclude?*

The Retractable Piping System was sold by PMI, as TCI's authorized dealer, to Brookshire Brothers. The system consists of multiple components, including primary flexpipe, primary couplings and washers, primary adaptors, primary branch fittings, primary 90 degree fittings, bulkhead fittings, tank sumps and accessories, dispenser sumps/pans and accessories, and manhole covers and accessories. The primary flexpipe that failed is only one part of the entire piping system. Relying on the opinion of its construction consultants, Brookshire Brothers asserts that because of the defective nature of the flexpipe, the entire piping system must be removed in order to replace it with rigid fiberglass pipe.

Brookshire Brothers maintains that the C &I policies contain a "broad form property damage liability" in Endorsement No. 11.[29] The policies provide the following work product exclusion "k", that excludes coverage for "'[p]roperty damage' to that particular part of 'your product' arising out of it or any part of it."[30] Brookshire Brothers maintains that the exclusionary language – Property damage to that particular part of your product arising out of it or any part of it," excludes coverage only for property damage to the "particular part" of your product (the leaking flexpipe) arising out of it, or any part of it. In other words, the C & I policies provide coverage for replacing all of the Total Containment System, other than the damaged primary flexpipe. Brookshire Brothers'

---

[29] Plaintiffs' exhibit C-1.

[30] Plaintiffs' exhibit C-1, Endorsement #11..

11

argument is based on the fact that the original exclusion "k", which provided that damage to your product is "[p]roperty damage" to "your product" arising out of it or any part of it", was replaced in the "Broad Form Property Damage Liability Coverage" section of the policy to provide that damage to your product is "[p]roperty damage" *to that particular part of* "your product" arising out of it or any part of it."[31]

Brookshire Brothers argues that the change in the policy language cannot be ignored and the difference ("to that particular part") between a standard exclusion and a broad form exclusion must be given effect. The standard exclusion eliminated coverage for property damage arising out of "any part" of your product. The replacement exclusion (referred to by Brookshire Brothers as a manuscript), by contrast, excludes coverage only for property damage to that "particular part" of your product arising out of it, or any part of it. Brookshire Brothers argues that one is more expansive than the other, and the exclusion that replaced the standard exclusion provides broader coverage. The primary flexpipe becomes the "particular part of your product" to which the exclusion refers. Hence, only coverage for damage to primary flexpipe is excluded by this language.

C & I cites numerous cases for the general proposition that in interpreting commercial general liability policies, the jurisprudence holds that work product exclusions unambiguously exclude coverage for damage to the work, the product itself, and the repair or replacement of the insured's defective work or product.[32] However, C & I provides no explanation – other than the change is not significant – as to how the broad form liability exclusion adding the terms "to that

---

[31] Plaintiffs' Exhibit A, pp. 2-3.

[32] *McMath Constr. Co.v .Dupuy*, 897 So.2d 677, 682 (La. App. 1 Cir. 2004); *Lindsy Invs., LP v. Shakertown Corp.*, 209 F.3d 802, 810 (5th Cir. 2000); *Swarts, supra*, 610 So.2d at 891; *Breaux v. St. Paul Fire & Marine Ins. Co.*, 345 So.2d 204, 206 (La.App. 3 Cir. 1977).

12

particular part of 'your product,'" changed the scope of the exclusion.

The words of a contract must be given their generally prevailing meaning.[33] Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.[34] A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.[35] Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[36]

The Court finds that the change in the policy language cannot be ignored and the words "to that particular part" must be given effect. The Court agrees with Brookshire Brothers, using the general prevailing meaning of these words, that the effect could only be interpreted to mean that the work product exclusion only applies to that particular defective part of the product that is damaged – the primary flexpipe.

*Is the policy's pollution exclusion enforceable?*

The C & I policies contain a pollution exclusion in Endorsement #7. Brookshire Brothers maintains that because its claims arise from a "product hazard", the pollution exclusion does not apply. C & I concedes that the products hazard exception to the pollution exclusion may apply based on the claims Brookshire Brothers has made to date. C & I reserves the right to assert the pollution exclusion to the extent that Brookshire Brothers asserts any claims that may not fall within the

---

[33] La. Civ. Code art. 2047.

[34] La. Civ. Code art. 2048.

[35] La. Civ. Code art. 2049.

[36] La. Civ. Code art. 2050.

exception.

*Do the C & I policies cover TCI's warramty obligations?*

Brookshire Brothers maintains that C & I's policies cover their warranty claims to the extent that the same arise from property damage caused by an occurrence. The C & I policies insure TCI's legal obligation to pay damages because of "property damage"[37] for which the insured is obligated to pay, but excludes property damage by reason of the assumption of liability in a contract or agreement."[38] However, the exclusion does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract.'"[39] An 'insured contract" includes "any written contract or agreement relating to the conduct of the Named Insured's business."[40]

Brookshire Brothers argues that since the policies do not exclude coverage for legal liability for "property damage" which is "assumed" in a contract or agreement that is an 'insured [i.e., incidental] contract,' the policies insure warranty obligations assumed by TCI pursuant to contract. Noticeably absent is any case law or treatise to support Brookshire Brothers' interpretation of the contract language. C & I argues the policy exclusion exception does not encompass breach of contract, even though an "insured contract" is broadly defined as any contract or agreement related to TCI's business. The Court agrees with C & I that the phrase refers to agreeing to indemnify or hold harmless a third party. We find support in C & I's position in the following excerpt:

> Although, arguably, a person or entity assumes liability (that is, a duty of

---

[37] Plaintiffs' exhibit C-1.

