U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JAN 1 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | : | DOCKET NO. 04-1150 |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment and Alternative Motion to Strike" (doc. #531) filed by Brookshire Brothers Holding, Inc., et al ("Brookshire Brothers") wherein the mover seeks to have this Court find that Brookshire Brothers' use of flexpipe was "a reasonably anticipated use" under the Louisiana Products Liability Act ("LPLA"). Brookshire Brothers also moves to strike under Federal Rule of Civil Procedure 12(f) and also for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, any defense which seeks to mitigate or eliminate Plaintiffs' recovery. Finally, Brookshire Brothers moves to have this Court find that comparative fault is, by law, inapplicable in the product's liability aspect of this case. Defendants, Dayco Products, LLC and Mark IV Industries, Ltd ("Dayco"), Ticona Polymers, Inc. ("Ticona"), Cleveland Tubing, Inc. ("Cleveland"), Shell Chemical, LP ("Shell"), and Commerce and Industry Insurance Company of Canada ("C&I") oppose the motion.

## FACTUAL STATEMENT

Brookshire Brothers is a chain of retail grocery stores located in East Texas and West Louisiana. At each of its grocery stores, the retailer operates and sells gas to consumers which requires the use of underground storage tanks. Complaint, ¶ 1. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI"). Complaint, ¶ 3 Brookshire Brothers alleges that Dayco Products, Inc., Ticona Polymers, Inc., Shell Chemical, LP and Cleveland Tubing, Inc. participated in the design, manufacture and sales of the flexible pipe, and manufactured and supplied different component parts

for use in TCI's flexible pipe. Complaint, ¶ 5. C&I allegedly issued liability insurance policies to TCI who has filed for bankruptcy. Complaint, ¶ 20.

Brookshire Brothers purchased the pipes manufactured by these defendants and installed it in virtually all of its seventy-eight (78) retail locations. Complaint, ¶ 6. Brookshire Brothers alleges that the underground Enviroflex pipes leak, whereas, TCI maintains that the pipes are not the cause of the leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced. Complaint, ¶ 10. Brookshire Brothers asserts that it has had to expend substantial monies in replacing the leaking pipes, and that TCI has refused to reimburse it or agree to replace the TCI pipes with non-leaking pipes. Brookshire Brothers further asserts that TCI replaced the leaking pipes with more TCI pipes that leaked, resulting in further successive damage. Complaint, ¶ 11.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[2] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires

---

[1] Fed. R.Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[3] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[4] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[5] *Anderson*, 477 U.S. at 249.

2

more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

Brookshire Brothers maintains that it is entitled to judgment as a matter of law and that:

(1) Brookshire Brothers' use of the TCI flexpipe was a "reasonably anticipated use" in conformance with the LPLA which governs the liability of all defendants except Underwriters Laboratories, Inc.;

(2) the defendants are collaterally estopped from relitigating the issue of whether Dayco and TCI knew water and gasoline/water mixture were present in TCI's systems by the time TCI sold its second and third generation flexpipe to Brookshire Brothers;

(3) the defendants' affirmative defenses relating to water and/or gasoline in sumps should be stricken and/or summary judgment precluding their application to this case should be granted; and

(4) comparative fault principles are not applicable to this LPLA case.

Brookshire Brothers maintains that Louisiana law governs all of their claims against the Defendants. However, this Court has already ruled that "Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana."[9] Hence, this Court's Ruling and the pertinent Judgment concerning the LPLA is

---

[6] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[8] *Anderson,* 477 U.S. at 249-50.

[9] Memorandum Ruling dated July 7, 2006, (doc. #481), pp. 10-11.

applicable only to those injuries that occurred in Louisiana.

*Was Brookshire Brothers' use of the flexpipe a "reasonably anticipated use?"*

Brookshire Brothers maintains that its use of the flexpipe was a "reasonably anticipated use" under the LPLA. The LPLA "provides the exclusive theories of liability for manufacturers for damage caused by their products."[10] To prevail under the LPLA, Brookshire Brothers must prove that (1) the defendant is the manufacturer of the product; (2) the claimants' damage was proximately caused by a characteristic of the product; (3) this characteristic made the product unreasonably dangerous, and (4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[11] The LPLA defines a reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[12]

This definition requires an objective inquiry as to what uses the manufacturer should have reasonably expected at the time it made the product.[13] The manufacturer is not required under the LPLA to account for, and will not be held responsible for every conceivable foreseeable use of a product.[14] "Even if an express warranty does not reach a consumer, a reasonably anticipated use will not be found where the danger should have been obvious to the experienced consumer as well as the ordinary consumer."[15]

Brookshire Brothers contends that the exposure of the second and third generation TCI flexpipe, to the water and gasoline in the secondary containment system constituted a "reasonably anticipated use" of the flexpipe as is defined by the LPLA. Brookshire Brothers argues that the

---

[10] *Butz v. Lynch*, 762 So.2d 1214, 1217 (La.App. 1 Cir. 2000), citing La. R.S. 9:2800.52.

