UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | : | DOCKET NO. 04-1150 |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is "Cleveland Tubing, Inc.'s ("Cleveland") Motion for Summary Judgment" (doc. #453) wherein the mover seeks to have this Court dismiss all claims asserted against it in this action by plaintiffs, Brookshire Brothers Holding, Inc., Brookshire Brothers Management, Inc. and Brookshire Brothers Ltd. ("Brookshire Brothers"). Cleveland maintains that (1) Brookshire Brothers cannot establish a manufacturing defect attributable to it or that any act or omission by Cleveland is the legal cause of the primary hose failure, (2) Brookshire Brothers' tort claims are time barred, (3) Brookshire Brothers' redhibition and implied warranty claims are time barred, (4) Brookshire Brothers' claims for redhibition and/or implied warranty are inapplicable because Cleveland manufactured only component parts, and (5) Brookshire Brothers' claims are barred by the economic loss doctrine. Brookshire Brothers opposes the motion.

## FACTUAL STATEMENT

Brookshire Brothers is a chain of retail grocery stores located in East Texas and West Louisiana. At each of its grocery stores, the retailer operates and sells gas to consumers which requires the use of underground storage tanks. Complaint, ¶ 1. The surface gas pumps and tanks

are linked by flexible pipes allegedly manufactured, designed and assembled by Total Containment, Inc. ("TCI"). Complaint, ¶ 3 Brookshire Brothers alleges that Dayco Products, Inc., Ticona Polymers, Inc., Shell Chemical, LP and Cleveland Tubing, Inc. participated in the design, manufacture and sales of the flexible pipe, and manufactured and supplied different component parts for use in TCI's flexible pipe. Complaint, ¶ 5. C&I allegedly issued liability insurance policies to TCI who has filed for bankruptcy. Complaint, ¶ 20.

Brookshire Brothers purchased the pipes manufactured by these defendants and installed it in virtually all of its seventy-eight (78) retail locations. Complaint, ¶ 6. Brookshire Brothers alleges that the underground Enviroflex pipes leak, whereas, TCI maintains that the pipes are not the cause of the leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced. Complaint, ¶ 10. Brookshire Brothers asserts that it has had to expend substantial monies in replacing the leaking pipes, and that TCI has refused to reimburse it or agree to replace the TCI pipes with non-leaking pipes. Brookshire Brothers further asserts that TCI replaced the leaking pipes with more TCI pipes that leaked, resulting in further successive damage. Complaint, ¶ 11.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is "material" if its existence or

---

[1] Fed. R.Civ. P. 56(c).

2

nonexistence "might affect the outcome of the suit under governing law."[2] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

*Can Brookshire Brothers establish a manufacturing defect attributable to Cleveland?*

One of the causes of action against Cleveland Tubing asserted by Brookshire Brothers is

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[3] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[4] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[5] *Anderson*, 477 U.S. at 249.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Anderson*, 477 U.S. at 249-50.

3

products liability as a result of alleged manufacturing defects. Effective September 1, 1990, Dayco and Cleveland entered in to a Supply Agreement for the production of a corrugated inner tube to be incorporated into a primary hose. Effective November 20, 1997, Cleveland began manufacturing the corrugated inner tube for incorporation into a primary hose for TCI.

The primary hose or flexpipe was constructed of multiple layers of various thermoplastic and other polymeric materials. Cleveland extruded only the innermost corrugated layers of the primary hose and shipped this component to Dayco or TCI for further processing and the addition of subsequent outer layers. Cleveland produced the inner layer of the primary hose pursuant to Dayco and TCI's designs, specifications and selection of raw materials.

Cleveland maintains that after each of the parties[9] performed destructive testing and submitted their opinions through expert reports and depositions, there is a complete lack of evidence linking specific hose failures to any manufacturing defect. Cleveland argues that while Brookshire Brothers' expert reports make broad generalizations as to the effect of Cleveland's periodic difficulty processing Shell's product, Carilon, not one report, from any party to this litigations ties any of these alleged problems at Cleveland to the failure of a Brookshire Brothers hose. Hence, Brookshire Brothers cannot meet its burden of proof as it relates to alleged negligence or manufacturing defects on the part of Cleveland under either Texas or Louisiana law.

In a prior ruling, this Court has held that "Texas law should be applied to those injuries that occurred in Texas, and Louisiana law should be applied to those injuries that occurred in Louisiana."[10] For the reasons set forth in that ruling, we still so hold that both Texas and Louisiana

---

[9] Brookshire Brothers, UL, Dayco, Shell and Cleveland Tubing.

[10] Memorandum Ruling dated July 7, 2006, (doc. #481), pp. 10-11.

4

substantive law applies. Both parties concede that the standard for proving manufacturing defects under Texas and Louisiana law is very similar.

Under Texas law, a manufacturing defect "exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous."[11] "A plaintiff must prove that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries."[12] "Texas law does not generally recognize a product failure standing alone as proof of a product defect. The inference of defect may not be drawn from the mere fact of a product-related accident."[13]

Texas courts acknowledge that "it may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of the kind that ordinarily occurs as a result of a product defect; and (b) was not, in the particular case, solely the result of causes other than the product defect existing at the time of sale or distribution."[14]

Pursuant to the Louisiana Products Liability Act, "[a] product is unreasonably dangerous in construction if, when it left the manufacturer's control, it deviated in a material way from the manufacturer's specifications, or deviated from otherwise identical products made by the

---

[11] *Cooper Tire & Rubber Co. v. Mendez*, — S.W.3d, 2006 WL 1652234, *4 (Tex. June 16, 2006), citing *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004).

[12] *Id.* at *5.

[13] *Id.* at 9-10, citing Restatement (III) of Torts: Products Liability § 3, reporters' note to cmt. d (1998).

[14] *Id.* at 10.

manufacturer."[15] Louisiana courts will also not "infer the existence of a defect solely from the fact that an accident occurred."[16] Specific evidence of a manufacturing defect is required when the evidence does not exclude inferences of a plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident.[17]

Brookshire Brothers' expert, Dr. John F. Fellers, a polymer scientist from the University of Tennessee, examined eight (8) primary flexpipe. Only five (5) of those were made with Carilon which could be attributed to Cleveland. Cleveland maintains that Dr. Fellers' report does not identify one failure in the hoses tested that could be linked to Cleveland. Instead, the report focuses primarily on general conclusions of the product and its processability. Flexpipe is composed of several layers. Cleveland complains that Dr. Fellers failed to evaluate how each element of the composite structure performed its design function within the composite prior to failure. Cleveland further complains that Dr. Fellers did not attempt to determine the composition of the others layers or determine the role of the inner tube as it related to load bearing, or its load bearing capacity, if any. Dr. Fellers did not attempt to quantify the effect stress may have had on the inner tube of the hose tested even though he acknowledged that with a composite hose, you cannot accurately determine the effect of stress on the inner tube without conducting such analyses. Additionally, Dr. Fellers made no attempt to determine whether the product made by Cleveland Tubing fell within specified tolerances or was manufactured according to specified procedures. Dr. Fellers conceded

---

[15] *Gladney v. Milam*, 911 So.2d 366, 370 (La.App. 2 Cir. 2005).

[16] *Jurls v. Ford Motor Co.*, 752 So.2d 260, 265 (La.App. 2 Cir. 2000).

[17] *National Union Fire Ins. Co. of Louisiana v. Harrington*, 854 So.2d 880, 891 (La.App. 3 Cir. 2003).

in his deposition that he did not attempt to determine whether any of the cracks found in the pipe wall were created post-service, once it was pulled out of the ground.

Destructive testing was conducted by defendants, Cleveland Tubing, Shell, Dayco and UL. Cleveland maintains that the experts for this group of defendants could not link a specific hose failure to a manufacturing defect at the hands of Cleveland Tubing. Dr. Alan Lesser, Cleveland Tubing's expert conducted destructive testing on three (3) primary hose samples. The results of his testing revealed that the product manufactured by Cleveland Tubing had been properly processed and left Cleveland Tubing's facility in a non-defective condition.[18] Dr. Lesser found evidence of fuel migrating around the coupling which could have been the result of improper coupling installation.[19] In other words, the cause of failure was due to improper installation.

Cleveland maintains that the testing performed by Shell, Dayco and UL indicate that the failure of the hose tested resulted from something other than manufacturing defects. Shell's experts, Dr. Don Paul and Dr. Pat Cassidy did not report or testify to any evidence of manufacturing defects. Specifically, these experts determined that the failures were caused by improper installation of couplings and the loss of the structural integrity of the primary hose due to degradation of the outer layers resulting from excessively prolonged exposure to water and fuel in the containment sumps.[20]

Dayco's expert, Dr. Don Duval found evidence of improper installation of couplings and degradation of the intermediate layers of the primary hose – a layer not manufactured by Cleveland. Dr. Duval measured the wall thickness of the inner tube that was likely to have been manufactured

---

[18] Lesser Report, pp. 13-14.

[19] Lesser Report, pp. 12-13.

[20] Cassidy Report, pp. 3-4.

by Cleveland and found that they exceeded the minimum wall thickness specification provided to Cleveland by Dayco.[21] Dr. Duval reported no evidence of manufacturing defects to have existed.

UL's expert, Dr. Jerry Leyden was ultimately unable to reach a conclusion as to the root cause of failure.[22] C&I's expert, Dr. Dale Edwards, upon a review of all the expert reports, testified that he did not see any evidence of any defect in the manufacture of any of the hoses in use at the Brookshire Brothers' stations,[23] nor did he see any evidence that would suggest that quality control problems at Cleveland were linked in any way to pipe failures at Brookshire Brothers.[24]

Cleveland maintains that Brookshire Brothers cannot meet its burden of proof because not one expert could definitively link any primary hose failure to a manufacturing defect of the inner tube or to any action or omission on the part of Cleveland. Thus, Cleveland maintains that summary judgment in its favor of Cleveland is warranted. The burden now shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[25]

Brookshire Brothers maintains that Cleveland has omitted evidence which indicates that there were failures to the primary hose caused by defects in the inner tubing which Cleveland manufactured. Summarizing their argument, Brookshire Brothers submits evidence to establish that (1) between 1992 and 1999, Cleveland had numerous problems manufacturing the inner tubing, (2) these manufacturing problems led to multiple defects in the inner tubing, and (3) these defects in the

---

[21] Duval Report, p. 13.

[22] Leyden Report, pp. 6-7.

[23] Edwards depo., p. 223.

[24] Edwards, depo., p. 228.

[25] *Anderson,* 477 U.S. at 249.

inner tubing caused and/or contributed to failure of the primary hose.

Since 1992, Cleveland used Shell's experimental Carilon Polymer as the barrier layer in the construction of the duel-containment fuel-transfer hose.[26] After extruding the inner liner of the flex hose,[27] the core tube was then shipped to Dayco where it was reinforced and coated. Brookshire Brothers maintains that documents produced by Shell describe a litany of problems Cleveland had in extruding the inner tube. Brookshire Brothers submits the expert report of Charles R. Manning, Jr., Ph.D., P.E. which indicates the numerous problems that occurred during the processing of Carilon at Shell and the manufacturing of the inner tube at Cleveland.[28] Dr. Manning's reports states that "Cleveland Tubing encountered continuing issues with the melt stability of the Carilon and the inability to produce long runs of the tube before cross linking occurred which caused such defects as gels, burns, and bubbles.[29] Cleveland's production supervisor, Ronnie Malone, testified that after certain lengths of runs, Cleveland had problems extruding the hose using the Carilon polymer which resulted in "burning issues" and could result in holes in the tubing."[30]

Brookshire Brothers also maintains that Cleveland had problems maintaining consistent wall thickness of the inner tubing.[31] The expert report of Accident Reconstruction Analysis, Inc.("ARAI") states the following relevant findings regarding Cleveland's inner tubing made of Carilon: (1) cracks

---

[26] Exhibit A, exhibits to Carlton Ash and John Flood depo., No. 30 through 32.

[27] Exhibit B. depo. John Fellers.

[28] Exhibit D, Manning Report, pp. 6-7/

[29] *Id.*

[30] Exhibit C, Malone depo., p. 145

[31] Exhibit D, Expert Report of Accident Reconstruction Analysis, Inc., p. 6.

were noted which were located away from fittings, (2) most of the hoses examined in this matter were second generation TCI Enviroflex hose, (3) it does not appear that the hose design was ever a satisfactory product from the time it was introduced in 1990 until the time that TCI stopped manufacturing and selling the hose, (4) the second generation of hose, which utilized Carilon as the inner layer and polyether polyurethane in the outer layers, has suffered numerous failures at Brookshire Brothers locations, (5) the hose was never sufficiently developed and tested to ensure that it would perform its intended function for the expected life of the product, (6) numerous problems had occurred during the processing of Carilon at Shell and the manufacturing of the inner tube at Cleveland, (7) hoses with thru holes were still being delivered to Dayco/TCI, (8) ARAI's examination of the hose revealed that simple flexing of much of the hose will cause cracking of the Carilon, (9) issues regarding UV resistance and oven life test results raise questions regarding the suitability of the material [Carilon] for the application, (10) there would not be any way to ensure that there was any consistency to the quality and the properties of the hose produced by Cleveland Tubing with Shell's Carilon inner liner, and (11) based upon the documents reviewed, there was not sufficient testing performed on the material/hose that was produced by Cleveland to ensure its success in subject application.

Brookshire Brothers also submits the following pertinent statements from the deposition testimony of Dr. Manning: Dr. Manning viewed cracks in the primary hose which went through the entire Carilon layer.[32] His investigation revealed that the cracks started on the inside of the tubing and worked their way out.[33] Dr. Manning observed that based on the discoloration of the cracks, he

---

[32] Exhibit F, Manning Depo. p. 104.

[33] *Id.*

concluded that gasoline had penetrated through the inner tubing.[34] Dr. Manning concluded from his investigation that the cracking of the hose occurred before it had been removed from the ground.[35] Dr. Manning found cracks in the inner layer where the outer layer had not degraded.[36] Dr. Manning testified that the hose would become "brittle" at various points along the length of the tubing, leading to leakage of the hose.[37]

In its reply to Brookshire Brothers' opposition, Cleveland maintains that Brookshire Brothers has not presented any evidence, direct or circumstantial, to establish that any of the primary hose leaks were the result of alleged manufacturing defects attributable to Cleveland. Cleveland specifically complains of certain exhibits that Brookshire Brothers attached to the deposition of Ronnie Malone, Cleveland's production supervisor.[38] Cleveland's general objection to these documents is that they do not identify 1.5" diameter pipe – the pipe/hose at issue in this lawsuit – as the pipe that is being discussed in these documents.

In rebuttal, Brookshire Brothers asserts that while certain of the documents submitted do not refer specifically to 1.5" pipe, the documents as a whole with other related evidence establish that Cleveland had a processing problem with *all* pipe/hose that involved Carilon – or as Dr. Fellers

---

[34] *Id.,* p. 112.

[35] *Id.,* p. 112.

[36] *Id.,* p. 191.

[37] *Id.,* p. 113.

[38] Exhibits 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, and 280 to Exhibit C.

testified, "the extrusion process was not controlled, was not controllable.[39] The Court agrees. These documents are relevant to the extent that they establish that the process of extruding Carilon in the inner layer of the pipe/hose was not without problems over an extended period of time.

The Court has carefully reviewed the summary judgment evidence and concludes that Brookshire Brothers has met its burden of establishing a genuine issue of fact for trial.

*Are Brookshire Brothers' Claims against Cleveland Tubing Time-barred or Prescribed?*

Cleveland maintains that Brookshire Brothers' tort claims are time-barred under either Louisiana's one year prescriptive period or Texas' two year statute of limitations. For the reasons set forth in this Court's Memorandum Ruling (doc. #481) dated July 7, 2006, the Court finds that all claims made prior to one year from the filing of suit – August 15, 2002, have prescribed under Louisiana's one-year prescriptive period.[40]

*Are Brookshire Brothers' claims for redhibition/implied warranty inapplicable to Cleveland Tubing because it manufactured only Component parts?*

Cleveland maintains that because it manufactured only a component part – the inner layer of the flexpipe– redhibition and implied warranty claims are not applicable. In the Memorandum Ruling (doc. #481) dated, July 7, 2006, this Court held that Texas law would apply to those injuries that occurred in Texas, and Louisiana law would apply to those injuries that occurred in Louisiana.

---

[39] Fellers depo. pp. 33-35.

[40] Brookshire Brothers' cause of action which sounds in tort, is subject to a liberative prescription period of one year. La. Civ. Code art. 3492 (delictual actions); La. Civ. code art. 2534(A)(1) (redhibitory defects); *Division Place Partnership v. Carl E. Woodward, Inc.*, 806 So.2d 912 (La.App. 4 Cir. 2002)(Liberative prescription of one year is applicable to delictual actions so that a products liability claims is also subject to a one-year limitation from injury or damage from the date the victim became aware of defect).

12

In this Court's Memorandum Ruling (doc. #726), dated August 31, 2006, we dismissed Brookshire Brothers' claims of redhibition and breach of implied warranty against Ticona Polymers, Inc. ("Ticona") under both Texas and Louisiana law because Ticona is not a manufacturer. Ticona supplied Fortron, a material used for the inner layer of the flexpipe that replaced Carilon. Cleveland extrudes the inner layer of the flexpipe using a raw material – Carilon. In the Memorandum Ruling dated (doc. #497), dated July 13, 2006, we concluded that under Louisiana law,[41] there was a genuine issue of material fact as to whether or not Dayco was a manufacturer and subject to claims of redhibition/breach of implied warranty. Dayco designed and manufactured the flexpipe for use in connecting TCI's underground storage tanks to above-ground dispensers. This flexpipe was the most critical part of the Total Containment product.

Brookshire maintains that Cleveland should have the same status as Dayco because Cleveland "manufactured" or "supplied" the inner most layer of the flexpipe. The evidence establishes that from approximately 1990 to 1997, Cleveland contracted with Cleveland to produce and provide the inner layer of the flexpipe. From approximately 1997 to 1999, Cleveland similarly produced the inner layer to TCI who then manufactured the flexpipe. Cleveland maintains that it produced its component parts under the supervision of Dayco and TCI and pursuant to their designs, specifications and selection of raw materials. The Court agrees with Cleveland that is was only a component part supplier and not a primary manufacturer of a finished product, and in the same position as Dayco and TCI. Because Cleveland is not a manufacturer or seller, Brookshire Brothers' claims of redhibition and/or implied warranty of fitness under both Texas and Louisiana law will be dismissed.

---

[41] The parties did not brief the issue under Texas law.

*Are Brookshire Brothers' Claims barred by the economic loss doctrine?*

Cleveland maintains that Brookshire Brothers' claims are barred by the economic loss doctrine. As previously held, Texas law applies to those injuries that occurred in Texas, and Louisiana law applies to those injuries that occurred in Louisiana. Because Louisiana provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code article 2315, the economic loss rule does not apply to those injuries that occurred in Louisiana.

For the reasons set forth in this Court's Memorandum Ruling (doc. #481) dated July 7, 2006, the economic loss rule is applicable to the negligence claims asserted by Brothers and bars recovery for pure economic loss. However, the economic loss rule does not bar recovery to "other property."[42] Accordingly, Cleveland's motion will be granted to the extent that Texas law bars recovery for pure economic losses for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and denied in part to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss doctrine is not applicable.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by defendant, Cleveland Tubing, Inc. will be granted in part and denied in part. The motion to dismiss Brookshire Brothers' claims because of their failure to establish a manufacturing defect attributable to Cleveland will be denied. The motion to dismiss Brookshire Brothers' claims because they are prescribed is granted to the extent all claims for injuries that occurred prior to August 15, 2002 have prescribed

---

[42] See *Alcan Aluminum corp. v. BASF Corp.*, 133 F.Supp.2d 482, 503 (E.D. Tex. 2001) ("where . . . collateral property damage exists in addition to damage to the product itself, the plaintiff can recover in tort aw well as in contract.")

and will be dismissed. The motion to dismiss Brookshire Brothers' claims of redhibition and implied warranty will be granted and these claims against Cleveland Tubing will be dismissed. The motion to dismiss Brookshire Brothers' claims for pure economic losses will be granted to the extent that Texas law bars recovery for those damages that occurred in Texas, with the exception of damages to other property which includes land contamination in Texas, and denied in part to the extent that damages sustained in Louisiana are governed by Louisiana law and the economic loss rule does not apply.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of January, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE