RECEIVED
IN LAKE CHARLES, LA
FEB - 7 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | : | DOCKET NO. 04-1150 |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court are the following motions: "Motion for Partial Summary Judgment" filed by third party defendant, Pump Masters, Inc. ("Pump Masters") against third party plaintiff, Commerce & Industry Insurance Company of Canada ("C&I") (doc. #564); "Commerce & Industry Insurance Company of Canada's Motion for Summary Judgment against Plaintiffs Regarding the Timeliness of Their Claims" (doc. #575); "Commerce & Industry Insurance Company of Canada's Motion for Summary Judgment as to Pump Masters, Inc.'s Cross-Claims" (doc. #576); and "Commerce & Industry Insurance Company of Canada's Motion for Summary Judgment Against Plaintiffs as to the Self-Insured Retention & Number of Occurrences" (doc. #578). Because some of the same issues are raised in each of these motions, they will all be considered in this one ruling.

## STATEMENT OF FACTS

Brookshire Brothers is a chain of retail grocery stores located in East Texas and West Louisiana. At each of its grocery stores, the retailer operates and sells gas to consumers which requires the use of underground storage tanks ("tanks"). Complaint, ¶ 1. The surface gas pumps and tanks are linked by flexible pipes allegedly manufactured, designed and assembled by TCI.

Complaint, ¶ 3 Brookshire Brothers alleges that Dayco Products, Inc., Ticona Polymers, Inc., Shell Chemical, LP and Cleveland Tubing, Inc. participated in the design, manufacture and sales of the flexible pipe, and manufactured and supplied different component parts for use in TCI's flexible pipe. Complaint, ¶ 5. Defendant, C & I, has allegedly issued liability insurance policies to these defendants. Complaint, ¶ 20.

Brookshire Brothers purchased the pipes manufactured by these defendants and installed it in virtually all of its seventy-eight (78) retail locations. Complaint, ¶ 6. Brookshire Brothers alleges that the underground enviroflex pipes leak, whereas, TCI maintains that the pipes are not the cause of the leaks. Brookshire Brothers asserts that the defective pipes have resulted in underground gas leaks causing the retailer to lose gasoline from the tanks, and further causing the gas stations to be shut down while the underground pipes were retrieved and replaced. Complaint, ¶ 10. Brookshire Brothers asserts that it has had to expend substantial monies in replacing the leaking pipes, and that TCI has refused to reimburse it or agree to replace the TCI pipes with non-leaking pipes. Brookshire Brothers further asserts that TCI replaced the leaking pipes with more TCI pipes that leaked, resulting in further successive damage. Complaint, ¶ 11.

Brookshire Brothers asserts that C & I, as the insurer of TCI, is liable for the damages arising from the allegedly defective flexpipe.[1] Brookshire Brothers seeks to recover past and future costs to replace flexpipe that leaks with new flexpipe, and to permanently replace all flexpipe with fiberglass pipe.[2] Brookshire Brothers also seeks to recover the costs of remediation of all sites that

---

[1] Complaint, ¶ 103.

[2] Complaint, ¶ 106(i).

are contaminated with gasoline,[3] and other losses that include loss of sales, profits and product, associated with closures to temporarily and permanently replace the flexpipe.[4]

C&I issued four claims-made insurance policies for the benefit of TCI covering the period June 30, 1999 to December 24, 2002; (1) No. 546-85-09, effective June 30, 1999, to June 30, 2000; (2) No. 546-87-45, effective June 30, 2000, to June 30, 2001; (3) No. 546-89-97, effective June 30, 2001, to June 30, 2002; and (4) No. 546-93-58, effective June 30, 2002, to June 30, 2003. Policy No. 546-89-97, the 2002 policy[5], was cancelled by endorsement as of December 24, 2002.

Shell Chemical, Dayco/Mark IV, UL, Cleveland Tubing and C&I have asserted a third party demand or cross-claim against Pump Masters alleging that it was responsible for all aspects of the design and construction of the gasoline storage and delivery systems located at Plaintiffs' gas stations, including the site-specific design and installation of the TCI flexpipe. In addition, it is alleged that Pump Masters was responsible for maintenance of the gas delivery systems and has performed repairs on these systems, including replacement of the allegedly failed and/or leaking flexpipe, at numerous Brookshire Brothers' gas stations.

Pump Masters tendered its defense to C&I by letter dated December 7, 2004 which was rejected on December 30, 2004. Pump Masters alleges that because it was furnished with Certificates of Insurance,[6] it is an additional insured pursuant to the Vendor's liability endorsement

---

[3] *Id.*

[4] Complaint, ¶ 106(ii), (iii), (vi), (viii).

[5] Referred to by its beginning year.

[6] Dated October 10, 2000 and July 6, 2001.

3

and Endorsement No. 1.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[8] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[9] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[10] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[11] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[12] There is no genuine issue of material fact if, viewing the evidence in the light most

---

[7] Fed. R.Civ. P. 56(c).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[9] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[10] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[11] *Anderson*, 477 U.S. at 249.

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[13] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[14]

## **LAW AND ANALYSIS**

*Are Brookshire Brothers' claims against C&I timely?*

C&I maintains that the claims Brookshire Brothers has asserted against it are prescribed pursuant to this Court's July 7, 2006 Memorandum Ruling[15] because only one claim was properly made in July 2000. In a Memorandum Ruling dated December 11, 2006 (doc. #973), we held that proper notice of a claim was made as to each of the leak events that occurred from June 25, 1998 through October 8, 2002 as documented and detailed in Exhibit A attached to the Affidavit of Larry Negron in Plaintiffs' Exhibit G. In that same Memorandum Ruling, the Court held that all claims for injuries that occurred prior to August 15, 2002 were prescribed. Also, the Court held that an occurrence triggers coverage under the policies when a property damage claim is made during the policy period, and a later claim may be deemed to have been first made at an earlier time, but only with respect to a property damage claim that occurred during the policy period.[16] Accordingly, any claims for injuries that were made prior to August 15, 2002 have prescribed.

---

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[14] *Anderson*, 477 U.S. at 249-50.

[15] This Court ruled that all claims for injuries that occurred prior to August 15, 2002 have prescribed.

[16] Memorandum Ruling dated December 8, 2006 (doc. #965).

*Self-insured retention and number of occurrences*

C&I maintains that is it entitled to a ruling that under each insurance policy issued to TCI, (1) the per "occurrence" self-insured retention applies to any recovery by plaintiffs, (2) each leak event constitutes a separate "occurrence," and (3) the self-insured retention precludes any recovery from C&I by plaintiffs to the extent that damages arising from each leak event do not exceed the retention. These issues have already been ruled upon. In the Memorandum Ruling dated December 11, 2006 (doc. #973), the Court held that each leak event is a separate occurrence for which the self-insured retention of $100,000.00 applies. Accordingly, C&I can only be held liable for damages to the extent that each leak event causes damages in excess of $100,000.00.

*Does C&I owe Pump Masters a defense as an insured or additional insured under the C&I policies?*

Aeon Risk Services of Pennsylvania issued two certificates to Pump Masters regarding its alleged status as an Additional Insured. The first which is dated October 10, 2000, indicates that Pump Masters is "an Additional Insured under the Vendor's Liability endorsement. The certificate identifies TCI as the insured and is effective from June 30, 2000 through June 30, 2001. The second certificate, dated July 6, 2001, indicates that Pump Masters is "added as an Additional Insured under the Vendor's Liability Endorsement attached." The certificate identifies TCI as the insured and lists one policy effective from June 30, 2001 through June 30, 2002. Attached to the certificate is a copy of Endorsement No. 5, the Vendor's Liability endorsement from the 2001 Policy.[17]

Pump Masters maintains that C&I owes it a duty to defend in the instant litigation and has filed cross-claims against C&I as to the claims asserted against Pump Masters by Cleveland Tubing, Dayco/Mark IV, Ticona, Underwriters Laboratories and Shell. Pump Masters asserts that the

---

[17] See Exhibits 5A and 5B to C&I's motion.

Vendor's Liability Endorsement and Endorsement No. 1 provide Additional Insured status to Pump Masters with regard to its distribution and sale of TCI products. Pump Masters further asserts that because the various cross-claims asserted against Pump Master allege negligent design, and there is no exclusion under the C&I policies, C&I has a duty to defend it. Pump Masters concedes that it does not qualify as an insured under Endorsement No. 1,[18] since the work it performed in this case was not performed on behalf of TCI. However, it contends that the Vendor's Liability endorsement under Endorsement No. 5, does not unambiguously exclude coverage, such that a defense is owed for the allegations of improper design. Endorsement No. 5 provides that with respect to the "products-completed operations hazard," the definition of "Insureds" is amended to include at the Named Insured's option:

> any person or organization herein referred to as "Vendor" . . . as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business for the Named Insured's products . . . .[19]

C&I maintains that there is no coverage for Pump Masters because (1) no claims were properly made during the coverage period, or alternatively, only one claim was made during the policy period, (2) the vendor's liability endorsement does not provide coverage to Pump Masters for its own negligence, (3) the policies expressly exclude coverage for property damage arising out of installation, service and repair operations, and (4) Pump Masters has not demonstrated that it has satisfied the self-insured retention.

---

[18] Endorsement No. 1 provides that :

Installers and applicators, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only with respect to work performed on behalf of the Named Insured. Exhibit 7 to C&I's motion.

[19] Exhibit 6 to C&I's motion.

The Court has previously held that proper notice of a claim was made as to each of the leak events that occurred from June 25, 1998 through October 8, 2002 as documented and detailed in Exhibit A attached to the Affidavit of Larry Negron in Plaintiffs' Exhibit G. Hence, claims for coverage were properly made during the policy period, even though any made prior to August 15, 2002 have prescribed.[20]

C&I maintains that the policies do not provide coverage for Pump Master's negligence. In rebuttal, Pump Masters asserts that only certain negligence as to installation, maintenance or repair is excluded from coverage. Pump Masters submits the affidavit of Douglas L. Jones which declares that the limited design functions performed by Pump Masters were part of its distribution and sale of TCI products. C&I argues that Pump Masters was not a distributor or retailer, but was an end-user of the flexhose. C&I further contends that Pump Masters purchased the flexhose to install at the Brookshire gasoline stations in the same way that a general contractor purchases electrical equipment or plumbing supplies to install in a building under construction. C&I then argues that Pump Masters was selling completed gasoline stations and the flexhose system was one part of the complete station for which Brookshire Brothers contracted.

Vendor's endorsements have been interpreted as providing coverage where the vendor is found strictly liable for selling a defective product and excluding coverage where the vendor is found to be independently negligent.[21]

Regarding a duty to defend, the Fifth Circuit provides the following:

---

[20] See Memorandum Ruling dated December 11, 2006 (doc. #963).

[21] See *Hulsey v. Sears, Roebuck and Co.*, 705 So.2d 1032 (La.App. 1st Cir. 1997); *Easton v. Chevron Industries, Inc.*, 602 So.2d 1032 (La.App. 4th Cir. 1992); *writs denied*, 604 So.2d 1314 and 604 So.2d 1318 (La.1992).

Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the petition unambiguously exclude coverage . . . . If the petition discloses the possibility of liability under the policy, the insurer has a duty to defend. . . . If any facts alleged in the petition support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured . . . . This court should interpret the petition liberally when making this determination.[22]

The Court has reviewed the third-party complaints and cross-claims of the defendants, Shell, Underwriters Laboratories, Dayco/Mark IV, Cleveland Tubing, C&I and Ticona. All of these defendants allege that Pump Masters was the general contractor responsible for the design and construction of the gasoline storage and delivery systems located at Brookshire Brothers' gasoline stations, including the site-specific design and installation of the TCI flexpipe. All of the claims or cross claims against Pump Masters are for negligence in the design, construction, maintenance and repair *of the gasoline delivery systems*. Douglas Jones' affidavit declares that Pump Masters "configured the appropriate components of the TCI system" and "designed the layout for each of the Brookshire Brothers' stations."[23] These allegations make claims about Pump Masters role in designing the system layout for installation. These defendants' claims make no allegations of negligent design as to the flexhose itself. The other allegations in defendants' cross-claims relate to maintaining and repairing the flexhose system which are clearly excluded as service and repair operations. The policies clearly and unambiguously exclude coverage for the installation, construction and repair of the gasoline and delivery system. Thus, because there is no possibility of liability under the policies as to the allegations made in the petitions, C&I has no duty to defend Pump Masters under the policies.

---

[22] *United Fire and Casualty Co. v. Hixson Brothers, Inc.*, __ F.3d __, 2006 WL 1669877 (5th Cir. 2006).

[23] Exhibit 5 to C&I's motion.

*Does Pump Masters have to satisfy the self-insured retention?*

Even though the Court has determined that C&I has no duty to defend because there is no coverage, the Court will restate its earlier ruling regarding the self-insured retention in the C&I policies. In the Memorandum Ruing dated December 11, 2006, (doc. #973) the Court ruled that each leak is subject to the Self-insured Retention of $100,000.00. As an Insured under the policy, Pump Masters also must bear the $100,000.00 per occurrence retention provided in the policy. Pump Master cites no policy language that would exempt it from this condition of insurance coverage.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment (doc. #575) filed by Commerce & Industry Insurance Company of Canada will be granted to the extent that any claims for injuries made prior to August 15, 2002 have prescribed; the motion for summary judgment (doc. #578) filed by Commerce and Industry Insurance Company of Canada will be granted to the extent that each leak event is a separate occurrence for which the self-insured retention of $100,000.00 applies, and C&I can only be held liable for damages to the extent that each leak event causes damages in excess of $100,000.00; the motion for partial summary judgment (doc. #564) filed by Pump Masters, Inc. will be denied; and the motion for summary judgment as to Pump Masters, Inc.'s cross-claims (doc. #576) filed by C&I will be granted in part and denied in part. The motion (doc. #576) will be denied to the extent that proper notice of a claim was made as to each of the leak events that occurred from June 25, 1998 through October 8, 2002 as documented and detailed in Exhibit A attached to the Affidavit of Larry Negron in Plaintiffs' Exhibit G,[24] and granted to the

---

[24] See the Memorandum Ruling dated December 11, 2006 (doc. #973)

extent that all claims for injuries that occurred prior to August 15, 2002 have prescribed. The motion (doc. #576) will be granted to the extent that the each leak event is a separate occurrence for which the self-insured retention of $100,000.00 applies, and C&I can only be held liable for damages to the extent that each leak event causes damages in excess of $100,000.00. The motion (doc. #576) will be granted to the extent that C&I has no duty to defend Pump Masters under the policies. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of February, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE