U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 2 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
                DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC.,** *et al.,* | **CIVIL ACTION NO.04-1150** |
| -vs- | **JUDGE TRIMBLE** |
| **TOTAL CONTAINMENT, INC.,** *et al.,* | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. # 546] filed by defendant, New Hampshire Insurance Company ("New Hampshire"). For the reasons discussed herein, the instant motion shall be GRANTED.

**I.     Background**

**A.     Relevant Facts**

Plaintiff, Brookshire Brothers Holding Inc. ("Brookshire") operates a chain of grocery stores throughout eastern Texas and western Louisiana. Each of these grocery stores offers consumer gasoline sales through an on-site fueling station. Each store's supply of gasoline is held in underground tanks, which are connected to the above-ground fuel pumps by a system of flexible pipes and hoses. The flexible pipe comprising this system forms the basis of the instant suit.

The flexible pipe system at issue contains what has been referred to as "Flexpipe." The Flexpipe is composed of two layers. Dayco Products, Inc. ("Dayco") constructed the outer layer of the pipe while Cleveland Tubing, Inc. ("Cleveland") constructed the inner layer

of the pipe.  The first leak of the flexpipe in question was reported on June 25, 1998.  In December of 2000, Brookshire representatives met with Tony Adamson, former Vice President for Sales of Total Containment, Inc. ("TCI") concerning the performance of the Flexpipe Brookshire purchased from TCI.  The next leak event was not reported until the year 2000.  Plaintiff filed the instant suit on August 15, 2003 seeking damages and costs associated with alleged defects in the Flexpipe.

Cleveland, manufacturer of the inner layer of the Flexpipe, was insured from September 5, 1996 until September 5, 1997 by New Hampshire Insurance Company ("New Hampshire").  New Hampshire filed the instant motion seeking summary judgment on the basis that plaintiff's claims against it have prescribed.  Additionally, New Hampshire contends that, if the claims have not prescribed, coverage is excluded because there was no occurrence within the meaning of the policy; the claims are not covered due to the "your product" exclusion in the contract of insurance; and, lastly, that purely economic losses or losses encompassed by the absolute pollution exclusion are not covered.  Defendants Brookshire [Doc. # 691] and Cleveland [Doc. # 620] filed memoranda in opposition to the instant motion.

### B.    Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).  A dispute about a material

fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(C). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

## II.    Analysis of Law and Arguments

**Prescription of Claims**

New Hampshire argues that its motion for summary judgment should be granted by application of this Court's previous ruling [Doc. # 481] that claims made more than one year before the filing of the instant suit, August 15, 2002, are prescribed under Louisiana's one-year prescriptive period.  Defendant Brookshire argues that its claims against New Hampshire have not prescribed because the prescriptive period was interrupted by alleged falsehoods conveyed to Brookshire by Tony Adamson ("Adamson"), former Vice President for Sales of TCI.  Brookshire claims, specifically, that several of its "high-ranking officials" met with Adamson and Leo Jones, a representative of Pump Masters, Inc. ("Pump Masters"), in December 2000.  At this meeting, Brookshire alleges, Adamson led Brookshire to believe that it stood by its product and that the product was fit for the purposes for which Brookshire was using it. [Doc. # 691] *at pp. 6-9.*  Brookshire cites Adamson's deposition for the contention that it satisfied its obligation to inquire as to the condition of the pipe at this 2000 meeting and that, in the alternative, alleged misrepresentations by Adamson constituted a basis for the interruption of prescription from that point until Brookshire learned, in November of 2002, of flexpipe's de-certification by the Florida Department of Environmental Quality.  *Plaintiff's Fifth Supplemental and Amended Complaint at ¶ 65.*

To begin, we reiterate our prior ruling that Louisiana law providing for one-year liberative prescription applies to all claims made part of this suit by virtue of LA. CIV. C. ART. 3549.  Plaintiff has not demonstrated any "compelling considerations of remedial

4

justice[1]'" in its arguments before this Court and, as such, shall be held to the provisions of that article concerning the prescription of its claims against New Hampshire.

New Hampshire provided commercial general liability insurance to Cleveland from September 5, 1996 - September 5, 1997. The parties agree that the first reported leak occurrence of second generation pipe occurred in June of 1998[2]. Recalling the discussion of prescription above, it is clear that claims arising during the effective period of the policy are now prescribed. What remains, however is a determination as to whether or not the prescriptive period was interrupted by statements allegedly made by Adamson at the December 2000 meeting.

Brookshire avers that if Adamson misrepresented the quality of the flexpipe, this alleged untruth served as an interruption to prescription. In the alternative, Brookshire argues that, at the very least, the question of whether or not Adamson's statements were untruthful constitutes a question of fact such as to make summary judgment inappropriate in this instance. [Doc. # 691] at p. 8. We disagree.

As we have noted in prior rulings, plaintiff experienced many leaks in its second-generation flexpipe in the late 1990's, as well as a "near-catastrophe" in July of 2000. [Doc. # 481] *at p. 7.* The December 2000 meeting cited by Brookshire was, almost certainly, a result of those negative outcomes. Under the circumstances, we find that plaintiff clearly had notice sufficient to prompt inquiry during the year 2000. Plaintiff, in essence, argues that,

---

[1]LA. CIV. C. ART. 3549(B)(1)

[2]See New Hampshire's Statement of Material Facts [Doc. # 546] and Brookshire's response [Doc. # 691-2].

whether or not statements made by Adamson were untrue, it was entitled to rely upon them and that such reliance interrupted prescription, as those statements prevented Brookshire from constructive notice of its claim against defendants.  Again, we must disagree.  "[N]otice enough to excite plaintiff's attention and put her on guard to prompt inquiry...is tantamount to knowledge or notice of everything to which inquiry might lead."  Mistich v. Cordis Mfg. Co., 607 So.2d 955, 956 (La. App. 4 Cir. 1992).  Brookshire had experienced pipe failures at the time of meeting and it was not entitled to rely on allegedly false statements to the prejudice of its rights and then claim interruption of prescription as it most certainly had constructive notice of a claim against defendants before the December 2000 meeting.

## III.    Conclusion

We find that Brookshire's claims against defendant New Hampshire have prescribed and that the meeting and alleged false statements conveyed therein did not act to interrupt prescription in this case.

Finding as we have, we need not address alternative arguments advanced by New Hampshire in its motion.  For the reasons expressed in our ruling above, New Hampshire's motion for summary judgment shall be granted and, accordingly, all claims against it will be dismissed with prejudice.

Alexandria, Louisiana
February **2 3** , 2007

_____
JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE

6