

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC., ET AL** | **CIVIL ACTION NO. 04-1150** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **TOTAL CONTAINMENT, INC., ET AL** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the Court is defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (Liberty Mutual)'s Motion for Summary Judgment [Doc. # 552] in which Liberty Mutual argues that, given the date of the first reported second generation flexpipe leak, only one of the three policies it issued to defendant Total Containment, Inc. ("TCI") can reasonably be construed to provide coverage, if, in fact plaintiff's claims against Liberty Mutual have not prescribed altogether. Liberty Mutual further avers that the exclusions contained in this single applicable policy act to preclude coverage for this first leak occurrence and, as such, Liberty Mutual is entitled to summary judgment declaring that its policy provides no coverage to TCI for the leak of June 25, 1998 at Caldwell, Texas. As we find that plaintiff's claims against Liberty Mutual have prescribed, the instant motion shall be GRANTED and all such claims shall be DISMISSED with prejudice.

**I.     Background**

**A.     Relevant Facts**

Plaintiff, Brookshire Brothers Holding Company ("Brookshire"), filed the instant suit in 2003, seeking damages allegedly caused by leaks occurring in flexpipe it bought from TCI. Flexpipe is a flexible pipe comprised of several layers which Brookshire uses to connect underground tanks storing gasoline to retail gasoline pumps located at many of its grocery stores in eastern Texas and western Louisiana. Brookshire claims that manufacturing defects in the flexpipe it purchased are the cause of leaks which manifested themselves beginning with a leak at its Caldwell, Texas location on June 25, 1998.

Liberty Mutual issued four Commercial General Liability ("CGL") insurance policies and two Umbrella Excess Policies ("UEL") to TCI. The CGL policies were effective from June 30, 1995 until January 24, 1999. The UEL policies were effective from January 24, 1997 until January 24, 1999. No claims were made on any of the Liberty Mutual policies.

**B.    Applicable Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp.

v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

## II.    Analysis of Law and Argument

Liberty Mutual asserts that Brookshire must prove the existence of coverage under Pennsylvania, Texas and Louisiana law, but cites absolutely no authority for this conclusion. *Motion for Summary Judgment at p. 4.* Brookshire, in response submits that Louisiana law necessarily governs the interpretation of the insurance policies at issue due to the fact that Liberty Mutual was sued under Louisiana's Direct Action Statute. *Memorandum in Opposition at pp. 4 - 6.*

As we have previously stated, regardless of the state law that governs the substantive issues in this case, we are instructed to apply the prescriptive period applicable under Louisiana law according to LA. C.C. ART. 3549(B)(1).  [Doc. # 481]  We have also held, and reiterated, that, based on the filing of this suit on August 15, 2003, all claims not asserted by August 15, 2002 have prescribed under Louisiana's one-year prescriptive period for tort action.  LA. C.C. ART. 2315.

Both Liberty Mutual and Brookshire stipulate that the first leak forming the basis of the instant suit occurred on June 25, 1998 in Caldwell, Texas. *See Statement of Undisputed Material Facts by Liberty Mutual* [Doc. # 552-2] *and Response by Brookshire* [Doc. # 633-2].  Even if this Court were to accept Brookshire's suggested use of the incorporation theory of occurrence, which we expressly reject based on law and jurisprudence, such framework would not rewind the clock of prescription. The Caldwell leak in 1998 was certainly enough to apprize Brookshire and TCI of the existence of a claim, yet no claim was filed.  More than five years passed before Brookshire asserted its rights, resulting in the prescription of many of its potential claims for damages under applicable Louisiana law.  Accordingly, we find that any claims against the policies issued by Liberty Mutual to TCI between the years of 1995 and 1999 are prescribed, as they were not asserted as of August 15, 2002.

We also feel it prudent to note that issues of CGL insurance coverage for TCI's executive officers are now moot, as we have previously dismissed all claims against such officers. [Doc # 330 and 728].  Were these executive officers still defendants to this suit, we would interpret the policies as excluding coverage under the products completed exclusion. The language of this policy specifically states that executive officers are covered "only with respect to their duties as officers..." *See Liberty Mutual Policy attached as Exhibit A to Motion for Summary Judgment.*

The misrepresentations and other conduct alleged by Brookshire is clearly within the scope of the former defendants' duties as executive officers at TCI. We would not, under those facts, agree with plaintiff's assertion that the alleged behavior falls outside the coverage exclusion, as it is clearly a part of work performed for TCI.

### III.    Conclusion

This Court has already determined that all claims against defendants not asserted by August 15, 2002 are now prescribed according to applicable Louisiana law. Applying that logic to the instant motion, we find that Brookshire's claims based on CGL policies effective from 1995 until 1999 have, likewise, prescribed. No claims were made on these policies and may not be maintained herein.

Plaintiff's claims shall be dismissed with prejudice.

Alexandria, Louisiana

March  9 , 2007

_____
JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE