U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUL 0 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BROOKSHIRE BROTHERS HOLDING, INC., ET AL** | : | **DOCKET NO. 04-1150** |
| VS. | : | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING AND ORDER

Before the Court are two (2) motions in limine: (1) "MOTION IN *LIMINE* TO EXCLUDE TESTIMONY OF STEPHEN C. GRIGORY" (doc. #1017) filed by defendants, Underwriters Laboratories, Inc. ("UL") and Commerce & Industry Insurance Company of Canada ("C&I"), and (2) "DAYCO PRODUCTS, L.L.C., MARK IV INDUSTRIES, LTD., AND COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA'S MOTION IN LIMINE TO EXCLUDE THE REPORT AND TESTIMONY OF STEPHEN C. GRIGORY, P.E." (Doc. #1048). Because both of the motions address the same expert and the same issues, the Court will consider them together.

These Defendants maintain that the opinions of Plaintiffs' expert, Stephen C. Grigory, do not meet the standards for qualified, reliable and relevant expert evidence under Federal Rules of Evidence 401-403 and 702. In addition to Mr. Grigory's testimony and opinions, two reports are involved: (1) "Deficiencies of UL Standard 971 - Nonmetallic Underground Piping of Flammable Liquids" ("Standard 971 Report") and (2) "Deficiencies in the Design of Total Containment Enviroflex Primary Pipe" ("Design Report").

In his Standard 971 Report, Mr. Grigory contends that UL Standard 971 was inadequate and

that a proper test protocol and standard would have detected defects in Flexpipe before UL's certification. UL and C&I (collectively referred to as "UL") seeks to exclude Mr. Grigory's testimony because of lack of qualifications and experience, and unreliable methodologies in reaching his conclusions.

In his Design Report, Mr. Grigory opines that the defendants (Dayco and Mark IV) did not properly design the flexible primary hose used at Brookshire Brothers' stations. Dayco, MarkIV and C&I (collectively referred to as "Dayco") seek to exclude Mr. Grigory's testimony because he never designed, manufactured, and/or tested a multi-layered plastic hose of any kind or the specific hose at issue in this case. Furthermore, Dayco contends that Mr. Grigory has no experience or expertise regarding this particular kind of hose.

Federal Rule of Evidence 702 provides the following regarding expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[1] The party offering expert testimony must prove by a preponderance of the evidence that the proffered evidence satisfies the criteria of Federal Rule of Evidence 702.[2] "The court must determine that the reasoning and methodology underlying the testimony is scientifically valid and

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

[2] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

that the reasoning and methodology can properly be applied to the facts in issue."[3] Rule 702 has three major requirements: (1) qualifications, (2) reliability, and (3) relevance.[4]

*UL's motion*

UL maintains that Mr. Grigory does not have the specialized knowledge, credentials or experience that would qualify him to offer opinions on its test protocols and Standard 971. UL complains that Mr. Grigory has admitted to having no experience in a standards organization or in adopting test protocols.[5] UL also complains that Mr. Grigory has had no prior experience or expertise in multi-layered, thermoplastic hose or piping for the transmission of flammable liquids at issue in this case,[6] nor has he developed any standards or test protocols for such a product.[7] Hence, UL argues that Mr. Grigory is a professional witness with no specific expertise about the specific piping at issue in the case.

Brookshire Brothers has attached Mr. Grigory's affidavit which states in detail the activities he has participated in relative to standards and testing. Brookshire Brothers also attaches Mr. Grigory's resume to show that he has spent 33 years at the Southwest Research Institute evaluating different kinds of thermoplastic pipe. Plaintiffs then argue that Mr. Grigory's past work in multi-thermoplastic piping is no different from working with multilayered thermoplastic pipes. Plaintiffs also suggest that UL's own engineers had not worked with a multilayered thermoplastic pipe when it developed Standard 971

---

[3] *Allen v. Pennsylvania Engineering Corp.,* 102 F.3d 194, 196 (5th Cir. 1996) citing *Daubert,* 509 U.S. at 592-93.

[4] *Smith v. Fifthian,* 2006 U.S. Dist. LEXIS 51054, *4-5 (W.D. La. July 26, 2006).

[5] UL's Exhibit A, Grigory depo. p. 22-23, 92, 139.

[6] *Id.* at pp. 37, 90, 173.

[7] *Id.* at pp. 41-42, 45-46, 185-186.

to apply to TCI's flexpipe.

UL maintains that Mr. Grigory's report and opinion are not reliable. *Daubert* lists five considerations to assist the trial judge in determining "reliability" of the expert's testimony: (1) the "testability of the expert's theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether the methodology is generally accepted in the scientific community.[8] UL argues that Mr. Grigory reached his opinions about UL's test protocols and Standard 971 without developing any protocols or performing any tests whatsoever. UL further complains that Mr. Grigory has not done any stress analysis, forensic testing, or failure analysis on multilayered thermoplastic pipe and has admitted that he could not give an opinion on the root cause of the flexpipe's alleged failure.

Brookshire Brothers maintains that Mr. Grigory's job with respect to UL was to review and render an opinion on UL's standard and the testing done by UL. Brookshire Brothers asserts that other experts have performed failure analysis and will testify to the same, and that Mr. Grigory will testify that UL failed to properly perform the testing procedure referred to as ASTM 2837. This test would have plotted a regression curve that Brookshire Brothers submits would have determined how long the pipe should last. The test was specifically designed to ferret out the very deficiencies – pipes susceptible to leaking – that occurred in this case.

Mr. Grigory will also testify that UL failed to perform immersion testing of the outer cover – or did not test the outside cover of the pipe for compatibility to hydrocarbons or water. He will then testify that had the test been done, it would have revealed that the outer layers deteriorate when exposed

---

[8] *Daubert,* 509 U.S. at 591-95.

to a gasoline/water mixture. Brookshire Brothers points out that there is a litany of testimony in the case that the outer cover's degradation is due to exposure to water and/or gasoline. Brookshire Brothers asserts that even UL recognized their mistake by changing UL 971 to include immersion testing in 2003, and the TCI flexpipe is off the market because it cannot pass the revised UL 971.

UL contends that Mr. Grigory cannot give an opinion regarding UL's conduct – failure to perform immersion testing and to properly execute ASTM 2837 – and how it caused leaks or damage. Brookshire Brothers argues that whether or not to accept Mr. Grigory's opinion is for the jury to determine,[9] and that Mr. Grigory does have a basis from which to base his opinion. Brookshire Brothers explains that the relevance of Mr. Grigory's testimony is that he can explain and point out to the Court why UL's personnel should not have modified established ASTM tests that required long-term sustained pressure testing of the flexpipe. They then assert that it does not take much more than common sense to realize that the outside of the flexpipe should have been tested for compatibility to hydrocarbons which UL neglected to do.

UL complains that Mr. Grigory has not served on any standard and test committees. Brookshire Brothers submits Mr. Grigory's affidavit which shows that in addition to being a member of ASTM, he has served and is serving on panels that establish testing standards.

Finally, UL argues that Mr. Grigory's testimony will not assist the trier of fact because he has no experience concerning the flexpipe or standards applicable to it, and he performed no testing on any of the flexpipe. Furthermore, Mr. Grigory testified that his opinions about Standard 971 are unrelated to failures at Brookshire Brothers, and the criticism of Standard 971 is separate and apart from the

---

[9] Citing *Scramuzza v. River Oaks, Inc.*, 871 So.2d 522 (La.App.5 Cir. 2004), *writ denied* 876 So.2d 839 (La. 2004).

flexpipe failure. Brookshire Brothers argues that Mr. Grigory's testimony will help the jury understand why testing the outside of the flexpipe was necessary as well as the need to properly execute the long-term sustained pressure test (ASTM 2837).

The Court has carefully reviewed the exhibits and considered the arguments of the parties and finds that UL's motion in limine to exclude Mr. Grigory's testimony lacks merit. Given the limited testimony that Mr. Grigory will be presenting, he is qualified, and the basis for his testimony is reliable and relevant for the jury's consideration.

*Dayco's motion*

Brookshire Brothers' expert, Mr. Grigory, also authored a report entitled, "Deficiencies in the Design of Total Containment Enviroflex Primary Pipe." Mr. Grigory opines in that report that the flexpipe was defectively designed. Dayco makes the same contentions as UL in that Mr. Grigory is not qualified to render such an opinion because he is not a chemical or mechanical engineer and has no prior experience or expertise in multilayered, thermoplastic hose for the transmission of flammable liquids at issue in this case. Dayco also maintains that Mr. Grigory has never developed any standards or test protocols for such a product and has not performed testing of the flexpipe at issue before this case or during his retention of this case.

Dayco cites the same law regarding reliability as does UL in their brief and then concludes that based on these criteria, Mr. Grigory's proposed testimony is unreliable. Dayco also complains that Mr. Grigory failed to perform stress analysis, forensic testing or failure analysis on the flexpipe, and he developed no test protocols and performed no tests, experiments, or re-enactments on the flexpipe. Dayco complains that Mr. Grigory has no experience, data, or tests to support his conclusions about the flexpipe design, and his opinions are rank speculation.

6

Mr. Grigory's report faults Dayco for not doing a stress analysis on the flexpipe with regard to its design, not selecting materials to be used in the flexpipe that are recognized by the engineering pipe community,[10] changing materials without adequate testing, employing an overly complex design that resulted in inconsistent extrusion for the corregations, causing increased stress points, and not considering the presence of water and/or gasoline in the operating environment. Brookshire Brothers argues that Mr. Grigory's criticisms are borne out and supported by the current listing of pipe on UL's website that have passed the revised UL Standard 971. Brookshire Brothers asserts that Mr. Grigory's opinions are based on written literature and standards cited in his written his report, over 30 years of experience in testing, making design changes, and recommendations to manufacturers of pipe. Mr. Grigory has been in the field of pipe testing, application and design for over 30 years in many kinds of applications and environments and has expertise in both engineering education, and experience with plastic piping under pressure for the transport of both gases and fluids, including hydrocarbons and jet fuels. Brookshire Brothers submits that the flexpipe is a multilayered plastic pipe which is pressurized for the transport of a liquid hydrocarbon and that a multilayered thermo plastic pipe is still a thermo plastic pipe. Mr. Grigory also bases his opinions on the piping industry's accepted standards.

As to Mr. Grigory not testing the flexpipe, Brookshire Brothers maintains that Mr. Grigory relied on the ASTM, the Piping Institute and Dayco and UL documentation. Brookshire Brothers argues that testing was not necessary on opinions regarding choice of materials because the industry already recognized the same as per the report and authorities contained in Mr. Grigory's report.

Dayco also complains because Mr. Grigory will not testify as to the root cause of the flexpipe failure. Again, Brookshire Brothers has other analysis experts who will provide this testimony. Dayco

---

[10] Plastics listed in ASTM 1995 Standards Section 9, Volume 8.04.

further complains that Mr. Grigory has not participated in establishing standards. Brookshire Brothers maintains that this is factually incorrect and submits Mr. Grigory's affidavit which states that he has participated in establishing standards, albeit none of which involve the particular flexpipe at issue in this case. Finally, Dayco complains that Mr. Grigory's testimony is irrelevant. Brookshire Brothers explains that Mr. Grigory will testify as to why the ASTM long term pressure test was required (but not performed by Dayco), the standard in the industry, why Dayco's choice of materials other than those recognized by the piping industry was negligent by Dayco, and why the design was unnecessarily complex.

The Court has reviewed the documents submitted and considered the arguments of the parties. Given the limited testimony the Court expects Mr. Grigory to give, we conclude that he has the qualifications or expertise to testify regarding the design deficiencies he has stated in his report concerning the flexpipe, and his testimony is both relevant and reliable. Accordingly, it is

**ORDERED** that the motion in limine (doc. #1017) to exclude the testimony of Stephen Grigory regarding the deficiencies of UL Standard 971 is hereby **DENIED,** and the motion in limine (doc. #1048) to exclude the testimony of Stephen Grigory regarding the deficiencies of the design of the flexpipe is hereby **DENIED.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 3rd day of July, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE