RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE 9-7-07
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| BROOKSHIRE BROTHERS HOLDING, INC., ET AL | CIVIL ACTION NO. 04-1150 |
| VERSUS | JUDGE TRIMBLE |
| TOTAL CONTAINMENT, INC., ET AL | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Gulf Insurance Company ("Gulf"), now known as Travelers Indemnity Company ("Travelers") [R. 556]. For the reasons expressed herein, the court finds that Gulf's motion should be GRANTED.

I. **Background**

A. *Relevant Facts*

Plaintiffs, Brookshire Brothers Holding, Inc., Brookshire Brothers Management, Inc., Brookshire Brothers Investment, Inc. and Brookshire Brothers Ltd. ("Brookshire") filed this suit on August 15, 2003. Brookshire operates a chain of retail grocery stores which include, at many locations, retail fuel stations. This suit arises out of leaks which occurred at certain Brookshire locations in both Texas and Louisiana.

Brookshire claims that the Enviroflex system it purchased from Pump Masters Inc. ("PMI") contained defects which rendered it unfit for use as a system by which fuel from

1

underground storage tanks was transported to above ground retail fuel pumps. Specifically, Brookshire claims that the flexible hose component of the Enviroflex system ("flexpipe") leaked, causing substantial damage to the system itself, as well as to surrounding property as gasoline escaped from the flexpipe. Total Containment Systems, Inc. ("TCI") manufactured the flexpipe used in the Enviroflex system.

TCI purchased two claims-made comprehensive general liability ("CGL") policies from Gulf. The first policy issued was Policy No. CGL-531-50-27 ("1997 Policy") which carried an effective policy period of September 21, 1997 through September 21, 1999.[1] The second policy issued was Policy No. CGL-0283361 ("1998 Policy") which carried an effective policy period of November 20, 1998 through November 20, 2000.[2]

The first reported leak occurred on June 25, 1998 at Brookshire's Caldwell, Texas location. Additional leaks did not occur until 2000. An invoice in the amount of $2,174.68 was sent to TCI from PMI after repairs were made following the June 25th leak at Caldwell. The invoice was paid by TCI on October 5, 1998.[3]

Gulf contends neither the 1997, nor the 1998 Policies owe coverage in this suit for a number of reasons. First, Gulf asserts that TCI paid the invoice, thereby satisfying any possible claim. Second, Gulf contends that the deemer provisions allowing future claims arising out of

---

[1] A copy of this policy is attached as "Exhibit A" to Travelers' motion for summary judgment [R. 556].

[2] A copy of this policy is attached as "Exhibit B" to Travelers' motion for summary judgment [R. 556].

[3] A copy of this invoice is attached as "Exhibit G" to Travelers' motion for summary judgment [R. 556].

the same occurrence to be deemed filed at the time the first claim for such loss is filed were removed from the 1997 and 1998 Policies by endorsement, foreclosing coverage for claims in successive years by virtue of the Caldwell, Texas "claim." Third, Travelers asserts that, even if the payment of the invoice by TCI constitutes a valid "claim," the policies each contained a Self-Insured Retention ("SIR") in the amount of $100,000 per occurrence, which was certainly not fulfilled by the relatively small $2,174.68 paid invoice. Gulf also avers that our prior ruling on the issue of claim prescription applies to this particular claim and makes dismissal of Brookshire's claims against Gulf appropriate.

Brookshire refutes these arguments, claiming that the invoice paid by TCI does, indeed, constitute a "claim," even though it was not submitted to the insurer for payment. Brookshire also argues that the deemer provisions at issue were not removed by the endorsements and, therefore, the potential claim for damage at Caldwell might have triggered coverage for many subsequent claims, even though they occurred after the end of the last policy period. Brookshire contends, also, that the court should adopt a view which construes each of the leaks as a part of a single occurrence, making it possible that the SIR was satisfied by TCI and, therefore, coverage might be owed. Lastly, Brookshire disputes the idea that prescription of the initial claim has any impact on the gathering of claims under the 1997 Policy by virtue of the deemer provision.

There is no dispute among the parties that no true conflict of laws exists as to this motion. Although the policy was issued in Pennsylvania, the applicable laws concerning contract interpretation between Pennsylvania and Louisiana do not differ and would produce the same result.

**B.** ***Applicable Standard***

Gulf's motion before us requests summary judgment pursuant to Fed. R. Civ. P. Art. 56. In ruling on such a motion, we must determine whether the "....pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact...[4]" A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party[5]. In making this determination, the court must draw all justifiable inferences in favor of the non-moving party[6].

Once the moving party has carried its burden of showing an absence of evidence to the non-moving party's case, the burden shifts to the non-moving party to come forward with specific facts showing a genuine factual issue for trial[7]. "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried[8]. Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial[9].

---

[4]Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[5]Anderson, 477 U.S. 242 at 248.

[6]Id at 255.

[7]Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[8]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[9]Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

If the moving party fails to meet its initial burden of proof, the motion must be denied, regardless of the non-moving party's response[10].

## II. Analysis of Law and Arguments

### A. *Prescription of Claims*

As we have previously ruled, all claims existing, but not legally asserted more than a year before the filing of this suit are prescribed.[11] This suit was filed on August 15, 2003. Accordingly, the court finds that any claim Brookshire may have had based on the invoice for repairs following the leak of June 25, 1998 prescribed well before the filing of this suit.

While prescription disposes of the insurance coverage issues raised in this motion, we find it prudent to address several of the other arguments advanced by the parties.

### B. *Redaction of the Deemer Provisions*

As further support for its motion for summary judgment, Gulf offers evidence that the deemer provision concerning property damage, originally located in paragraph 1(c) of the insuring agreement, was removed from the policy by endorsement. Brookshire disputes this assertion and argues that the two paragraphs containing deemer provisions, one for bodily injury and another for property damage, should not be construed as part of paragraph 1(c) and, as such, were not affected by the endorsements at issue.

Paragraph 1(c) of the insuring agreement between Gulf and TCI reads as follows:

"1. Insuring Agreement

---

[10] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex).

[11] See R. 481.

> c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
>
> (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or
>
> (2) When we make settlement in accordance with paragraph 1.a. above.
>
> All claims for damages because of 'property damage' causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured."[12]

The endorsements at issue, identical to one another, read as follows:

> "Paragraph 1.c of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:
>
> 1. Insuring Agreement
>
>    c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
>
>    (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or
>
>    (2) When we make settlement in accordance with paragraph 1.a above.
>
>    All claims for damages because of 'bodily injury' to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the 'bodily injury' will be deemed to have been made at the time the first of those

---

[12] 1997 Policy, "Exhibit A" to Gulf's motion at Bates No. Gulf 00003; 1998 Policy, "Exhibit B" to Gulf's motion at Bates No. Gulf 00052.

claims is made against any insured."[13]

After reviewing the disputed policy language above, the court finds that the paragraphs which contain deemer provisions concerning bodily injury and property damage are clearly a continuation of the first paragraph of 1(c). We find no ambiguity in this provision and will not impart ambiguity as urged by Brookshire. Therefore, we interpret the insuring agreement and applicable endorsements as they are written.[14] The endorsements removed the deemer provisions pertaining to property damage from the Gulf policies. Accordingly, we reject Brookshire's argument that the invoice in question, were it a proper claim within the meaning of the 1997 policy, acted as a "trigger," enabling coverage for subsequent property damage claims after the policy expired.

### C.   *Self-insured Retention and Occurrences*

Our findings with respect to the deemer provisions in the 1997 Policy necessarily impact the remainder of the arguments advanced by both Gulf and Brookshire, because without the deemer provision to trigger coverage for subsequent claims, the self-insured retention ("SIR") found in each policy remains unmet. This is so because the invoice at issue, totaling $2,174.68 falls short of the $100,000 SIR. Accordingly, the 1997 Policy owes no coverage.

This finding is further reinforced by the court's prior ruling that each leak constitutes a separate occurrence.[15] Applying this prior ruling to the policy before us, we must find that, were

---

[13]"Exhibit A" to Gulf's motion at Bates No. Gulf 00022; "Exhibit B" to Gulf's motion at Bates No. 00075.

[14]LA. CIV. C. ART. 2046.

[15]R. 973 at pp. 5 - 6.

Brookshire's purported claim not already prescribed, no coverage would be owed because the self-insured retention in the amount of $100,000 applies on a "per occurrence" basis[16] and each leak constitutes a separate occurrence. The leak of June 25, 1998, which caused $2,174.68 in potential claims, fails to trigger coverage under the 1997 policy.

### III.  Conclusion

The court finds that Brookshire's purported claim under the 1997 Policy issued by Gulf to TCI has prescribed because it was not asserted timely, given that this suit was filed on August 15, 2003. Were this not the case, we would still find no coverage owing from this policy because we find that the deemer provision concerning property damage claims was removed from the policy by endorsement and, further, that the purported claim would have been insufficient to trigger coverage because it fails to satisfy the applicable self-insured retention in the amount of $100,000, calculated on a per occurrence basis.

Accordingly, the court finds that Gulf's motion should be GRANTED and that all claims by Brookshire against Gulf as the insurer of TCI, arising out of the 1997 and 1998 Policies now before us, should be DISMISSED with prejudice.

Alexandria, Louisiana
September 6, 2007

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[16] 1997 Policy, "Exhibit A," Bates No. 00033; 1998 Policy, "Exhibit B," Bates No. 00088.