[38] Plaintiffs' exhibit, C-1, § I.A.2.b(2).

[39] Plaintiffs exhibit, C-1, § I.A.2.b(2).

[40] Plaintiffs' exhibit, C-1 Endorsment No. 11, § I(A).

14

performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and other liability policies an "assumed" liability is generally understood and interpreted by courts to mean the liability of a third party, which liability one "assumes" in the sense that one agrees to indemnify or hold the other person harmless.[41]

Furthermore, C & I has cited several cases which hold that liability assumed by the insured under a contract refers to liability assumed when a person promises to indemnify or hold harmless another, not liability resulting from a breach of contract.[42] Accordingly, the Court finds that Brookshire Brothers' argument that the C & I policies cover TCI's warranty obligations lacks merit.

*Do the C & I policies cover punitive damages?*

Brookshire Brothers maintains that because the C & I policies do not expressly exclude punitive damages, the policies therefore provide coverage for punitive damages. C & I does not dispute this assertion. Accordingly, to the extent that punitive damages are allowed and awarded, the C & I policies do provide coverage.

*Does only one Self Insured Retention apply?*

Brookshire Brothers maintains that only one SIR applies per policy period. Endorsement #2 provides that "the limit of liability as stated in the declarations shall be in excess of the following Self-Insured Retention to be borne by the Insured: One Hundred Thousand Dollars ($100,000.00) each occurrence including defense and lost adjustment expense. . ."[43] Relying on *Society of the*

---

[41] 21 *Holmes' Appleman on Insurance 2d* § 132.3[C].

[42] See *Musgrove v. Southland Cop.*, 898 F.2d 1041 (1990); *Olumpic, Inc. v. Providence Wash. Ins. co.*, 648 P.2d 1008 (Alaska 1982); *Farrell Const. Co. v. Louisiana*, No. 86-4242, 1991 U.S. Dist. LEXIS 5587 at *6 (E.D. La. April 23, 1991); *Aetna Casualty & surety Co. v. Spancrete of Illinois, Inc.*, 726 F.Supp. 204 (N.D. Ill. 1989); W. McKenzie & H. Johnson 15 *Louisiana Civil Law Treatise, Insurance Law and Practice* § 189 (1986).

[43] Plaintiffs' exhibit C-1.

15

*Roman Catholic Church, et al v. Interstate Fire & Cas. Co., et al,*[44] Brookshire Brothers suggests that this Court should hold that all leakage from all pipes during a single coverage period constituted a single "occurrence" since such leakage represented "exposure to substantially the same general harmful conditions." We disagree. In *Roman Catholic,* the Diocese of Lafayette and its insurers disputed coverage for claims from children and their parents that the children were molested by two priests. These two men molested thirty-one children between August 1976 and June 1983. The record did not indicate how many times each child was molested or the damages each child suffered from each encounter. The Parties, however, agreed that each child was molested at least once during each year at issue. The appeal court held that because a continuing harm injured differ individuals, the damage to each child was a separate occurrence and that each child suffered an occurrence in the policy period in which he was molested. Any further molestation during that policy period constituted repeated exposure to injury causing conditions. The Court finds that considering the facts in *Roman Catholic,* this case does not support Brookshire Brothers' position. Each of the leaks that have occurred in the instant case has been documented as a separate occurrence and each leak is a separate occurrence. Accordingly, each leak is subject to the Self-Insured Retention of $100,000.00.

*Other Insurance coverage*

Finally, Brookshire Brothers maintains that the obligation of other good, valid and collectible insurance (including first-party UST coverage held by Brookshire Brothers) to respond to Brookshire Brothers' claims is not affected by the rulings which Brookshire Brothers seeks. C & I does not dispute this. Accordingly, Brookshire Brothers may pursue other insurers to respond, and Brookshire

---

[44] 26 F.3d 1359 (5th Cir. 1994).

Brothers' reservation of rights which it may have under a first party underground storage tank coverage and policies issued by C& I, Liberty Mutual, or any other underwriter is duly noted and acknowledged.

## **CONCLUSION**

For the foregoing reasons, the Court finds that (1) PMI is an additional insured under TCI's policies from 10/20/2000 to 6/30/01, (2) a proper notice of claim was made as to each of the leak events that occurred from June 25, 1998 through October 8, 2002 as documented and detailed in Exhibit A attached to the Affidavit of Larry Negron in Plaintiffs' exhibit G, (3) each leak event is a separate occurrence, (4) the work product exclusion only applies to that particular defective part of the product that is damaged -- the primary flexpipe, (5) to the extent that Brookshire Brothers' claims arise from a "product hazard," the pollution exclusion in C & I's policies does not apply, (6) the C & I policies do not cover TCI's warranty obligations, (7) as to each leak, which this Court finds to be a separate occurrence, a Self Insured Retention of $100,000.00 applies, and (8) it recognizes Brookshire Brothers' reservation of rights, if any it has, under a first party underground storage tank coverage and other policies issued by C & I, Liberty Mutual or any other underwriter.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 11th day of December, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

17