[11] *Id.* citing La. R.S. 9:2800.54; *Stahl v. Movartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002).

[12] La. R.S. § 9:2800.53(7).

[13] *Kampen, supra,* 157 F.3d at 309.

[14] *Id., Frith v. John Deere Co.*, 955 F.Supp. 663, 666 (W.D. La. 1996); *Delphen v. Dept. of Transp. & Dev.*, 657 So.2d 328, 333 (La.App. 4 Cir. 1995)

[15] *Frith*, 955 F.Supp. at 666.

4

evidence is conclusive that TCI knew that TCI's systems were wet in the early 90's at the time it sold the flexpipe to Brookshire Brothers, and that Dayco knew soon thereafter by 1994-1995. In support of its position, among other evidence, Brookshire Brothers directs the Court to a lawsuit between TCI and Dayco that was litigated in federal court in the Eastern District of Pennsylvania.[16]

In that lawsuit which involved breach of warranty and contract claims, the Court found that by September 25, 1993, TCI knew that water would be present in the Enviroflex system. Hence, Brookshire Brothers argues that because TCI, and later, Dayco knew that water would be present in the Enviroflex system, its own use of the system is a reasonably anticipated use.

The Defendants maintain that there is a genuine issue of material fact regarding whether TCI or any of the defendant manufacturers would have reasonably expected Brookshire Brothers to misuse the flexpipe in the manner that it did. Dayco maintains that there are genuine issues of material fact as to whether the exposure of flexpipe in the Brookshire Brothers stations to water or gas in the secondary containment system was a reasonably anticipated use of the product by Dayco. Dayco argues that TCI specifically told Dayco that the containment system would be restored to a water-tight condition, and the flexpipe would not be exposed to the presence of gas or water. Shell, Cleveland Tubing and Ticona, who were not parties to the *TCI v. Dayco* litigation maintain that the court's findings in that litigation cannot be imputed to them, and furthermore, there is no evidence submitted that these Defendants knew or should have known or expected that the primary flexpipe would be continuously exposed to water and gasoline. All of these Defendants, including C&I (TCI's insurer) maintain that there are genuine issues of material fact as to whether the continuous presence of a large volume of water contaminated with gasoline in Brookshire Brothers' secondary containment system was a reasonably anticipated use.

Specifically, Defendants maintain that Brookshire Brothers abused the TCI flexpipe system and was negligent in the operation and maintenance of its systems by not taking reasonable steps to (1) limit water ingress into their secondary containment systems, (2) remove accumulated water in a timely way, (3) assess and take corrective action to prevent future water ingress.

Defendants submit summary judgment evidence in an attempt to establish the duties of

---

[16] *Total Containment, Inc. v. Dayco Products, Inc.*, 2001 WL 984708 (E.D. Pa. 2001)

owner/operators of an Underground Storage Tank ("UST"). That evidence includes (1) maintaining level sensors in tank sumps, (2) removing fluids in sumps as they occur, (3) performing 30 day inspections, and (4) keeping gaskets in good repair to allow for a good seal on the sump lids. Defendants also submit the expert testimony of Tomlinson Fort, Alex Ralston and Marshall Mott-Smith which establishes that (1) keeping water out of sumps can be done, (2) a reasonably prudent operator should make efforts to keep water out of their secondary containment system, (3) it is a good practice to inspect sumps, and that water should be pumped out of the sumps, (4) water in sumps was a problem; either sensors or a regular inspection is part of the responsibility of an owner to maintain their UST, and (5) a responsible owner would have an operation and maintenance program to keep up with every component in the system, including gaskets on sumps.

Defendants then submit relevant summary judgment evidence which establishes that (1) initially Brookshire Brothers had a maintenance service program in place with Pump Masters, Inc. ("PMI"), either semi-annually or annually, with an accompanying maintenance checklist to record the maintenance service that PMI performed at the gas stations; this program which included pumping out accumulated water from the sumps was terminated, (2) in 1998, Brookshire Brothers abandoned its own sump inspection program, (3) initially, Brookshire Brothers had in place recommended remote monitors to identify fluid build up in its UST sumps, (4) Brookshire Brothers abandoned those monitoring systems and currently has no equipment capable of identifying fluids in its sumps although such equipment is readily available, and (5) even though water is identified in the UST sumps, Brookshire Brothers made no concerted effort to identify the source of the water intrusion or take any other corrective action to prevent water re-entry.

Defendants submit summary judgment evidence as to industry standards from the U.S. Environmental Protection Agency and the Petroleum Equipment Institute that recommend that secondary containment sumps be inspected on a regular basis. Part of the inspection protocol for these guidelines is removal of accumulated water and corrective action to prevent future water ingress.

Finally, Defendants submit substantial site documentation (photographs) made during repairs collected by a consultant, Tetra Tech, which reveals the condition of the UST sumps, sump lids, component parts, gaskets and primary flexpipe.

In *Hunter v. Knoll Rig and Equipment Manufacturing Co., Ltd.*,[17] the Fifth Circuit concluded that knowledge of a particular use by a manufacturer does not automatically bring that use into the realm of "reasonably anticipated use." Furthermore, a manufacturer will not be responsible for every conceivable foreseeable use of a product.[18] Whether a use is a reasonably anticipated use is a question for the jury to decide.[19] The Court agrees with the Defendants that there are highly disputed genuine issues of material fact for trial as to whether Brookshire Brothers' use of the TCI Enviroflex system was a reasonably anticipated use.

*Are Defendants collaterally estopped from litigating that they did not know water was present in the secondary containment system?*

As previously mentioned, in the *TCI v. Dayco* litigation, the federal court found that by September 25, 1993, TCI knew that water would be present in the Enviroflex system. Brookshire Brothers maintains that because TCI and Dayco knew and the other Defendants should have known that their product would be exposed to water and gasoline in the secondary containment system, such exposure constitutes a "reasonably anticipated use" of that product. Hence, Brookshire Brothers moves to collaterally estop these Defendants from relitigating this issue. This Court disagrees.

"Some litigants - - those who never appeared in a prior action - - may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim."[20] Hence, it would be unfair to impute TCI's knowledge to defendants, Shell, Cleveland Tubing, and Ticona because they were not parties to that litigation. Furthermore, knowledge of water being present in the Enviroflex system is not the same issue as whether or not Brookshire Brothers' use of the system was a reasonably anticipated use. As to Dayco, in the prior litigation TCI repeatedly assured Dayco that it would make the necessary corrections to prevent

---

[17] 70 F.3d 803 (5th Cir. 1995).

[18] *Kampen*, 157 F.2d at 309-310.

[19] *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 331 (5th Cir. 2001), *Calvit v. Procter & Gamble Mfg. Co.*, 207 F.Supp.2d 527, 530 (M.D. La. 2002).

[20] *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

water from being present in the secondary containment system. This Court has concluded that there are highly disputed genuine issues of material fact as to whether or not Brookshire Brothers' use of the system was a reasonably anticipated use as defined by the LPLA. A jury will decide this issue. None of the defendants are collaterally estopped from litigating that they did not know that water was present in the secondary containment system.

*Is comparative fault applicable in this products liability case?*

Brookshire Brothers argues that water has gotten into its sumps due to TCI's defective sumps and connections and that the evidence is clear that both Dayco and TCI knew water and gasoline were invading the TCI systems since the early 1990s. Brookshire Brothers further argues that it was never warned that water's presence in its system would cause trouble for the system or affect the flexpipe. Brookshire Brothers asserts that PMI, whom Brookshire Brothers hired to install and initially maintain the systems, never informed it that it must keep its sumps dry and expend monies to regularly engage vacuum trucks to remove the water from the sumps.

Whether comparative fault applies is made on a case by case basis.[21] Although that determination is a question of law, "it is inextricably tied to specific factual findings. . . ."[22] Comparative fault can be applied even where the claimant's use was reasonably anticipated under the LPLA.[23] As mentioned above, Defendants have submitted substantial summary judgment evidence to establish a genuine issue of fact for trial as to whether or not Brookshire Brothers' use of the total containment system was a "reasonably anticipated use." Accordingly, the Court finds that comparative fault could be an issue in this litigation.

---

[21] *Trahan v. Savage Indus.*, 692 So.2d 490, 495 (La.App.3 Cir. 1997).

[22] *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 684 (5th Cir. 1991).

[23] *Kampen*, 157 F.3d at 306.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Brookshire Brothers will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 10th day of January, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE